**E-FILED**
Friday, 18 March, 2005  11:53:12 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| RANDALL J. SANDONE | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-2232 |
| | ) | |
| vs. | ) | Hon. Harold A. Baker |
| | ) | |
| ABN AMRO HOLDING N.V., Amsterdam, | ) | |
| a Dutch corporation; ABN AMRO BANK | ) | |
| N.V., Amsterdam, a Dutch corporation; and | ) | |
| ABN AMRO VENTURES B.V., | ) | |
| Amsterdam, a Dutch Corporation | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## THE AMENDED COMPLAINT

Plaintiff lacks standing to bring this claim.  Plaintiff's suit for diminution of shareholder value is transparently derivative in nature and must be asserted by or on behalf of the allegedly harmed corporation, Argus Systems Group Incorporated ("Argus").  Because Argus is now in Chapter 7 bankruptcy, the bankruptcy trustee has exclusive authority to bring such a claim on behalf of the corporation and its shareholders.

Even were Argus not a bankrupt entity,  the Amended Complaint still would suffer from a basic, fatal defect: it does not state a claim upon which relief can be granted.  Courts have consistently rejected Plaintiff's respondeat superior theory  because it would dangerously expand the fiduciary duties of shareholders to other shareholders.

Several other defects likewise warrant dismissal of the Amended Complaint, including improper service of process under the Hague Convention and lack of personal jurisdiction. Taken together, it is clear that Plaintiff can never assert a cause of action against the Defendants in this Court, and that it would be futile and a waste of judicial resources to allow Plaintiff leave

to amend his claim.  Accordingly, Defendants respectfully move this Court to dismiss the Amended Complaint with prejudice.

<u>STATEMENT OF ALLEGED FACTS</u>

Argus Systems Group, Inc. ("Argus") is an Illinois corporation.  (Am. Cmplt.  ¶ 3)  Plaintiff, an Illinois resident  (*Id.* ¶ 1.A), was formerly Argus's president and chief executive officer.  (*Id.* ¶ 18.D)  He was also an Argus shareholder.  (*Id.*  ¶ 3)

In 2001, Dutch corporations ABN AMRO Ventures B.V. and Mercurius Belegginingsmaatshappij B.V. (the "Dutch investors") entered into a Stock Purchase Agreement to purchase shares of Argus's Class B Common Stock.  (Am. Cmplt., Ex. 1 at p.1)  In connection with the Stock Purchase Agreement, the Dutch investors made loans to Argus totaling approximately $12 million.  (Am. Cmplt.  ¶ 14)  The Amended Complaint alleges that these loans "were intended to be converted to equity."  (*Id.*)

 On December 3, 2001, the Dutch investors entered into a Voting Agreement with Argus and two of Argus's common stockholders, Plaintiff and Paul A. McNabb.[1]  (*Id.* ¶ 3; Ex. 1 at p. 1)  The Voting Agreement provided that each of the Dutch investors could designate one member of the Argus's Board of Directors if the investor owned at least 5 percent of Argus's stock.  (Am. Cmplt. ¶ 9; Ex. 1 at p. 1)  The Amended Complaint does not indicate the number or percentage of shares held by the Dutch investors, Plaintiff, or Mr. McNabb.  Nor does it allege whether the Dutch investors, individually or in combination, held a majority or controlling interest.

Keith Walz was appointed to the Board in January of 2002.  (Am. Cmplt. ¶ 10)  The Amended Complaint alleges that Mr. Walz was an employee of  "ABN AMRO," a term defined by the Amended Complaint to include three distinct entities: ABN AMRO Ventures, ABN

---

[1] Mr. McNabb is one of the persons excluded from the class Mr. Sandone seeks to certify (Am. Cmplt. ¶19), and is a defendant in the parallel state court action.

AMRO Holding N.V., and ABN AMRO Bank N.V.  (*Id.* ¶ 6).  The Amended Complaint does not allege which of these three different entities employed Mr. Walz.

