IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

IN RE:                                   )
                                         ) No. 03-91852
ARGUS SYSTEMS GROUP, INC.                )

**NOTICE OF SHAREHOLDERS' SUPPORT FOR EMERGENCY MOTION FOR ORDER OF ASSIGNMENT**
**And**
**REPLY TO ABN AMRO PRIVATE EQUITY'S OPPOSITION TO THE SAID MOTION**

COMES NOW Randall J. Sandone ("Sandone"), by and through his attorneys, Phebus & Koester, and in further support for his motion for an order directing the bankruptcy trustee to assign to Sandone any and all authority the bankruptcy trustee may have in relation to the subject matter described in his said motion, states as follows:

1. The following shareholders of Argus, who are putative class members in *Sandone v. ABN AMRO*, Case No. 04-2232, have indicated to Sandone their support for his motion for this Court's order that the bankruptcy trustee assign to Sandone, in his capacity as plaintiff representative in Case No. 04-2232, any and all authority the bankruptcy trustee may have to pursue a suit against ABN AMRO for diminution of shareholder value on behalf of the corporation and its shareholders:

    Jennifer LaMontagne

    Richard Rodrigues

    Chad Hanson

    Robin Keil

    Darrell Goeddel

    Mary Sandone

    Floyd Gregory

1

Exhibit "F"

        Jean Gregory

        Pavel Slavin

        Dorothy Lierman

        Michael Sandone

        Joseph Decker

        Steve Oetegenn

        Jim Middleton

        Thomas Stalzer

        David Thornton

2. Each of the above-named Argus shareholders requests that this Court grant Sandone's motion.

3. This afternoon, April 12, 2005, less than 18 hours before this Court's hearing on Sandone's motion, counsel for Sandone received in the mail a document titled "ABN AMRO Private Equity's Opposition to Randall J. Sandone's Emergency Motion for Order of Assignment," which document had apparently been filed with this Court.

4. ABN AMRO Private Equity is not a party to any of the relevant litigation. Specifically, it is not a party to *Sandone v. ABN AMRO*, Case No. 04-2232, the case to which the requested assignment applies. Accordingly, ABN AMRO Private Equity has no standing to oppose the motion, and Sandone respectfully requests that ABN AMRO Private Equity's "opposition" be stricken on that basis.

5. In any event, ABN AMRO Private Equity's "opposition" is unsound, because it rests on the false assumption that "Sandone's claim [in *Sandone*

2

v. *ABN AMRO*, Case No. 04-2232] is plainly derivative in nature." Sandone has drafted, and will file in the Federal Court tomorrow in *Sandone v. ABN AMRO*, Case No. 04-2232, a response to ABN AMRO's motion to dismiss that *inter alia* addresses this argument as set forth in the following paragraph herein.

6. Defendants argue that *Sandone v. ABN AMRO*, Case No. 04-2232, is not an action by Plaintiff and others similarly situated sounding in tort, notwithstanding the express terms of the Amended Complaint; rather, Defendants argue, this is a "derivative" suit that can brought, if at all, by Argus's bankruptcy trustee on behalf of the corporation and its shareholders. According to Defendants, Argus – not plaintiff and putative class members - was "the real party in interest."

The error in Defendants' argument is that Plaintiff is not, via *Sandone v. ABN AMRO*, Case No. 04-2232, seeking to engage in management activities vis-à-vis Argus, nor is Plaintiff proposing to act on behalf of Argus or its shareholders in any corporate sense. Plaintiff does not herein pursue the Argus corporation's interests. Plaintiff has filed this suit because he and others similarly situated have lost a lot of money as a consequence of Defendants' conduct. Thus, Defendants' invocation of Federal Rule 23.1, and 805 ILCS 5/7.80(b), is misplaced – both those provisions assume that this lawsuit is actually in the name of Argus, or to enforce an Argus right. This is not the case.

Plaintiff seeks to recover his (and class members') financial losses caused by Defendants' conduct. The real parties in interest are precisely

3

as the Amended Complaint in *Sandone v. ABN AMRO*, Case No. 04-2232, defines them – the shareholders who lost money as a result of Defendants' tortious conduct. Specifically, the damage caused to Plaintiff and putative class members by Defendants' tortious conduct was the diminution of the value of their property.

Plaintiff's Amended Complaint in *Sandone v. ABN AMRO*, Case No. 04-2232, is expressly stated in tort, alleging duty, breach of duty, causal relationship, and damages. It matters not, structurally for pleading purposes, whether the tort was committed by an ABN AMRO driver in a wayward delivery truck or by a duty-breaching board member expressly disrupting Argus management (*see* attached Exhibit 2 and discussion of Walz, below). ABN AMRO's chosen means of causing harm to Plaintiff and class members does not change Plaintiff's tort action into a derivative suit.

Defendants are correct that the question whether a suit is derivative by nature, or may be brought by a shareholder in his own right, is governed by the state of incorporation. *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003). Argus is an Illinois corporation, so Illinois applies.

In determining whether former shareholders must file a claim in the form of a derivative suit rather than via a class action, the fundamental distinction is whether the wrong was committed against the corporation or against the shareholders. *King v. Kansas City Southern Indus., Inc.*, 56 F.R.D. 96, 98 (N.D. Ill. 1972). Thus, the determination of which is the

4

appropriate action depends on "the nature of the alleged injury." *Solis-Holmes v. Thorn*, 2004 Bankr. LEXIS 1371 at *7 (C.D. Ill. 2004). Wrongs committed against the corporation itself are brought derivatively, but wrongs perpetrated upon shareholders directly, as here, may be brought in the form of a class action. *King*, 56 F.R.D. at 98.

