E-FILED
Tuesday, 12 July, 2005 01:43:02 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| RANDALL J. SANDONE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-2232 |
| | ) | |
| vs. | ) | Hon. Harold A. Baker |
| | ) | |
| ABN AMRO BANK N.V., Amsterdam, a Dutch corporation; and ABN AMRO VENTURES B.V., Amsterdam, a Dutch Corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

Plaintiff's suit for diminution of shareholder value is transparently and indisputably derivative in nature and can only be asserted by or on behalf of the allegedly harmed corporation, Argus Systems Group, Inc. ("Argus"). Plaintiff has not claimed any injury distinct from that allegedly incurred by other shareholders. Thus, Plaintiff lacks standing to bring this claim against defendants ABN AMRO Bank N.V. and ABN AMRO Ventures B.V. ("Defendants").

In fact, Plaintiff could not ever sue derivatively, because Argus is now in Chapter 7 bankruptcy, the bankruptcy trustee has exclusive authority to bring such a claim on behalf of the corporation and its shareholders. Plaintiff tried to divest the trustee of that exclusive authority, and was rebuffed by the bankruptcy court and by Chief Judge McCuskey on appeal. Absent that authority, Plaintiff cannot bring a derivative suit against Defendants.

Even were Argus were not a bankrupt entity, the Second Amended Complaint still would suffer from a basic, fatal defect: it does not state a claim upon which relief can be granted.

Courts have consistently rejected Plaintiff's respondeat superior theory of liability because it would dangerously expand the fiduciary duties of shareholders to other shareholders.

Several other defects warrant dismissal of the Second Amended Complaint, including improper service of process under the Hague Convention and lack of personal jurisdiction. Plaintiffs' third shot at a viable complaint in this Court should be his last. Plaintiff cannot assert a cause of action against Defendants in this Court, and it would be a futile waste of judicial resources to allow Plaintiff leave to amend any further. Accordingly, Defendants respectfully move this Court pursuant to Rules 12(b)(2), 12(b)(5), 12(b)(6), and 17(a) of the Federal Rules of Civil Procedure to dismiss the Second Amended Complaint with prejudice.

## RELEVANT BACKGROUND

I.     PLAINTIFF'S FACTUAL ALLEGATIONS.

Argus Systems Group, Inc. ("Argus") is an Illinois corporation. (2d Am. Cmplt. ¶ 4) Plaintiff, a citizen of the State of Illinois (*Id.* ¶ 1.A), was formerly Argus's president and chief executive officer. (*Id.* ¶ 4.) He was also an Argus shareholder. (*Id.*)

In 2001, Dutch corporations ABN AMRO Ventures B.V.[1] and Mercurius Belegginingsmaatshappij B.V. entered into a Stock Purchase Agreement to purchase shares of Argus's Class B Common Stock. (*Id.* ¶ 10, Ex. 2 at p. 1.) In connection with the Stock Purchase Agreement, ABN AMRO Ventures and Mercurius made loans to Argus totaling approximately $12 million. (*Id.* ¶ 21.) The Second Amended Complaint alleges that these loans "were intended to be converted to equity." (*Id.*)

On December 3, 2001, ABN AMRO Ventures and Mercurius also entered into a Voting Agreement with Argus and two of Argus's common stockholders, Plaintiff and Paul A. McNabb.

---

[1]    ABN AMRO Ventures is a subsidiary of ABN AMRO Bank N.V. (2d Am. Cmplt. ¶ 6.)

(*Id.* ¶ 10, Ex. 2 at p. 1.) The Voting Agreement provided that ABN AMRO Ventures and Mercurius could each designate one person to sit on the Argus Board of Directors so long as each owned at least 5 percent of Argus's stock. (2d Am. Cmplt. ¶ 11; Ex. 2 at p. 1.) ABN AMRO Ventures, which owned more than 5 percent of Argus's stock, appointed Keith Walz, managing director of ABN AMRO Private Equity (a Chicago-based business division of ABN AMRO Bank), to the Board in January 2002. (2d Am. Cmplt. ¶ 8, 11.) The Second Amended Complaint does not indicate the number or percentage of shares held by ABN AMRO Ventures, Mercurius, Plaintiff, or Paul McNabb, only that ABN AMRO Ventures "owned a minority stake." (*Id.* ¶ 16.) Nor does it indicate whether ABN AMRO Ventures and Mercurius held a majority or controlling interest in Argus in combination.