Plaintiff alleges that in the course of his service on Argus's board, Mr. Walz violated his fiduciary duties to the shareholders of Argus.  (*Id.* ¶¶ 17, 18)  Mr. Walz allegedly used his position to benefit the Dutch investors by removing Plaintiff as Argus's president and CEO.[2] (*Id.* ¶ 8, 18)  Plaintiff further alleges that Mercurius ultimately forced Argus into Chapter 7 "[w]ith the aide [sic] and assistance of [Defendants], directly and through Keith Walz," in order to take advantage of the priority of interests of creditors over shareholders in the liquidation of Argus's assets.  (*Id.* at 8, 18.J)

Plaintiff seeks to hold ABN AMRO Holding, ABN AMRO Bank, and ABN AMRO Ventures (collectively, the "Defendants") liable on a respondeat superior theory for the actions of Mr. Walz in his role as a member of Argus's Board.  (*Id.* ¶ 13)  Plaintiff does so on behalf of a putative class of all Argus shareholders, excluding the Defendants, Mr. Walz, Mercurius, and former board members Paul McNabb and William O'Neill and their families.[3]  (*Id.* ¶ 19)

## ARGUMENT

As a fundamental, threshold matter, Plaintiff lacks standing to bring his Amended Complaint.  Plaintiff's claim is derivative in nature and is now vested exclusively in the bankruptcy trustee. Dismissal with prejudice is appropriate because Plaintiff will *never* have

---

[2] *In re Argus Systems Group Inc.*, No. 03-91852 (Bankr. C.D. Ill. filed May 23, 2003) (docket available online at court website).  According to the bankruptcy court docket, Argus remains in Chapter 7 proceedings, but those proceedings are winding down.  The Trustee's Final Report and Account was filed on November 16, 2004, and the objection period expired on December 6.  No order of dismissal has yet been entered.

[3] Messrs. Walz, McNabb, O'Neill, along with Mr. Walz, are defendants in a tortious interference action captioned *Sandone v. Walz, et al.*, No. 02-L-0272 (filed Nov. 27, 2002), currently pending in the Circuit Court of the Sixth Judicial Circuit in Champaign County, Illinois.

standing to assert a derivative claim against Defendants.

Plaintiff's Amended Complaint suffers from several other infirmities. First, Plaintiff has failed to comply with federal and state procedural prerequisites to bringing a derivative claim. In addition, Plaintiff has failed to state a claim upon which relief can be granted. Finally, jurisdiction is improper, as plaintiff has not served process in accordance with the Hague Convention, and has failed to establish personal jurisdiction over the individual ABN-AMRO defendants. Accordingly, Plaintiff's Amended Complaint should be dismissed with prejudice.

## I.    THE COMPLAINT MUST BE DISMISSED BECAUSE IT IS DERIVATIVE AND BELONGS TO ARGUS'S BANKRUPTCY ESTATE.

Under Illinois law, Plaintiff's claim on behalf of Argus's shareholders is derivative in nature. That claim, therefore, belonged to Argus, the real party in interest, and has now passed to Argus's Chapter 7 bankruptcy estate. Thus, Plaintiff lacks standing to assert his claim, which is vested exclusively in the bankruptcy trustee. In addition, because Plaintiff has failed to join the estate, indispensable party to this action, his claim must be dismissed pursuant to Rule 17(a).

### A.    Plaintiff Lacks Standing to Sue Defendants Directly as a Matter of Law.

The question whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law of the state of incorporation. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003), *cert denied*, 124 S. Ct. 1889 (2004); *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996). Argus is an Illinois corporation, so Illinois law applies.

Illinois law is clear that a shareholder claim based on diminution of corporate share value is derivative and may only be brought on behalf of the corporation. *See Small v. Sussman*, 713 N.E.2d 1216, 1219-20 (Ill. App. Ct. 1st Dist. 1999) (holding that shareholder's suit against director and dominant shareholder for waste of corporate assets and diminution in share value

was derivative); *Cashman v. Coopers & Lybrand*, 623 N.E.2d 907, 911 (Ill. App. Ct. 2d Dist. 1993) ("The corporation ceases to be a going concern, which necessarily results in the shareholders' stock becoming devalued. The corporation is the logical entity to pursue a claim . . . and to share its recovery with its stockholders if it prevails."). This is precisely Plaintiff's claim: he alleges that, by the actions of a rogue director, "class members were damaged in that they received no dividends and the value of the stock ultimately declined to worthless, and the corporation was forced into bankruptcy, and it was unable to have an initial public offering which would have substantially compensated the class members all of whom were start-up investors." [4] (Am. Cmplt. ¶ 21) By bringing a derivative claim, Plaintiff lacks standing to sue in his own right.