A derivative suit consists of two causes of action: one against the directors of a corporation for failing to sue, and a second based upon a right belonging to the corporation. *Mann v. Kemper Financial Cos.*, 247 Ill. App. 3d 966, 974, 618 N.E.2d 317, 323 (1st Dist. 1993). Neither is applicable here. In a derivative suit, the shareholder derives the power to sue from the unexercised authority of the corporation, and the direct beneficiary of the derivative suit is the corporation that initially possessed the right to bring the suit. Again, neither of these considerations is present here. The theory underlying the use of derivative suits is that an action for harm to a corporation must be brought in the corporate name. *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 159-60 (7th Cir. 1996). Plaintiff does not bring this action for harm to the corporation, nor has Plaintiff ever been concerned with bringing an action in the corporate name to recover his individual loss (and the losses of others similarly situated).

Illinois law holds that a director (such as ABN AMRO's employee Keith Walz) occupies a position of trust, and as such, he or she owes a fiduciary duty to the shareholders. *Vermeil v. Jefferson Trust & Savings Bank of Peoria*, 532 N.E.2d 288, 291 (Ill. App. Ct. 1988). Consequently,

> Directors of a corporation are trustees of its business and property for the collective body of stockholders in respect

> to such business. They are subject to the general rule, in
> regard to trusts and trustees, that they cannot, in their
> dealings with the business or property of the trust, use their
> relation to it for their own personal gain. It is their duty to
> administer the corporate affairs for the common benefit of
> all the stockholders, and exercise their best care, skill, and
> judgment in the management of the corporate business
> solely in the interest of the corporation. <u>The stockholders
> are entitled to the utmost fidelity of the directors to the
> interest of the stockholders.</u> It is a breach of duty for the
> directors to place themselves in a position where their
> personal interests would prevent them from acting for the
> best interests of those they represent. While a director is
> not disqualified from dealing with the corporation, he must
> act fairly and be free from all fraud or unfair conduct, his
> transactions will be subjected to the closest scrutiny, and, if
> not conducted with the utmost fairness, to the end that the
> corporation shall have received full value, they will be set
> aside.

*Id.* (quoting *Dixmoor Golf Club, Inc. v. Evans*, 156 N.E. 785, 787-88 (Ill. 1927) (emphasis added).

Moreover, attached to the Amended Complaint in *Sandone v. ABN AMRO*, Case No. 04-2232, as Exhibit 1 is a copy of the Voting Agreement made on December 3, 2001, between ABN AMRO, Argus and others, which was "thereafter approved by Argus's shareholders." Amended Complaint, paragraph 9. That Voting Agreement imposed a number of contractual obligations on ABN AMRO, including but not limited to (in paragraph 2.2) ABN AMRO's promise to Argus's shareholders that Plaintiff would remain as CEO for the purpose of achieving revenue targets in the fiscal year 2002 (and thereafter, if the established targets were met). Walz's conduct as an Argus board member (*see* attached Exhibit 2 and the discussion below) interfered with those contractual rights, the details of which interference are stated in paragraph 18 of the

6

Amended Complaint. *See, e.g.*, sub-paragraphs 18A ("intentionally and unjustifiably interfered with and undermined management of Argus for the benefit of creditors including ABN AMRO"); 18D ("conspired with ABN AMRO and Mercurius to remove plaintiff as president and chief executive officer"); 18E ("for the benefit of ABN AMRO, failed to comply with the by-laws of Argus"); and 18F ("for the benefit of ABN AMRO, failed to comply with the contractual obligations of Argus"). Where a claim, as in the instant case, revolves around the contractual rights of shareholders, the claim can be brought directly by the shareholders as the rights exist independently from the corporation. *Goodman v. Phoenix Container, Inc.*, 271 B.R. 821, 840 (N.D. Ill. 2001); *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 671, 662 N.E.2d 1358, 1363 (1st Dist. 1996).

7. In any event, Sandone has expressly couched his motion before this Court as based on "an abundance of caution" – i.e., even if *Sandone v. ABN AMRO*, Case No. 04-2232, is derivative in nature, Sandone has asked this Court to direct the trustee to assign his authority to Sandone so that the Argus shareholders can pursue their action against ABN AMRO. The trustee has declined to assign his authority in the absence of an order of this Court, so this motion by Sandone is necessary to protect the interests of the Argus shareholders.

WHEREFORE, Sandone respectfully requests that this Court order the bankruptcy trustee to assign his authority to Sandone, consistent with the foregoing and the terms of the draft order attached to his motion.

RANDALL J. SANDONE, Plaintiff, by one of his attorneys, GARY D. FORRESTER of the law firm of PHEBUS & KOESTER

_____
Gary D. Forrester

## CERTIFICATE OF SERVICE

I, GARY D. FORRESTER, certify I served this Motion by mailing a copy to:

> P. Stephen Miller
> Trustee for Argus Systems Group, Inc.
> 11 East North Street
> Danville, Illinois 61832

> James W. Evans
> Evans, Froehlich, Beth & Chamley
> 44 Main Street, Suite 310
> Champaign, Illinois 61820

from Urbana, Illinois, on this 12th day of April, 2005.

_____

PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400