Plaintiff alleges that in the course of Mr. Walz's service on Argus's board, Mr. Walz violated his fiduciary duties to the shareholders of Argus. (*Id.* ¶¶ 23, 24.) Mr. Walz allegedly used his position to benefit Defendants and Mercurius by removing Plaintiff as Argus's president and CEO. (*Id.* ¶ 24.D.) Plaintiff further alleges that on May 23, 2003, Mercurius forced Argus into Chapter 7 "[w]ith the aide [sic] and assistance of ABN AMRO Bank and ABN AMRO Ventures, directly and through Keith Walz," in order to take advantage of the priority of interests of creditors over shareholders in the liquidation of Argus's assets.[2] (*Id.* ¶ 24.J.)

Plaintiff seeks to hold Defendants liable on a respondeat superior theory for the actions Mr. Walz took as a member of Argus's Board. (*Id.* ¶ 12.) Plaintiff does so on behalf of a

---

[2] *In re Argus Systems Group Inc.*, No. 03-91852 (Bankr. C.D. Ill. filed May 23, 2003) (docket available online at court website). According to the bankruptcy court docket, Argus remains in Chapter 7 proceedings, but those proceedings are winding down. The Trustee's Final Report and Account was filed on November 16, 2004, and the objection period expired on December 6. No order of dismissal has yet been entered.

putative class of all Argus shareholders, excluding Defendants, Mercurius, and former board members Paul McNabb and William O'Neill and their families.[3]  (*Id.* ¶ 25.)

## II.    JURISDICTIONAL FACTS.

Attached to this Memorandum and marked as Exhibit "A" is the Affidavit of Carly Lemans, Vice President of Group Legal at ABN AMRO Bank.  As to Defendants' contacts with Illinois, Lemans states as follows:

- "ABN AMRO Bank . . . and ABN AMRO Ventures are distinct legal entities.  Each is separately incorporated under the laws of The Netherlands and maintains its primary place of business in The Netherlands. . . . ABN AMRO Ventures is a subsidiary of ABN AMRO Bank." (Lemans Aff. ¶ 3)

- "***ABN AMRO Ventures does not currently do any business in the State of Illinois***.  It also does not have an agent for service of process in Illinois, does not own property in Illinois, does not maintain offices in Illinois, has no employees in Illinois, and does not keep books and records in Illinois.  It also does not have any subsidiaries operating in Illinois.  ABN AMRO Ventures formerly owned a minority stake in . . . [Argus].  ABN AMRO Ventures was just one among many stakeholders in Argus.  Argus is now in liquidation in the U.S. Bankruptcy Court for the Central District of Illinois.  Argus is the only Illinois corporation in which ABN AMRO Ventures has invested." (*Id.* ¶ 5 (emphasis added).)

- "Keith Walz, who sat on the board of Argus from January 2002 until Argus's bankruptcy, is managing director of ABN AMRO Private Equity.  ABN AMRO Private Equity is a business unit of ABN AMRO Bank.  It is not a business unit of ABN AMRO Ventures." (*Id.* ¶ 6.)

In early February 2005, summonses were delivered to Defendants in Amsterdam, The Netherlands, along with copies of the Amended Complaint.  The materials served did not include a summary of the litigation as required by Article 5 of the Hague Convention.  (*Id.* ¶ 7.)

---

[3]  Messrs. Walz, McNabb, and O'Neill are defendants in a tortious interference action captioned *Sandone v. Walz, et al.*, No. 02-L-0272 (filed Nov. 27, 2002), currently pending in the Circuit Court of the Sixth Judicial Circuit in Champaign County, Illinois.  Sandone filed his Fifth Amended Complaint in that action on June 30, 2005.

### III. RELATED PROCEDURAL MATTERS.

On April 1, 2005, Plaintiff filed an "Emergency Motion for Order of Assignment" in *In re Argus Systems Group, Inc.*, No. 03-91852, a Chapter 7 proceeding pending in the U.S. Bankruptcy Court for the Central District of Illinois. Plaintiff's Emergency Motion sought an order assigning to him "any and all authority the bankruptcy trustee may have to pursue a suit against ABN AMRO [sic] for diminution of shareholder value on behalf of the corporation and its shareholders." Following briefing and a hearing, the bankruptcy court denied Plaintiff's motion. Chief Judge McCuskey of the United States District Court for the Central District of Illinois affirmed the bankruptcy court's ruling. (*See* 7/8/05 Order and Judgment, attached hereto as Exhibit "B".)