It is true that in limited circumstances, a shareholder who suffers an injury *distinct* from other shareholders has standing to bring a non-derivative action on his own behalf. *See Frank*, 83 F.3d at 160; *Small*, 713 N.E.2d at 1220-21. [5] But plaintiff has alleged nothing of the sort:

- Plaintiff's damages allegation is limited to diminution of Argus's corporate value: "[T]he class members were damaged in that they received no dividends and the value of the stock ultimately declined to worthless, and the corporation was forced into bankruptcy, and it was unable to have an initial public offering which would have

---

[4] Plaintiff's alleged class includes all Argus shareholders minus those he views as wrongdoers: the Defendants, Mercurius, and the defendants in Plaintiff's state court action (Messrs. Walz, McNabb, and O'Neill). (Am. Cmplt. ¶ 19)

[5] Illinois law, like Delaware law, permits a minority shareholder to bring a direct, non-derivative action against a majority, controlling shareholder. *See Jaffe Commercial Fin. Co. v. Harris*, 456 N.E.2d 224, 230 (Ill. App. Ct. 1st Dist. 1983) ("The law is uncontroverted that the individuals who *control* corporations owe fiduciary duties to their corporation and its shareholders.") But that does not avail Plaintiff, who has failed to allege that Defendants were majority shareholders, that he was a minority shareholder, or that Defendants owed any direct fiduciary duty to him. Plaintiff also does not allege that Argus was a closely held corporation under Illinois law. *See Small*, 713 N.E.2d at 1220-21 (rejecting plaintiffs' argument that minority shareholders have the right to bring a direct action against co-shareholders when the corporation is closely held). Plaintiff thus cannot bring his claim on a non-derivative basis.

substantially compensated the class members all of whom were start-up investors." (Am. Cmplt. ¶ 21)

- Plaintiff alleges class damages, but not any individual damages (meaning, of course, that if the Court denies class certification, there will be no amount in controversy and thus no subject matter jurisdiction). (*Id.*)

- Plaintiff does not allege that Defendants reaped benefits from Mr. Walz's actions in their role as shareholders, but rather in their role as *creditors*. (*Id.* ¶ 8)

- Plaintiff alleges that "the plaintiff as a shareholder has standing to bring a direct action [sic] for the benefit of shareholders." (Am. Cmplt. ¶ 8).

- Plaintiff seeks class certification and holds himself out as an appropriate class representative. (*Id.* ¶ 20.D)

In sum, Plaintiff has failed to allege that his individual injury was distinct from the injury suffered by other shareholders.[6] Accordingly, he lacks standing to bring this claim on his own behalf, and it must be dismissed for failure to state a claim. For the same reason, Plaintiff's claim should be dismissed for violating Rule 17(a), which mandates joinder of the real party in interest, Argus.[7]

### B. Plaintiff Also Lacks Standing Under the Bankruptcy Code Because His Claim Belongs Exclusively to the Bankruptcy Trustee.

Plaintiff lacks standing for an additional, independent reason: Argus's bankruptcy divested Plaintiff of standing to sue derivatively. With the filing of Argus's Chapter 7 bankruptcy petition, Plaintiff's claim became the property of Argus's bankruptcy estate. *See* 11

---

[6] If Plaintiff *had* alleged a injury to himself separate and distinct from the injury to other shareholders, he would not be an appropriate shareholder representative. *See* Fed R. Civ. P. 23.1 ("The derivative action many not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.").

[7] If Argus were not bankrupt, this Court would lack subject matter jurisdiction. In derivative actions, the corporation whose interests are being pursued is generally aligned as a *defendant*. *See, e.g.*, *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 381, 384 (7th Cir. 1990). Argus is an Illinois corporation. Plaintiff is an Illinois citizen. Thus, if a non-bankrupt Argus were to be joined, complete diversity would be destroyed, and this Court would no longer have jurisdiction to adjudicate Plaintiff's claim. *See id.* at 384.