### ARGUMENT

As a fundamental, threshold matter, Plaintiff lacks standing to bring his Second Amended Complaint. Plaintiff's claims are derivative in nature and are now vested exclusively in the bankruptcy trustee. Dismissal with prejudice is appropriate because, as reflected in Chief Judge McCuskey's July 8 order, Plaintiff will *never* have standing to assert derivative claims against Defendants.

Plaintiff's Second Amended Complaint suffers from several other infirmities. First, Plaintiff has failed to comply with federal and state procedural prerequisites to bringing a derivative claim. In addition, Plaintiff has failed to state a claim. Finally, jurisdiction is improper, as Plaintiff has not served process in accordance with the Hague Convention, and has failed to establish personal jurisdiction over Defendant ABN AMRO Ventures. Accordingly, the Second Amended Complaint should be dismissed with prejudice.

### IV. THE SECOND AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT IS DERIVATIVE AND BELONGS TO ARGUS'S BANKRUPTCY ESTATE.

Under Illinois law, Plaintiff's claim on behalf of Argus's shareholders is derivative. That claim therefore belonged to Argus, the real party in interest, and has now passed to Argus's Chapter 7 bankruptcy estate. Thus, Plaintiff lacks standing to assert his claim, which is vested exclusively in the bankruptcy trustee. In addition, because Plaintiff has failed to join the estate, an indispensable party to this action, his claim must be dismissed pursuant to Rule 17(a).

#### A. Plaintiff Lacks Standing to Sue Defendants Directly as a Matter of Law.

The question of whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law of the state of incorporation. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589-90 (7th Cir. 2003), *cert. denied*, 541 U.S. 975 (2004); *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996). Argus is an Illinois corporation, so Illinois law applies.

Illinois law is clear that a shareholder claim based on diminution of corporate share value is derivative and may only be brought on behalf of the corporation. *See Small v. Sussman*, 713 N.E.2d 1216, 1220 (Ill. App. Ct. 1st Dist. 1999) (holding that shareholder's suit against director and dominant shareholder for waste of corporate assets and diminution in share value was derivative); *Cashman v. Coopers & Lybrand*, 623 N.E.2d 907, 911 (Ill. App. Ct. 2d Dist. 1993) ("The corporation ceases to be a going concern, which necessarily results in the shareholders' stock becoming devalued. The corporation is the logical entity to pursue a claim . . . and to share its recovery with its stockholders if it prevails."). This is precisely Plaintiff's claim: he alleges that, by the actions of Mr. Walz as an Argus board member, "class members were damaged in that they received no dividends and the value of the stock ultimately declined to worthless, and the corporation was forced into bankruptcy, and it was unable to have an initial public offering

which would have substantially compensated the class members all of whom were start-up investors." [4] (2d Am. Cmplt. ¶ 27.) By bringing a derivative claim, Plaintiff lacks standing to sue in his own right.

It is true that in limited circumstances, a shareholder who suffers an injury *distinct* from other shareholders has standing to bring a non-derivative action on his own behalf. *See Frank*, 83 F.3d at 160; *Small*, 713 N.E.2d at 1220-21. [5] But plaintiff has alleged nothing of the sort: Plaintiff's damages allegation is limited solely to diminution of Argus's corporate value. (2d Am. Cmplt. ¶ 27.) Moreover, Plaintiff seeks class certification and alleges class damages, but not any individual damages (meaning, of course, that if the Court denies class certification, there will be no amount in controversy and thus no subject matter jurisdiction). (*Id.*)

In sum, Plaintiff has failed to allege that his individual injury was in any way distinct from the injury suffered by other shareholders. Accordingly, he lacks standing to bring this claim on his own behalf. For the same reason, Plaintiff's claim should be dismissed for violating Rule 17(a), which mandates joinder of the real party in interest, Argus. *See Frank*, 83 F.3d at 159.

---

[4] Plaintiff's alleged class includes all Argus shareholders minus those he views as wrongdoers: Defendants, Mercurius, and the individual defendants in Plaintiff's state court action (Messrs. Walz, McNabb, and O'Neill). (2d Am. Cmplt. ¶ 25.)