U.S.C. § 541(a)(1) (stating that the property of the estate includes, with limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case"); *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541"); *see also Kennedy*, 348 F.3d at 589 (noting that a derivative suit "is an asset of the corporation – which means that if, as in this case, the corporation is in bankruptcy, the suit is an asset of the bankrupt estate").   From then forward, the authority to bring this breach-of-fiduciary-duty claim vested exclusively in the bankruptcy trustee.   As the Seventh Circuit observed in *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987) (emphasis added):

> It has also long been held that rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate *which the trustee alone has the right to pursue after the filing of a bankruptcy petition*.[8]

*Accord Wright v. Abbott Capital Corp.*, 398 N.E.2d 1147, 1149-50 (Ill. App. Ct. 1st Dist. 1979) (holding that plaintiff lacked standing to assert derivative suit on behalf of corporation once the corporation went into bankruptcy).   Only the bankruptcy trustee, and not Plaintiff, can bring the claims in Plaintiff's Amended Complaint.[9]   Accordingly, this Court should dismiss the action.   *In*

---

[8] It is also well established under Seventh Circuit law that a trustee may be divested of this exclusive authority only in narrow circumstances, namely "when (a) the trustee unjustifiably refuses a demand to pursue the action; (b) the creditor establishes a colorable claim or cause of action; and (c) the creditor seeks and obtains leave from the bankruptcy court to prosecute the action for and in the name of the trustee."   *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990).   Plaintiff has not established any of these circumstances.   In any event, Plaintiff must prove them to the bankruptcy court, not this Court.

[9] Should the bankruptcy case be dismissed, Plaintiff will not thereby gain standing to sue Defendants directly.   It is well established that the exclusive authority of the bankruptcy trustee to bring an action for diminution of corporate value does not "re-vest" in the shareholders after the conclusion of the bankruptcy.   *See, e.g.*, *Poliquin v. Sapp*, 390 N.E.2d 974, 977 (Ill. App. Ct. 1979) (dissolution of corporation prior to commencement of an action against directors did not serve to create individual right of action in shareholders).

*re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) ("When a third party tries to assert an action still vested in the trustee, the court should dismiss the action.").

**C.    Plaintiff Has Failed to Satisfy the Procedural Requirements for Bringing a Derivative Claim.**

Aside from standing problems, Plaintiff has failed to satisfy several federal and state procedural requirements for bringing a derivative action.

### 1.    Plaintiff has failed to satisfy 805 ILCS 5/7.80(b).

Under Illinois law, a shareholder may only institute derivative litigation after making a demand to the corporation's board to sue in its own name, or by establishing an exception to the demand requirement. *See* 805 ILCS 5/7.80(b); *Frank*, 83 F.3d at 160 (collecting cases). Plaintiff has made no demand or established any exception to that requirement. This rule is not a mere technicality; it is a substantive condition precedent to Plaintiff's claims.

### 2.    Plaintiff has failed to satisfy Federal Rule 23.1.

Federal Rule of Civil Procedure 23.1 applies to actions, such as this one, "brought by one or more shareholders or members to enforce a right of a corporation." That Rule requires that the complaint be *verified* and that it "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Plaintiff has not verified the Amended Complaint, nor has he made the necessary allegations with particularity. He therefore fails to state a claim.

## II.   THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Amended Complaint rests on a strained theory of respondeat superior liability that has been soundly rejected by courts that have considered it.  Accordingly, it must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.   A Corporation Is Not Vicariously Liable for Its Employee's Breach of Fiduciary Duty In His Role as Director of Another Corporation.

Plaintiff's theory of liability is fatally defective.  Plaintiff asserts that Defendants, the alleged employers of Mr. Walz, should be held vicariously liable for Mr. Walz's conduct as a member of Argus's board.  Plaintiff's theory violates settled law.  Courts have consistently held that vicarious liability based on the acts of a director would improperly and dangerously expand the fiduciary duties of investors.  This Court should follow the lead of these other courts and dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

### 1.   Courts Applying the Law of Other States Have Consistently Rejected Plaintiff's Respondeat Superior Theory.

The most recent of these cases, *CCBN.com, Inc. v. Thomson Financial, Inc.*, 270 F. Supp. 2d 146 (D. Mass 2003), is on all fours with this case.  There, the founders of Internet startup CCBN invited Thomson Financial to become an investor.  *Id.* at 150.  As a condition of that investment, Thomson (like the Dutch investors in the present case) was allowed to designate two members of CCBN's board of directors.  *Id.*  CCBN alleged that Thomson's board designees misappropriated CCBN's confidential information and corporate opportunities for the benefit of Thomson.  The court granted Thomson's motion to dismiss, concluding that, under Delaware law, Thomson could not be vicariously liable for the actions of its designees on CCBN's board.  *See Id.* at 151-52 ("While this is an interesting theory, courts applying Delaware law have rejected it. . . .  I decline to create a novel theory of liability under Delaware law.").