[5] Illinois law, like Delaware law, permits a minority shareholder to bring a direct, non-derivative action against a majority, controlling shareholder. *See Jaffe Commercial Fin. Co. v. Harris*, 456 N.E.2d 224, 230 (Ill. App. Ct. 1st Dist. 1983) ("The law is uncontroverted that the individuals who *control* corporations owe fiduciary duties to their corporation and its shareholders.") But that does not avail Plaintiff, who has failed to allege that Defendants were majority shareholders, that he was a minority shareholder, or that Defendants owed any direct fiduciary duty to him. (In fact, Plaintiff alleges that ABN AMRO Ventures "owned a minority stake in Argus" (2d Am. Cmplt. ¶ 16.) Plaintiff also does not allege that Argus was a closely held corporation under Illinois law. *See Small*, 713 N.E.2d at 1220-21 (rejecting plaintiffs' argument that minority shareholders have the right to bring a direct action against co-shareholders when the corporation is closely held). Plaintiff thus cannot bring his claim on a non-derivative basis.

### B.     Plaintiff Also Lacks Standing Under the Bankruptcy Code Because His Claim Belongs Exclusively to the Bankruptcy Trustee.

Plaintiff lacks standing for an additional, independent reason: Argus's bankruptcy divested Plaintiff of standing to sue derivatively. With the filing of Argus's Chapter 7 bankruptcy petition, Plaintiff's claim became the property of Argus's bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (stating that the property of the estate includes, with limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case"); *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541").[6] From then forward, the authority to bring this breach-of-fiduciary-duty claim vested exclusively in the bankruptcy trustee. As the Seventh Circuit observed in *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987) (emphasis added):

> It has also long been held that rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate *which the trustee alone has the right to pursue after the filing of a bankruptcy petition.*

*Accord Wright v. Abbott Capital Corp.*, 398 N.E.2d 1147, 1149-50 (Ill. App. Ct. 1st Dist. 1979) (holding that plaintiff lacked standing to assert derivative suit on behalf of corporation once the corporation went into bankruptcy). Only the bankruptcy trustee, and not Plaintiff, can bring the claims in Plaintiff's Second Amended Complaint. Plaintiff tried to obtain that authority. He was unsuccessful. The bankruptcy court denied Plaintiff's motion to divest the trustee of his exclusive authority, and Chief Judge McCuskey affirmed the bankruptcy court's ruling. (*See* Ex. B.) Accordingly, this Court should dismiss this action. *See In re Perkins*, 902 F.2d 1254, 1258

---

[6]     *See also Kennedy*, 348 F.3d at 589 (noting that a derivative suit "is an asset of the corporation – which means that if, as in this case, the corporation is in bankruptcy, the suit is an asset of the bankrupt estate").

(7th Cir. 1990) ("When a third party tries to assert an action still vested in the trustee, the court should dismiss the action.").

### C. Plaintiff Has Failed to Satisfy the Procedural Requirements for Bringing a Derivative Claim.

Aside from his standing problems, Plaintiff has failed to satisfy several federal and state procedural requirements for bringing a derivative action.

#### 1. Plaintiff has failed to satisfy 805 ILCS 5/7.80(b).

Under Illinois law, a shareholder may only institute derivative litigation after making a demand to the corporation's board to sue in its own name, or by establishing an exception to the demand requirement. *See* 805 ILCS 5/7.80(b); *Frank*, 83 F.3d at 160 (collecting cases). Plaintiff has made no demand nor established any exception to that requirement. This rule is not a mere technicality; it is a substantive condition precedent to Plaintiff's claims.

#### 2. Plaintiff has failed to satisfy Federal Rule 23.1.

Federal Rule of Civil Procedure 23.1 applies to actions, such as this one, "brought by one or more shareholders or members to enforce a right of a corporation." The Rule requires that the complaint be *verified* and that it "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Plaintiff has not verified the Second Amended Complaint, nor made the necessary allegations with particularity. He thus fails to state a claim.

### V. THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Second Amended Complaint rests on a strained theory of respondeat superior liability that has been soundly rejected by courts that have considered it. Accordingly, it must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. A Corporation Is Not Vicariously Liable for Its Employee's Breach of Fiduciary Duty In His Role as Director of Another Corporation.