The *CCBN* court relied on the well-reasoned opinion in *U.S. Airways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482 (S.D.N.Y. 1997). In that case, USAir asserted a claim of respondeat superior liability against British Airways based on the alleged wrongdoing of BA's employees who served on USAir's board. USAir did not allege that BA was the majority or controlling shareholder of USAir. *Id.* at 494. The court, applying Delaware law, dismissed the claim, stating that "the imposition of respondeat superior liability on a corporation for breach of fiduciary duty by its directors on the board of another corporation would completely undermine Delaware corporate law, which limits such fiduciary duty to majority and controlling shareholders." *Id. Accord Emerson Radio Corp. v. Int'l Jensen Inc.*, 1996 WL 483086, *20 n.18 (Del. Ch. Aug. 20, 1996), *appeal denied*, 683 A.2d 58 (Del. 1996) ("The notion that a stockholder could become a fiduciary by attribution (analogous to the result under the tort doctrine of respondeat superior) would work an unprecedented, revolutionary change in [Delaware] law, and would give investors in a corporation reason for second thoughts about seeking representation on the corporation's board of directors.") (courtesy copy attached as Exhibit "B"). Another federal court reached the same conclusion under California law. *See Medical Self Care, Inc. v. Nat'l Broad. Co., Inc.*, 2003 WL 1622181, *7 (S.D.N.Y. Mar. 28, 2003) (applying California law and dismissing plaintiff's respondeat superior claim for the fiduciary duty breaches of the defendant's designee on the plaintiff's board) (courtesy copy attached as Exhibit "C").[10]

---

[10] *In re Papercraft Corp.*, 165 B.R. 980 (Bankr. W.D. Pa.), *vacated on other grounds*, 187 B.R. 486 (Bankr. W.D. Pa. 1995), *rev'd on other rounds*, 211 B.R. 813 (W.D. Pa. 1997), *aff'd sub nom. Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998), is easily distinguishable. In *Papercraft*, the defendant corporation (CVC) was a shareholder that nominated one of its own officers to serve on the board of Papercraft. At the express direction of CVC, that officer surreptitiously purchased discounted claims from Papercraft based on inside information, and failed to make full disclosure of the

### 2. Given the Opportunity, Illinois Courts Would No Doubt Reject Plaintiff's Respondeat Superior Theory.

No Illinois court has yet addressed this issue, which only underscores the flimsiness of Plaintiff's theory. But it is clear that same result will prevail under Illinois law once the Illinois courts reach the issue. Illinois corporate law follows Delaware law in imposing a fiduciary duty to shareholders only on the majority, controlling shareholder, and not on minority shareholders.[11] There is no allegation here that Defendants were the majority, controlling shareholders of Argus. Allowing imposition of liability on Defendants on a respondeat superior basis would therefore vastly expand the fiduciary duties of shareholders, as the *U.S. Airways* court feared. *See* 989 F. Supp. at 494. Under these circumstances, this Court should not create a novel theory of liability under Illinois law. *See, e.g.*, *CCBN.com*, 270 F. Supp. 2d at 152 ("in diversity cases the federal courts do not undertake to restructure state law") (quotation omitted). Instead, the Court should dismiss the Amended Complaint for failure to state a claim.

---

purchase as required of "insiders" under the Bankruptcy Code. *See* 165 B.R. at 985-86. The court emphasized the evidence demonstrating that CVC expressly authorized its nominee, who "adhered to CVC's directives," to purchase the notes based on inside information in furtherance of CVC's business objectives. *Id.* at 990-91. Here, in contrast, there are no allegations that Defendants authorized or directed any actions taken by Mr. Walz in his role as an Argus director. Moreover, *Papercraft* was decided under Pennsylvania law, and it has never been followed by any other court, even though it was handed down before the better-reasoned *CCBN* and *U.S. Airways* cases.

[11] *See, e.g.*, *Jaffe*, 456 N.E.2d at 230-31 ("The law is uncontroverted that the individuals who *control* corporations owe fiduciary duties to their corporation and its shareholders.") (emphasis added); *Graham v. Mimms*, 444 N.E.2d 549, 555 (Ill. App. Ct. 1st Dist. 1982) ("as *majority shareholder and dominant figure in the control of the corporation*, the fiduciary duties [defendant] owed to [the corporation] and plaintiffs [minority shareholders] did not cease when he resigned as officer and director and installed his sister and brother-in-law in these positions") (emphasis added); *In re Joy Recovery Tech. Corp.*, 257 B.R. 253, 273 (Bankr. N.D. Ill. 2001) ("[I]f a shareholder exercises *actual control and direction* over corporate management, a fiduciary duty will be imposed.") (quotation omitted and emphasis added).