Plaintiff asserts that Defendants should be held vicariously liable for Mr. Walz's conduct as a member of Argus's board. That theory of liability violates settled law. Courts have consistently held that vicarious liability based on the acts of a director would improperly and dangerously expand the fiduciary duties of investors. This Court should follow the lead of these other courts and dismiss the Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).

#### 1. Courts Applying the Law of Other States Have Consistently Rejected Plaintiff's Respondeat Superior Theory.

The most recent of these cases, *CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146 (D. Mass 2003), is on all fours with this case. There, the founders of Internet startup CCBN invited Thomson Financial to become an investor. *See id.* at 150. As a condition of that investment, Thomson (like ABN AMRO Ventures and Mercurius in the present case) was allowed to designate two members of CCBN's board of directors. *See id.* CCBN alleged that Thomson's board designees misappropriated CCBN's confidential information and corporate opportunities for the benefit of Thomson. The court granted Thomson's motion to dismiss, concluding that, under Delaware law, Thomson could not be vicariously liable for the actions of its designees on CCBN's board. *See id.* at 151-52 ("While this is an interesting theory, courts applying Delaware law have rejected it. . . . I decline to create a novel theory of liability under Delaware law.").

The *CCBN* court relied on the well-reasoned opinion in *U.S. Airways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482 (S.D.N.Y. 1997). In that case, USAir asserted a claim of respondeat superior liability against British Airways based on the alleged wrongdoing of BA's employees who served on USAir's board. USAir did not allege that BA was the majority or

controlling shareholder of USAir. *See id.* at 494. The court, applying Delaware law, dismissed the claim, stating that "the imposition of respondeat superior liability on a corporation for breach of fiduciary duty by its directors on the board of another corporation would completely undermine Delaware corporate law, which limits such fiduciary duty to majority and controlling shareholders." *Id. Accord Emerson Radio Corp. v. Int'l Jensen Inc.*, 1996 WL 483086, *20 n.18 (Del. Ch. Aug. 20, 1996) ("The notion that a stockholder could become a fiduciary by attribution (analogous to the result under the tort doctrine of respondeat superior) would work an unprecedented, revolutionary change in [Delaware] law, and would give investors in a corporation reason for second thoughts about seeking representation on the corporation's board of directors."). Another federal court reached the same conclusion under California law. *See Medical Self Care, Inc. v. Nat'l Broad. Co., Inc.*, 2003 WL 1622181, *7 (S.D.N.Y. Mar. 28, 2003) (applying California law and dismissing plaintiff's respondeat superior claim for the fiduciary duty breaches of defendant's designee on plaintiff's board).[7] (Courtesy copies of the foregoing *Emerson Radio Corp.* <u>and</u> *Medical Self Care* cases are attached hereto as Exhibits "C" and "D".)

---

[7] *In re Papercraft Corp.*, 165 B.R. 980 (Bankr. W.D. Pa.), *vacated on other grounds*, 187 B.R. 486 (Bankr. W.D. Pa. 1995), *rev'd on other rounds*, 211 B.R. 813 (W.D. Pa. 1997), *aff'd sub nom. Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998), is readily distinguishable. In *Papercraft*, the defendant corporation (CVC) was a shareholder that nominated one of its own officers to serve on the board of Papercraft. At the express direction of CVC, that officer surreptitiously purchased discounted claims from Papercraft based on inside information, and failed to make full disclosure of the purchase as required of "insiders" under the Bankruptcy Code. *See* 165 B.R. at 985-86. The court emphasized the evidence demonstrating that CVC expressly authorized its nominee, who "adhered to CVC's directives," to purchase the notes based on inside information in furtherance of CVC's business objectives. *Id.* at 990-91. Here, in contrast, there are no allegations that Defendants authorized or directed any actions taken by Mr. Walz in his role as an Argus director. Moreover, *Papercraft* was decided under Pennsylvania law, and it has never been followed by any other court, even though it was handed down before the better-reasoned *CCBN* and *U.S. Airways* cases.