## III.    THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THE COURT LACKS JURISDICTION.

This Court lacks personal jurisdiction over Defendants because: (1) Defendants were not properly served in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) Plaintiff has improperly attempted to aggregate the Illinois contacts of Defendants, which are three distinct Dutch corporate entities; and (3) Plaintiff has not and cannot establish that Defendants are subject to "doing business" jurisdiction under the Illinois Long-Arm Statute.   Accordingly, this Court should dismiss the Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(5).[12]

### 1.    Defendants Have Not Been Properly Served.

As Plaintiff acknowledges, "Defendants are corporations organized under the laws of the Netherlands with their principal offices in the Netherlands, and accordingly are citizens of a foreign state." (Am. Cmplt. ¶ 1.B)  Service of process on corporations in the Netherlands must be performed in accordance with the Hague Convention.  *See* Fed. R. Civ. P. 4(f)(1), 4(h)(2).

Plaintiff has failed to comply with the plain language of the Hague Convention.  Article 5 of the Convention requires the litigant to attach a summary of the document to be served.  The summonses delivered to the Defendants in Amsterdam did not include a summary of the Amended Complaint, in violation of Article 5.  (Affidavit of Carly Lemans  ¶ 9, attached to this

---

[12]  The Amended Complaint's allegations are also insufficient to establish subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Plaintiff pleads that "[t]he amount in controversy exclusive of interest and costs is in excess of $75,000" (Am. Cmplt. ¶ 1.C) and prays for "judgment on behalf of the class and against Defendants in the amount of $60 million (*Id.* ¶ 21).  Plaintiff fails, however, to allege that he *individually* suffered in excess of $75,000 in damages.  It is well established that the named plaintiff in a federal class action must demonstrate that he personally suffered in excess of $75,000 in damages to satisfy the jurisdictional minimum.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997) ("At least one named plaintiff must satisfy the jurisdictional minimum.").

Memorandum as Ex. A)   Accordingly, service of process is insufficient and the Amended Complaint should be dismissed pursuant to Rule 12(b)(5).

### 2. Plaintiff Has Improperly Attempted to Aggregate Defendants' Alleged Illinois Contacts.

This Court also lacks personal jurisdiction over Defendants because Plaintiff has not established that each Defendant *individually* engaged in activities sufficient to give rise to jurisdiction under Illinois' Long Arm Statute and consistent with due process.   Plaintiff, of course, bears the burden of demonstrating personal jurisdiction.  *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000).

Defendants are corporations organized under the laws of the Netherlands with their principal offices in the Netherlands.  (Am. Cmplt. ¶ 1.B)  Plaintiff attempts to establish personal jurisdiction over these three distinct Dutch corporate entities by *aggregating* their activities.  He places ABN AMRO Holding, Bank, and Ventures under a single umbrella, "ABN AMRO," and then ascribes various acts to them collectively that may apply to only one of them.  (*Id.* ¶¶ 5-7, 10, 14)  He thereby commits two serious errors.  First, the Supreme Court has clearly stated that "[e]ach defendant's contacts with the forum State must be assessed *individually*."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984) (emphasis added).  Second, as the Seventh Circuit has held, the jurisdictional contacts of corporate affiliates generally cannot be imputed to each other.  *See Central States*, 230 F.3d at 943 ("[W]e hold that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary").  For example, Plaintiff's Exhibit 1 indicates that only ABN AMRO Ventures invested in Argus.  If Plaintiff believes that ABN AMRO Holding or Bank is responsible for the actions of ABN AMRO Ventures, then he

must come forward with some allegation of claimed evidence to pierce the corporate veil.  *See Id.*  Otherwise, he cannot ascribe the activities of Ventures to Holding or Bank for jurisdictional purposes.