### 2. Given the Opportunity, Illinois Courts Would No Doubt Reject Plaintiff's Respondeat Superior Theory.

No Illinois court has yet addressed this issue, which only underscores the flimsiness of Plaintiff's theory. But it is clear that same result will prevail under Illinois law once the Illinois courts reach the issue. Illinois corporate law follows Delaware law in imposing a fiduciary duty to shareholders only on the majority, controlling shareholder, and not on minority shareholders.[8] There is no allegation here that Defendants were the majority, controlling shareholders of Argus. In fact, Plaintiff alleges that ABN AMRO Ventures owned a *minority* stake in Argus. (2d Am. Cmplt. ¶ 16.) Allowing imposition of liability on Defendants on a respondeat superior basis would therefore vastly expand the fiduciary duties of shareholders, as the *U.S. Airways* court feared. *See* 989 F. Supp. at 494. Under these circumstances, this Court should not create a novel theory of liability under Illinois law. *See, e.g.*, *CCBN.Com*, 270 F. Supp. 2d at 152 ("in diversity cases the federal courts do not undertake to restructure state law") (quotation omitted). Instead, the Court should dismiss the Second Amended Complaint for failure to state a claim.

## VI. THE SECOND AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THE COURT LACKS JURISDICTION.

This Court lacks personal jurisdiction over Defendants because Defendants were not properly served in accordance with the Hague Convention. In addition, Plaintiff has not established and cannot establish that ABN AMRO Ventures is subject to "doing business"

---

[8] *See, e.g.*, *Jaffe*, 456 N.E.2d at 230-31 ("The law is uncontroverted that the individuals who *control* corporations owe fiduciary duties to their corporation and its shareholders.") (emphasis added); *Graham v. Mimms*, 444 N.E.2d 549, 555 (Ill. App. Ct. 1st Dist. 1982) ("as *majority shareholder and dominant figure in the control of the corporation*, the fiduciary duties [defendant] owed to [the corporation] and [minority shareholders] did not cease when he resigned as officer and director and installed his sister and brother-in-law in these positions") (emphasis added); *In re Joy Recovery Tech. Corp.*, 257 B.R. 253, 273 (Bankr. N.D. Ill. 2001) ("[I]f a shareholder exercises *actual control and direction* over corporate management, a fiduciary duty will be imposed.") (quotation omitted and emphasis added).

jurisdiction under the Illinois Long-Arm Statute. Accordingly, this Court should dismiss the Second Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(5).[9]

### 1. **Defendants Have Not Been Properly Served.**

As Plaintiff acknowledges, Defendants are "corporation[s] organized under the laws of the Netherlands with their principal offices in the Netherlands, and accordingly [are] citizens of a foreign state." (2d Am. Cmplt. ¶¶ 1.B, 1.C.) Service of process on corporations in The Netherlands must be performed in accordance with the Hague Convention. *See* Fed. R. Civ. P. 4(f)(1), 4(h)(2).

Plaintiff has failed to comply with the plain language of the Hague Convention. Article 5 of the Convention requires the litigant to attach a summary of the document to be served. The summonses delivered to the Defendants in Amsterdam did not include a summary of the Second Amended Complaint, in violation of Article 5. (Ex. 1 ¶ 9.) Accordingly, service of process is insufficient and the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(5).

### 2. **Plaintiff Has Not and Cannot Establish that Defendants Are Subject to "Doing Business" Jurisdiction.**

Plaintiff appears to assert that this Court has general personal jurisdiction over Defendant ABN AMRO Ventures on the basis that, "[t]o Plaintiff's information and belief, at all relevant times ABN AMRO Venture's [sic] North America operations were headquartered in Chicago,

---

[9] The Second Amended Complaint's allegations are also insufficient to establish subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Plaintiff pleads that "[t]he amount in controversy exclusive of interest and costs is in excess of $75,000" (2d Am. Cmplt. ¶ 1.D) and prays for "judgment on behalf of the class and against [Defendants] in the amount of $60 million" (*Id.* ¶ 27). Plaintiff fails, however, to allege that he *individually* suffered in excess of $75,000 in damages. It is well established that the named plaintiff in a federal class action must demonstrate that he individually suffered in excess of $75,000 in damages to satisfy the jurisdictional minimum. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997) ("At least one named plaintiff must satisfy the jurisdictional minimum."). Plaintiff has not done that here.

Illinois" (2d Am. Cmplt. ¶ 9). That allegation is incorrect. As explained the affidavit of Carly Lemans, Vice President of Group Legal at ABN AMRO Bank, ABN AMRO Ventures does not own property in Illinois, does not own offices in Illinois, does not have employees in Illinois, and does not keeps books or records in Illinois. (Ex. 1 ¶ 5.) This Court therefore may not exercise general personal jurisdiction on this basis.