3.      **Plaintiff Has Not and Cannot Establish that Defendants Are Subject to "Doing Business" Jurisdiction.**

In addition, Plaintiff appears to assert that this Court has general personal jurisdiction over Defendants under the "doing business" prong of the Illinois Long Arm Statute, 735 ILCS § 5/2-209(b)(4).  But under Illinois case law, a corporation is not "doing business" in Illinois unless it transacts business in Illinois "not occasionally or casually, but with a fair measure of permanence and continuity."  *Cook Assocs., Inc. v. Lexington United Corp.*, 429 N.E.2d 847, 853 (Ill. 1981) (quotation omitted).  Plaintiff's allegations are insufficient to show that the activities of each of the ABN AMRO entities individually satisfied these jurisdictional minimums.[13]

Moreover, neither ABN AMRO Holding nor ABN AMRO Ventures currently does business in Illinois.  Attached to this Memorandum is the Affidavit of Carly Lemans, Vice President of Group Legal at ABN AMRO Bank as Exhibit "A".  As to Defendants' contacts with Illinois, Lemans states follows:

- "ABN AMRO Bank, ABN AMRO Holding, and ABN AMRO Ventures are distinct legal entities. Each is separately incorporated under the laws of The Netherlands and maintains its primary place of business in The Netherlands.  ABN AMRO Bank is a subsidiary of ABN AMRO Holding.  ABN AMRO Ventures is a subsidiary of ABN AMRO Bank." (Lemans Aff. ¶ 3)

---

[13] Though he does not allege it in the Amended Complaint, Plaintiff may attempt to assert specific personal jurisdiction based the allegedly tortious activities of Keith Walz.  The Amended Complaint labels Mr. Walz an employee of "ABN AMRO," that is, all three ABN AMRO entities.  This jurisdictional hook would suffer from the same defect discussed above, namely that it asserts jurisdiction over all three ABN AMRO entities based on actions that can only be ascribed to one, without attempting to pierce the corporate veil.  Moreover, as stated by Ms. Lemans in her Affidavit, Mr. Walz is managing director of ABN AMRO Private Equity, a business unit solely of ABN AMRO Bank.  (Lemans Aff. ¶ 6)

- "*ABN AMRO Holding does not do business in the State of Illinois*.  It does not have an agent for service of process in Illinois, does not own property in Illinois, does not maintain offices in Illinois, has no employees in Illinois, and does not keep books and records in Illinois."  (*Id.* ¶ 4 (emphasis added))

- "*ABN AMRO Ventures does not currently do any business in the State of Illinois*. It also does not have an agent for service of process in Illinois, does not own property in Illinois, does not maintain offices in Illinois, has no employees in Illinois, and does not keep books and records in Illinois. It also does not have any subsidiaries operating in Illinois.  ABN AMRO Ventures formerly owned a minority stake in . . . [Argus]. ABN AMRO Ventures was just one among many stakeholders in Argus.  Argus is now in liquidation in the U.S. Bankruptcy Court for the Central District of Illinois. Argus is the only Illinois corporation in which ABN AMRO Ventures has invested." (*Id.* ¶ 5 (emphasis added))

In sum, the Amended Complaint does not allege sufficient contacts to establish general jurisdiction over any of Defendants, and Defendants have presented affirmative evidence that there can never be jurisdiction over Defendants ABN AMRO Holding and ABN AMRO Ventures.  In addition, even if this Court determines that it may exercise personal jurisdiction over ABN AMRO Bank, that jurisdiction does not extend to ABN AMRO Bank's parents, subsidiaries, or affiliates.  *See Central States*, 230 F.3d at 943.

## CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court to dismiss the Amended Complaint with prejudice, and to award Defendants its costs, and such other relief as the Court deems appropriate.

Date:  March 18, 2005                              Respectfully submitted,

                                                  /s/ Edward M. Wagner
                                                  Edward M. Wagner
                                                  Richard P. Klaus
                                                  HEYL, ROYSTER, VOELKER & ALLEN
                                                  102 E. Main Street, Suite 300
                                                  P.O. Box 129
                                                  Urbana, IL  61803-0129
                                                  (217) 334-0060
                                                  *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gary D. Forrester, Esq.
Joseph W. Phebus, Esq.
Daniel J. Pope, Esq.
PHEBUS & KOESTER
136 W. Main St.
Urbana, IL  61801

/s/ Edward M. Wagner
Edward M. Wagner
HEYL, ROYSTER, VOELKER & ALLEN
102 E. Main Street
Suite 300
P.O. Box 129
Urbana, IL  61803-0129
Ph: (217) 334-0060
Fax: (217 334-9295
ewagner@hrva.com