In addition, Plaintiff appears to assert that this Court has general personal jurisdiction over Defendants under the "doing business" prong of the Illinois Long Arm Statute, 735 ILCS § 5/2-209(b)(4). (*See* 2d Am. Cmplt. ¶ 13.) But under Illinois case law, a corporation does not "do business" in Illinois unless it transacts business in Illinois "not occasionally or casually, but with a fair measure of permanence and continuity." *Cook Assocs., Inc. v. Lexington United Corp.*, 429 N.E.2d 847, 853 (Ill. 1981) (quotation omitted). "[T]here must be a course of business or regularity of activities as opposed to isolated or sporadic acts." *Riemer v. KSL Rec. Corp.*, 807 N.E.2d 1004, 1012 (Ill. App. Ct. 1st Dist. 2004) (quotation omitted).

Plaintiff's allegations are insufficient to show that the activities of ABN AMRO Ventures satisfied these jurisdictional minimums. As explained the affidavit of Carly Lemans, ABN AMRO Ventures' sole business conduct in Illinois was its one-time purchase of a minority stake in Argus in December 2001 and its January 2002 designation of Walz to sit on Argus's board. (Ex. 1 ¶ 5.) ABN AMRO Ventures has not invested in any other Illinois corporation.[10] (*Id.*)

ABN AMRO Ventures' one-off investment in Argus cannot be considered a "course of business or regularity of activities as opposed to isolated or sporadic acts." *Riemer*, 348 Ill. App.

---

[10] Even substantial earnings from Illinois have not been considered indicative of whether a corporation has established a permanent and continuing relationship with Illinois. *See, e.g.*, *Hulsey v. Scheidt*, 258 Ill. App. 3d 567, 572-73 (1st Dist. 1994); *Rokeby-Johnson v. Derek Bryant Ins. Brokers, Ltd.*, 230 Ill. App. 3d 308, 319 (1st Dist. 1992); *Kadala v. Cunard Lines, Ltd.*, 226 Ill. App. 3d 302, 315 (1st Dist. 1991).

3d at 35. Moreover, it falls outside the time period this Court can consider for jurisdictional purposes. That period "begins approximately when the claim arose and it extends to when suit was filed and service of process was attempted." *Id.* at 35-36. However, "the critical point of inquiry is the time the defendant was made a party to the suit and was served." *Id.* at 36. According to the Second Amended Complaint. ABN AMRO Ventures invested in Argus in December 2001 and designated Mr. Walz as a board member in January 2002. (*See, e.g.*, 2d Am. Cmplt. ¶¶ 10-11 & Ex. 2.) Plaintiff defines the purported class as persons injured on May 23, 2003, when Argus filed for bankruptcy. (*See id.* ¶ 25.) Plaintiff attempted service in early February 2004. Plaintiff has not established that ABN AMRO Ventures did business with "a fair measure of permanence and continuity" between May 23, 2003, and early February 2004.

In sum, the Second Amended Complaint does not allege sufficient contacts to establish general jurisdiction over ABN AMRO Ventures, and Defendants have presented affirmative evidence and case authority that there cannot be personal jurisdiction over ABN AMRO Ventures in this matter. In addition, if this Court determines that it may exercise personal jurisdiction over ABN AMRO Bank, that jurisdiction does not extend to ABN AMRO Bank's subsidiaries or affiliates. *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 ("[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully move this Court to dismiss the Second Amended Complaint with prejudice.

Date:  July 12, 2005                                         Respectfully submitted,

                                                             s/ Edward M. Wagner
                                                             Edward M. Wagner
                                                             Richard P. Klaus
                                                             HEYL ROYSTER VOELKER & ALLEN
                                                             102 E. Main Street
                                                             Suite 300
                                                             P.O. Box 129
                                                             Urbana, Illinois  61803-0129
                                                             (217) 334-0060
                                                             *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 12, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gary D. Forrester, Esq.
Joseph W. Phebus, Esq.
Daniel J. Pope, Esq.
PHEBUS & KOESTER
136 W. Main St.
Urbana, IL  61801

                                                            s/ Edward M. Wagner
                                                           Edward M. Wagner
HEYL ROYSTER VOELKER & ALLEN
102 E. Main Street
Suite 300
P.O. Box 129
Urbana, Illinois  61803-0129
Ph: (217) 334-0060
Fax: (217 334-9295
ewagner@hrva.com