**E-FILED**
Wednesday, 12 October, 2005  04:04:19 PM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| RANDALL J. SANDONE, | ) | |
| | ) | JUN 3 0 2005 |
| Plaintiff, | ) | |
| | ) | CLERK OF THE CIRCUIT COURT |
| vs. | ) | CHAMPAIGN COUNTY, ILLINOIS |
| | ) | No. 02-L-272 |
| KEITH WALZ, PAUL McNABB, WILLIAM | ) | |
| O'NEILL; ABN AMRO BANK N.V., | ) | |
| Amsterdam, a Dutch corporation; and ABN | ) | |
| AMRO VENTURES, B.V., Amsterdam, a | ) | |
| Dutch corporation, | ) | |
| | | |
| Defendants. | | |

## FIFTH AMENDED COMPLAINT

### Index to Fifth Amended Complaint

| | | Page |
|---|---|---|
| Count 1 vs. Walz & the ABN AMRO Defendants (as revised pursuant to this Court's order made on June 3, 2005; Fourth Amended Complaint previously answered by Defendant Walz) | Tortious Interference With Contract of Employment | 2 |
| Count 2 vs. McNabb & O'Neill (Fourth Amended Complaint previously answered by Defendants McNabb & O'Neill) | Tortious Interference With Contract of Employment | 11 |
| Count 3 (dismissed with prejudice June 6, 2003) | Defamation | 17 |
| Count 4 (dismissed with prejudice on February 3, 2005) | Wrongful Termination | 17 |
| Count 5 vs. Walz, McNabb, O'Neill, & the ABN AMRO Defendants (as revised pursuant to this Court's order made on June 3, 2005; Fourth Amended Complaint previously answered by individual Defendants) | Tortious Interference With Prospective Economic Advantage | 21 |

EXHIBIT

A

COMES NOW Plaintiff Randall J. Sandone, by his attorneys, Phebus & Koester, pursuant to the Court's orders made on June 3, 2005, and files this Fifth Amended Complaint, amending only Counts 1 and 5 so as to separate out the allegations pertaining to the respective conduct of Defendant ABN AMRO, Bank N.V. and Defendant ABN AMRO Ventures, B.V.

## Count 1
### (Tortious Interference with Contract of Employment by Defendants Keith Walz, ABN AMRO Bank, and ABN AMRO Ventures)

COMES NOW Plaintiff Randall J. Sandone, by his undersigned attorneys, Phebus & Koester, and complaining of Defendants Keith Walz ("Walz"); ABN AMRO BANK, N.V., Amsterdam, a Dutch corporation ("ABN AMRO Bank"); and ABN AMRO VENTURES, B.V., Amsterdam, a Dutch corporation ("ABN AMRO Ventures"), jointly and severally, avers:

1.    Plaintiff at all relevant times was the President and Chief Executive Officer of Argus Systems Group, Inc., an Illinois corporation ("Argus"), the principal place of business of which is located in Champaign County, Illinois.

2.    At all relevant times, Defendant ABN AMRO Ventures was a subsidiary of Defendant ABN AMRO Bank. *See* attached Plaintiff's Exhibit 7, copy of affidavit of Carly Lemans.

3.    At all relevant times, ABN AMRO Bank did business as ABN AMRO Private Equity. *See* attached Plaintiff's Exhibit 7, copy of affidavit of Carly Lemans.

2

4.    To Plaintiff's information and belief, at all relevant times ABN AMRO Bank d/b/a ABN Private Equity had its principal North American office for ABN Private Equity in Chicago, Illinois.

5.    At all relevant times, Defendant Walz was employed by ABN AMRO Bank as a managing director of ABN AMRO Private Equity, with his principal place of employment being ABN Private Equity's office in Chicago, Illinois.

6.    To Plaintiff's information and belief, at all relevant times ABN AMRO Bank's North America operations were headquartered in Chicago, Illinois.

7.    On December 3, 2001, ABN AMRO Ventures entered into a stock purchase agreement to acquire stock in Argus and in conjunction therewith a voting agreement (a copy of which is attached hereto as Exhibit 4), a registration of rights agreement, a security agreement and various other agreements.

8.    Pursuant to said agreements, ABN AMRO Ventures had the right to designate and appoint one member of the Board of Directors of Argus, and in or about January, 2002, did appoint Defendant Walz, a managing director of the ABN AMRO Private Equity unit of ABN AMRO Bank.

9.    At all relevant times, while serving as a director of Argus, Walz was in the course and scope of his employment with ABN AMRO Bank; accordingly ABN AMRO Bank is liable for his acts or omissions complained of herein under the doctrine of *respondeat superior*.

10.    At all relevant times, while serving as a director of Argus, Walz was acting as agent for his principal ABN AMRO Ventures pursuant to his designation and appointment to the Argus Board by ABN AMRO Ventures as aforesaid, and was

acting within the course and scope of that agency relationship; accordingly, ABN AMRO Ventures is liable for his acts or omissions complained of herein under the doctrine of *respondeat superior*.

11.    As set forth hereinafter, Walz in his capacity as an employee of ABN AMRO Bank, and in his capacity as an agent of ABN AMRO Ventures, did tortiously interfere with Plaintiff's contract of employment with Argus.

12.    At all relevant times, ABN AMRO Ventures owned a minority stake in Argus, based in Savoy, Illinois. *See* attached Plaintiff's Exhibit 7, copy of affidavit of Carly Lemans.

13.    At all relevant times, ABN AMRO Bank was doing business in the State of Illinois, including but not limited to engaging in financial transactions including acquisitions and lending in the State of Illinois.

14.    At all relevant times, ABN AMRO Ventures was doing business in the State of Illinois, including but not limited to engaging in financial transactions including acquisitions and lending in the State of Illinois.

15.    To Plaintiff's information and belief, at all relevant times Defendant ABN AMRO Bank and Defendant ABN AMRO Ventures were both subsidiaries of ABN AMRO Holdings, N.V., a Dutch corporation ("ABN AMRO Holdings"), and as a consequence thereof, they shared a common interest in promoting the profitability of and interests of each other.

16.    To Plaintiff's information and belief, at all relevant times ABN AMRO Bank, ABN AMRO Ventures and/or ABN AMRO Holdings shared substantial business interests with Mercurius Beleggingsmaatschappij B.V., a Dutch corporation

4

("Mercurius"), and as a consequence thereof ABN AMRO Bank and ABN AMRO Ventures had an interest in promoting the profitability and interests of Mercurius.

17.    Pursuant to 735 ILCS 5/2-209(a), 735 ILCS 5/2-209(b), and/or 735 ILCS 5/2-209(c), this Court has jurisdiction over Defendants ABN AMRO Bank and ABN AMRO Ventures by virtue of the allegations set forth herein, and including but not limited to paragraphs 1-15 above and paragraph 25 below.

18.    At all relevant times, Plaintiff had a valid and enforceable written employment contract with Argus, a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference thereto, which contract provided, *inter alia*, "no modification or amendment of any of the terms, conditions, or provisions may be made other than by written agreement signed by the parties." (Exhibit 1, paragraph 12.)

19.    At all relevant times after Walz's appointment to the Argus Board of Directors in or about January 2002, in that capacity he was aware of the existence of the said valid and enforceable written employment contract between Plaintiff and Argus, a copy of which is attached hereto and marked as Exhibit 1 and incorporated herein by reference thereto.

20.    The By-Laws of Argus in force and effect on November 1, 2002, and at all relevant times provided, *inter alia*, in Article IV, Section 3:

Removal. With the exception of the Chairman of the Board of Directors and the President, any officer or agent elected or appointed by the Board of Directors may be removed by the board of directors whenever in its judgment the best interests of the corporation would be served thereby, *but such removal shall be without prejudice to the contract rights, if any, of the person so removed. The Chairman of the Board of Directors and/or the President may be removed only with the concurrence of the shareholders of the company as evidence by the affirmative vote of a 2/3$^{rds}$ majority of holders (or proxy holders) of the outstanding common stock of the corporation at a special meeting held for that purpos*e.

(Emphasis added.) Excerpts from the By-Laws, including Article IV, are attached hereto as Exhibit 2 and incorporated herein by reference thereto.

21.     At all relevant times, Plaintiff was an Argus shareholder and controlled a substantial amount of the common stock of the corporation. Accordingly, at all relevant times there was a substantial likelihood that two-thirds of the then-outstanding shares would not concur in Plaintiff's removal as President.

22.     At all relevant times, two lenders, to wit: ABN AMRO Ventures and Mercurius had loans to Argus which from their inception were intended to be converted to equity, which conversion would have allowed them to obtain sufficient additional shares of stock to assure a two-thirds vote to ratify Plaintiff's removal. However, to do so would require that ABN AMRO Ventures and Mercurius convert a combined total of approximately $12 million of secured debt to equity in common stock.

23.     While these conversions would have been to the financial detriment of ABN AMRO Ventures, ABN AMRO Bank, and Mercurius under the then-circumstances of Argus, the conversions would have been advantageous to Argus in that they would have reduced by approximately $12 million Argus' outstanding debt thereby increasing Argus' likelihood of survival and success.

24.     While acting as a director of Argus, Walz owed:

A.     A duty to Argus, its shareholders, its other directors, and its officers and employees, including Plaintiff, to refrain from utilizing his office as director to maliciously harm other directors, officers and employees of Argus, including Plaintiff;

B.     A duty to Argus, its shareholders, its other directors, and its officers and employees, including Plaintiff, to put the interests of Argus and its shareholders ahead of the interests of ABN AMRO Ventures and ABN AMRO

Bank, and others who were associated with Walz or ABN AMRO Ventures or ABN AMRO Bank;

C.    A duty to Argus, its shareholders, its other directors, and its officers and employees, including Plaintiff, to refrain from intentionally and/or unjustifiably inducing or causing Argus to breach Plaintiff's employment contract for ABN AMRO Venture's gain and/or ABN AMRO Bank's gain or to further the goals of ABN AMRO Ventures and/or ABN AMRO Bank;

D.    A duty to Argus, its shareholders, its other directors, and its officers and employees, including Plaintiff, to refrain from intentionally and/or unjustifiably inducing or causing Argus to breach Plaintiff's employment contract with the intent to harm Plaintiff; and

E.    A duty to Plaintiff to refrain from intentionally and/or unjustifiably inducing or causing Argus to breach its said contract with Plaintiff.

25.    Acting in Illinois in the course and scope of his employment with

ABN AMRO Bank, and in the course and scope of his agency relationship with ABN

AMRO Ventures, Walz violated one or more of the aforesaid duties in one or more of the

following ways or a combination thereof:

A.    Intentionally and unjustifiably caused or induced Argus to breach Plaintiff's employment contract in violation of his aforesaid duties at a meeting held on November 1, 2002, by purporting with the other Argus Board members to terminate Plaintiff's employment "*without cause* as CEO and President" (emphasis added) and to appoint co-defendant McNabb as President of Argus without submitting their action to the shareholders for concurrence as required by the By-Laws. Minutes of meeting are attached hereto as Exhibit 3.

B.    Intentionally and unjustifiably interfered with and undermined Plaintiff's management of Argus so as to achieve the removal of Plaintiff as president of Argus.

C.    Disclosed confidential information concerning Argus to ABN AMRO Ventures, ABN Bank, other entities within the ABN AMRO family of companies, and Mercurius, for the purpose of interfering with Plaintiff's management of Argus and removing him as president.

D.    Disclosed confidential information concerning Argus to ABN AMRO Ventures, ABN AMRO Bank, other entities within the ABN AMRO family of companies, and Mercurius, with the intent of interfering with Plaintiff's management of Argus so as to manipulate the management and operation of

7

Argus for the benefit of ABN AMRO Ventures, ABN AMRO Bank, and
Mercurius.

E.    Did not submit the matter of Plaintiff's removal to the Argus
shareholders at *any* time, even after this Court suggested that Defendants might
still possibly submit the question to the shareholders, and now that Argus is in
Chapter VII bankruptcy in the United States District Court for the Central District
of Illinois, Cause No. 03-91852, filed May 23, 2003, it is no longer possible for
Defendants to submit the matter.

26.    As a direct and proximate result of Walz's aforesaid malicious,

intentional, and/or wrongful acts, Argus breached Plaintiff's employment contract

thereby causing damages to Plaintiff in that:

A.    He has not received the remainder of all future salary provided for
under his employment contract with Argus for the period subsequent to
November 1, 2002, in the sum of $275,000.00;

B.    He has not received the minimum annual bonus payable under
section 4.2 of his employment contract with Argus, the amount of which is
presently unknown;

C.    He has not received the lump sum termination fee of $250,000
under his employment contract with Argus (see paragraph 8, Exhibit 1);

D.    He has not received past wages, sales commissions, payment for
accrued personal time and vacations, or reimbursement for business expenses
under his employment contract with Argus, all in the total sum of $72,598.00;

E.    He was hindered and prevented from attending to his usual duties
and affairs, including his duties as President and CEO of Argus;

F.    He has not continued to receive health, life and disability
insurance, and other benefits within the meaning of paragraph 5(b) of the his
employment contract (Exhibit 1), the value of which is presently unknown;

G.    He has not received additional consideration within the meaning of
paragraph 7 of his employment contract (Exhibit 1), the value of which is
presently unknown.

H.    He has suffered and will continue to suffer emotional anguish,
embarrassment, disgrace, and damage to his professional reputation, all to his
damages.

8

27.    There was a causal connection between Walz's conduct as set forth

herein and Argus's breach of Plaintiff's employment contract as set forth herein, resulting

in the injury suffered by Plaintiff, as follows:

A.    At the Argus Board Meeting on November 1, 2002 (minutes of which are attached hereto as Exhibit 3 and incorporated by reference thereto), in Plaintiff's absence, Walz and the other individual Defendants agreed as follows:

> "It was determined that Mr. Sandone will be terminated without cause as CEO and President. Mr. McNabb will provide a formal letter of termination, after board review, outlining terms to which the board agreed. They are:
>
> - Per Mr. Sandone's employment agreement, he will retain payment of his salary through the end of the year.
> - His office computer will be sold to him at a reasonable market price.
> - He will execute a standard reseller agreement.
> - The board agreed to negotiate in good faith for a source code license.
>
> The board recognized that there was a note outstanding to Mr. Sandone, as well as unpaid accrued personal time.
>
> The board requested that Mr. Sandone waive all other rights and obligations associated with his employment agreement dated 1 June 2001."

B.    At the Argus Board Meeting on December 4, 2002 (minutes of which meeting are attached hereto as Exhibit 5 and incorporated by reference thereto), in Plaintiff's absence, Walz together with the other individual Defendants froze and suspended payments of all monies due and payable to Plaintiff by Argus, including monies due and payable under his employment contract with Argus.

C.    At the Argus Board Meeting on December 27, 2002 (minutes of which meeting are attached hereto as Exhibit 6 and incorporated by reference thereto), in Plaintiff's absence, Walz together with the other individual Defendants determined that the previous action of Walz and the other individual Defendants on December 4, 2002, to freeze and suspend payment of monies due and payable to Plaintiff by Argus, would remain in force and that no payments would be made to Plaintiff by Argus.

9

D.    At the said Argus Board Meeting on December 27, 2002 (minutes of which meeting are attached hereto as Exhibit 6 and incorporated by reference thereto), in Plaintiff's absence, Walz together with the other individual Defendants acknowledged that negotiations between the Argus Board and Plaintiff (as referred to in the Board minutes for November 1, 2002) were never completed following Plaintiff's termination by Walz and the other individual Defendants, and further acknowledged that there were no agreed-upon terms of separation for the Board to approve.

E.    At no time did Walz or either of the other individual Defendants submit to the Argus shareholders their decision to freeze, suspend and stop payment to Plaintiff of monies that were due and payable to him even after this Court suggested that Walz and the other individual Defendants might still have possibly submitted the question of Plaintiff's removal to the Argus shareholders after the commencement of this lawsuit.

F.    Defendants' conduct and their decisions as set forth above remained in full force and effect until and after the filing of Argus's Chapter VII bankruptcy in the United States District Court for the Central District of Illinois, Cause No. 03-91852, filed May 23, 2003, and accordingly Defendants' said conduct and decisions became irrevocable thereafter, with the result that the conduct of Walz together with the other individual Defendants directly and proximately resulted in Plaintiff's damages as set forth herein.

28.    The actions of Walz were not clothed with qualified privilege in

that they were done maliciously toward Plaintiff to promote the interests of ABN AMRO

Ventures and/or the interests of ABN AMRO Bank and/or the interests of others with

whom ABN AMRO Ventures and/or ABN AMRO Bank were associated, in that they:

A.    Were done with the intent to harm the Plaintiff in that Walz and the other Argus Board members intentionally did not submit Plaintiff's removal to the shareholders for concurrence, thereby circumventing plaintiff's contractual right to termination benefits under his employment contract, so as to financially damage Plaintiff and create hardship for Plaintiff;

B.    Were done to promote the interests of ABN AMRO Ventures and/or ABN AMRO Bank and/or Mercurius in that:

i.    Walz and the other Argus Board members including co-defendant McNabb intentionally did not submit Plaintiff's removal to the shareholders for concurrence, so as to allow ABN AMRO Ventures and Mercurius to maintain their secured debt position

10

rather than to collectively convert approximately $12 million of secured debt to equity to assure the necessary shareholders' votes to remove the Plaintiff as President of Argus;

ii.     Walz's actions enabled ABN AMRO Bank, ABN AMRO Ventures, and Mercurius to effectuate the termination of Plaintiff's employment without collectively having to convert approximately $12 million of secured debt to common stock in Argus, and even though said conversions would have significantly increased the financial position of Argus in that said conversions would have reduced the company's debt by approximately $12 million;

iii.    The failure to submit the removal of Plaintiff as President of Argus to the company's shareholders was intended to avoid paying Plaintiff his monetary termination benefits under his employment contract so that the monies would be in Argus for the benefit of ABN AMRO Ventures, ABN AMRO Bank, and/or Mercurius as a secured creditor;

iv.     Walz's actions allowed ABN AMRO Ventures, ABN AMRO Bank, and Walz to reduce their exposure to lawsuits threatened by shareholder William Lacy.

WHEREFORE, Plaintiff prays judgment jointly and severally against Walz and against ABN AMRO, under the doctrine of *respondeat superior*, for $2,000,000.00 and for his costs of suit, and demands a trial by jury.

## Count 2

### (Tortious Interference with Contract of Employment by Defendants Paul McNabb & William O'Neill)

COMES NOW Plaintiff Randall J. Sandone by his undersigned attorneys, Phebus & Koester, and complaining of Defendants Paul McNabb ("McNabb") and William O'Neill ("O'Neill"), jointly and severally, avers:

1.      Plaintiff at all relevant times was the President and Chief Executive Officer of Argus Systems Group, Inc., an Illinois corporation ("Argus").

2.   At all relevant times, McNabb and O'Neill were members of the Board of Directors of Argus.

3.   At all relevant times O'Neill was a Director of Strategic Capital Bank, which had lent substantial funds to Argus.

4.   At all relevant times, plaintiff had a valid and enforceable written employment contract with Argus, a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference thereto, which contract provided, *inter alia*, "no modification or amendment of any of the terms, conditions, or provisions may be made other than by written agreement signed by the parties." (Exhibit 1, paragraph 12.)

5.   The By-Laws of Argus in force and effect on November 1, 2002, and at all relevant times, provided *inter alia* in Article IV, Section 3:

> Removal.  With the exception of the Chairman of the Board of Directors and the President, any officer or agent elected or appointed by the Board of Directors may be removed by the board of directors whenever in its judgment the best interests of the corporation would be served thereby, *but such removal shall be without prejudice to the contract rights, if any, of the person so removed. The Chairman of the Board of Directors and/or the President may be removed only with the concurrence of the shareholders of the company as evidence by the affirmative vote of a 2/3$^{rds}$ majority of holders (or proxy holders) of the outstanding common stock of the corporation at a special meeting held for that purpose.*

(Emphasis added.) Excerpts from the By-Laws, including Article IV, are attached hereto as Exhibit 2 and incorporated herein by reference thereto.

6.   At all relevant times, plaintiff was an Argus shareholder and controlled a substantial amount of the common stock of the corporation.  Accordingly, there was a substantial likelihood at all relevant times that two-thirds of the then-outstanding shares would not concur in plaintiff's removal as President.

7.    At all relevant times, two lenders, to wit:  ABN AMRO and Mercurius Beleggingsmaatschappij B.V., a Dutch corporation ("Mercurius"), had loans to Argus which from their inception were intended to be converted to equity, which conversion would have allowed them to obtain sufficient additional shares of stock to assure a two-thirds vote to ratify plaintiff's removal. However, to do so would require that ABN AMRO and Mercurius convert a combined total of approximately $12 million of secured debt to equity in common stock.

8.    While these conversions would have been to the financial detriment of ABN AMRO and Mercurius under the then-circumstances of Argus, the conversions would have been advantageous to Argus in that they would have reduced by approximately $12 million Argus' outstanding debt, thereby increasing Argus' likelihood of survival and success.

9.    While acting as directors of Argus, McNabb and O'Neill each owed:

A.    A duty to Argus, its shareholders, its other directors, and its officers and employees, including plaintiff, to refrain from utilizing their office as directors to maliciously harm other directors, officers and employees of Argus, including plaintiff;

B.    A duty to Argus, its shareholders, its other directors, and its officers and employees, including plaintiff, to put the interests of Argus and its shareholders ahead of the interests of ABN AMRO, and ahead of the interests of others who were associated with McNabb or O'Neill;

C.    A duty to Argus, its shareholders, its other directors, and its officers and employees, including plaintiff, to refrain from intentionally and/or unjustifiably inducing or causing Argus to breach plaintiff's employment contract for McNabb's or O'Neill's gain or the gain of others who were associated with McNabb or O'Neill;

D.    A duty to Argus, its shareholders, its other directors, and its officers and employees, including plaintiff, to refrain from intentionally and/or

unjustifiably inducing or causing Argus to breach plaintiff's employment contract with the intent to harm plaintiff; and

E.    A duty to plaintiff to refrain from intentionally and/or unjustifiably inducing or causing Argus to breach its contract with plaintiff.

10.    McNabb violated one or more of their aforesaid duties in one or more of the following ways or a combination thereof:

A.    Intentionally and unjustifiably caused or induced Argus to breach plaintiff's employment contract in violation of his aforesaid duties at a meeting held on November 1, 2002, by purporting with co-defendant Walz to terminate plaintiff's employment "***without cause*** as CEO and President" (emphasis added) and to appoint McNabb as President of Argus without submitting their action to the shareholders for concurrence as required by the By-Laws. Minutes of the meeting are attached hereto as Exhibit 3.

B.    Intentionally and unjustifiably interfered with and undermined plaintiff's management of Argus so as to achieve the removal of plaintiff as president of Argus.

C.    Did not submit the matter of plaintiff's removal to the Argus shareholders at ***any*** time, even after this Court suggested that defendants might still possibly submit the question to the shareholders, and now that Argus is in Chapter VII bankruptcy in the United States District Court for the Central District of Illinois, Cause No. 03-91852, filed May 23, 2003, it is no longer possible for defendants to submit the matter.

11.    O'Neill violated one or more of the aforesaid duties in one or more of the following ways or a combination thereof:

A.    Intentionally and unjustifiably caused or induced Argus to breach plaintiff's employment contract in violation of his aforesaid duties at a meeting held on November 1, 2002, by purporting with co-defendant Walz to terminate plaintiff's employment "***without cause*** as CEO and President" (emphasis added) and to appoint McNabb as President of Argus without submitting their action to the shareholders for concurrence as required by the By-Laws. Minutes of the meeting are attached hereto as Exhibit 3.

B.    Did not submit the matter of plaintiff's removal to the Argus shareholders at ***any*** time, even after this Court suggested that defendants might still possibly submit the question to the shareholders, and now that Argus is in Chapter VII bankruptcy in the United States District Court for the Central District

of Illinois, Cause No. 03-91852, filed May 23, 2003, it is no longer possible for defendants to submit the matter.

12.    As a direct and proximate result of the aforesaid malicious, intentional, and/or wrongful acts of McNabb and O'Neill, jointly and severally, Argus breached plaintiff's employment contract thereby causing damages to plaintiff in that:

A.    He has not received the remainder of all future salary provided for under his employment contract with Argus for the period subsequent to November 1, 2002, in the sum of $275,000.00;

B.    He has not received the minimum annual bonus payable under section 4.2 of his employment contract, the amount of which is presently unknown;

C.    He has not received the lump sum termination fee of $250,000 under his employment contract (see paragraph 8, Exhibit 1);

D.    He has not received past wages, sales commissions, payment for accrued personal time and vacations, or reimbursement for business expenses under his employment contract, all in the total sum of $72,598.00;

E.    He was hindered and prevented from attending to his usual duties and affairs, including his duties as President and CEO of Argus;

F.    He has not continued to receive health, life and disability insurance, and other benefits within the meaning of paragraph 5(b) of his employment contract (Exhibit 1), the value of which is presently unknown;

G.    He has not received additional consideration within the meaning of paragraph 7 of his employment contract (Exhibit 1), the value of which is presently unknown.

H.    He has suffered and will continue to suffer emotional anguish, embarrassment, disgrace, and damage to his professional reputation, all to his damages.

13.    The actions of McNabb and O'Neill or either of them were not clothed with qualified privilege in that

A.    They were done maliciously towards plaintiff to promote the interests of McNabb and/or O'Neill, and/or the interests of others with whom McNabb and/or O'Neill were associated, or were done to harm the plaintiff in that

the Board's action was intentionally not submitted to shareholders in an attempt to circumvent plaintiff's contractual rights under his termination agreement

      B.     To promote the interests of McNabb and/or that of others who were associated with McNabb:

              i.     For McNabb's own gain by removing plaintiff as President and Chief Executive Officer of Argus so that McNabb could become President of Argus;

              ii.    For McNabb's own gain in that to plaintiff's knowledge and belief McNabb's actions enabled McNabb to increase his own personal compensation from Argus;

              iii.   For McNabb's own gain in that McNabb's actions enabled McNabb to seek to transfer all of the assets of Argus to a company owned and controlled by McNabb, without risking McNabb being terminated as an Argus director and officer by plaintiff as President and Chief Executive Officer;

              iv.   For McNabb's own gain by ingratiating himself with ABN AMRO and Mercurius so as to increase the probability of McNabb becoming President of Argus in that McNabb's actions enabled ABN AMRO and Mercurius, to effect the termination of plaintiff's employment without converting approximately $12 million of secured debt to common stock, and avoiding having the equity interest of himself, his spouse, and family members diluted by the issuance of additional stock to ABN AMRO and Mercurius;

              v.    For McNabb's own gain in that McNabb's actions enabled McNabb to reduce his exposure to lawsuits threatened against the directors by shareholders William Lacy and ABN AMRO;

              vi.   McNabb and O'Neill, acting jointly and severally and together with co-defendant Walz, intentionally told Argus employees and third parties that plaintiff was no longer the President of Argus even though McNabb knew that his removal had not been concurred in by two-thirds of the shareholders, with the intent to harm the plaintiff by embarrassing and disgracing him in the eyes of Argus employees and with third parties and to diminish his financial opportunities;

      C.     To promote the interests of O'Neill and/or others who were associated with O'Neill:

i.      For Strategic Capital Bank's gain and O'Neill's own gain, in that the failure to submit the removal of plaintiff as President of Argus to the company shareholders was intended to avoid paying plaintiff his monetary termination benefits so that the monies would be in Argus for the benefit of Strategic Capital Bank as a secured creditor;

ii.     For O'Neill's own gain in that O'Neill's actions enabled O'Neill to reduce his exposure to lawsuits threatened against the directors by shareholders William Lacy and ABN AMRO;

WHEREFORE, plaintiff prays judgment against Defendants Paul McNabb and William O'Neill, jointly and severally, for $2,000,000.00 and for his costs of suit, and demands a trial by jury.

### Count 3
### (Defamation)

**Dismissed with Prejudice June 6, 2003.**

**Count 4 (In the alternative to Count 3)**

**(Wrongful Termination by Defendants Keith Walz, ABN AMRO, Paul McNabb & William O'Neill)**

**(Dismissed with Prejudice on February 3, 2005.  Plaintiff Preserves and Stands on this Count and Does Not Amend.)**

COMES NOW Plaintiff Randall J. Sandone by his undersigned attorneys, Phebus & Koester, and in the alternative to Count 3 herein complains of Defendants Keith Walz ("Walz"); Paul McNabb ("McNabb"); William O'Neill ("O'Neill"); ABN AMRO HOLDING N.V., Amsterdam, a Dutch corporation; ABN AMRO BANK, N.V., Amsterdam, a Dutch corporation; and ABN AMRO Ventures, B.V., Amsterdam, a Dutch corporation (collectively referred to herein as "ABN AMRO"), jointly and severally, and avers:

1.    Plaintiff at all relevant times was the President and Chief Executive Officer of Argus Systems Group, Inc., an Illinois corporation ("Argus").

2.    On information and belief, Defendant ABN AMRO BANK N.V. is a subsidiary of Defendant ABN AMRO HOLDING N.V., and at all relevant times Defendant ABN AMRO HOLDING N.V.'s interest in Defendant ABN AMRO BANK N.V. was 100% or almost 100%, and therefore the acts or omissions of Defendant ABN AMRO BANK N.V. were at all relevant times the acts and omissions of its principal Defendant ABN AMRO HOLDING N.V.

3.    On information and belief, Defendant ABN AMRO VENTURES B.V. is a subsidiary of Defendant ABN AMRO BANK N.V. and at all relevant times Defendant ABN AMRO BANK N.V.'s interest in ABN AMRO VENTURES B.V. was 100% or almost 100%, and therefore the acts or omissions of Defendant ABN AMRO VENTURES N.V. were at all relevant times the acts and omissions of its principal Defendant ABN AMRO BANK N.V. and of ABN AMRO HOLDING N.V.

4.    Unless otherwise stated, the three Defendants are collectively referred to herein as "ABN AMRO."

5.    At all relevant times ABN AMRO was doing business in the State of Illinois, including but not limited to engaging in financial transactions including acquisitions and lending in the State of Illinois and elsewhere in the United States.

6.    At all relevant times, Walz was an employee of ABN AMRO.

7.    Pursuant to a "Voting Agreement" made on December 3, 2001, between ABN AMRO, plaintiff, McNabb, and others, and thereafter approved by Argus's shareholders, one member of Argus's Board of Directors was thereafter designated by

defendant ABN AMRO. Attached hereto and marked as "Exhibit 4" is a copy of the said Voting Agreement.

       8.     Thereafter, in or about January, 2002, ABN AMRO designated Walz as its member on Argus's Board of Directors pursuant to the Voting Agreement.

       9.     At all relevant times thereafter, Walz, McNabb, and O'Neill were members of the Board of Directors of Argus.

       10.    At all relevant times, while serving as a director of Argus, Walz was in the course and scope of his employment with ABN AMRO, and accordingly ABN AMRO is liable for his acts or omissions complained of herein under the doctrine of *respondeat superior*.

       11.    At all relevant times, plaintiff had a valid and enforceable written employment contract with Argus, a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference thereto, which contract provided, *inter alia*, "no modification or amendment of any of the terms, conditions, or provisions may be made other than by written agreement signed by the parties." (Exhibit 1, paragraph 12.)

       12.    The By-Laws of Argus in force and effect on November 1, 2002, and at all relevant times provided, *inter alia*, in Article IV, Section 3:

> Removal. With the exception of the Chairman of the Board of Directors and the President, any officer or agent elected or appointed by the Board of Directors may be removed by the board of directors whenever in its judgment the best interests of the corporation would be served thereby, *but such removal shall be without prejudice to the contract rights, if any, of the person so removed. The Chairman of the Board of Directors and/or the President may be removed only with the concurrence of the shareholders of the company as evidence by the affirmative vote of a $2/3^{rds}$ majority of holders (or proxy holders) of the outstanding common stock of the corporation at a special meeting held for that purpos*e.

(Emphasis added.) Excerpts from the By-Laws, including Article IV, are attached hereto as Exhibit 2 and incorporated herein by reference thereto.

13.    At an Argus Board meeting held on November 1, 2002, Walz, McNabb, and O'Neill, acting jointly and severally, wrongfully terminated plaintiff's employment "*without cause* as CEO and President" (emphasis added) in violation of Argus's By-Laws, in contravention of plaintiff's employment agreement with Argus, and in contravention of the Voting Agreement. Minutes of the meeting are attached hereto as Exhibit 3.

14.    As a direct and proximate result of the defendants' aforesaid wrongful termination, plaintiff suffered damages in that:

A.    Plaintiff has not received the remainder of all future salary provided for under his employment contract with Argus for the period subsequent to November 1, 2002, in the sum of $275,000.00;

B.    He has not received the minimum annual bonus payable under section 4.2 of his employment contract, the amount of which is presently unknown;

C.    He has not received the lump sum termination fee of $250,000 under his employment contract (see paragraph 8, Exhibit 1);

D.    He has not received past wages, sales commissions, payment for accrued personal time and vacations, or reimbursement for business expenses under his employment contract, all in the total sum of $72,598.00;

E.    He was hindered and prevented from attending to his usual duties and affairs, including his duties as President and CEO of Argus;

F.    He has not continued to receive health, life and disability insurance, and other benefits within the meaning of paragraph 5(b) of his employment contract (Exhibit 1), the value of which is presently unknown;

G.    He has not received additional consideration within the meaning of paragraph 7 of his employment contract (Exhibit 1), the value of which is presently unknown.

20

H.    He has suffered and will continue to suffer emotional anguish, embarrassment, disgrace, and damage to his professional reputation, all to his damages.

WHEREFORE, Plaintiff prays judgment against the defendants, individually, jointly and severally, for $2,000,000.00 and for his costs of suit, and demands a trial by jury.

### Count 5 (In the alternative to Count 3)

**(Tortious Interference with Prospective Business Advantage by Defendants Keith Walz, ABN AMRO Bank, ABN AMRO Ventures, Paul McNabb & William O'Neill)**

COMES NOW Plaintiff Randall J. Sandone, by his undersigned attorneys, Phebus & Koester, and complaining of Defendants Keith Walz ("Walz"); ABN AMRO BANK, N.V., Amsterdam, a Dutch corporation("ABN AMRO Bank"); ABN AMRO VENTURES, B.V., Amsterdam, a Dutch corporation ("ABN AMRO Ventures"); Paul McNabb; and William O'Neill, jointly and severally, avers:

1.    Plaintiff at all relevant times was the President and Chief Executive Officer of Argus Systems Group, Inc., an Illinois corporation ("Argus"), the principal place of business of which was located in Champaign County, Illinois.

2.    At all relevant times, Defendant ABN AMRO Ventures was a subsidiary of Defendant ABN AMRO Bank.  *See* attached Plaintiff's Exhibit 7, copy of affidavit of Carly Lemans.

3.      At all relevant times, ABN AMRO Bank did business as ABN AMRO Private Equity. *See* attached Plaintiff's Exhibit 7, copy of affidavit of Carly Lemans.

4.      To Plaintiff's information and belief, at all relevant times ABN AMRO Bank d/b/a ABN Private Equity had its principal North American office for ABN Private Equity in Chicago, Illinois.

5.      At all relevant times, Defendant Walz was employed by ABN AMRO Bank as a managing director of ABN AMRO Private Equity, with his principal place of employment being ABN Private Equity's office in Chicago, Illinois.

6.      To Plaintiff's information and belief, at all relevant times ABN AMRO Bank's North America operations were headquartered in Chicago, Illinois.

7.      On December 3, 2001, ABN AMRO Ventures entered into a stock purchase agreement to acquire stock in Argus and in conjunction therewith a voting agreement (a copy of which is attached hereto as Exhibit 4), a registration of rights agreement, a security agreement and various other agreements.

8.      Pursuant to said agreements, ABN AMRO Ventures had the right to designate and appoint one member of the Board of Directors of Argus, and in or about January, 2002, did appoint Defendant Walz, a managing director of the ABN AMRO Private Equity unit of ABN AMRO Bank.

9.      At all relevant times, while serving as a director of Argus, Walz was in the course and scope of his employment with ABN AMRO Bank; accordingly ABN AMRO Bank is liable for his acts or omissions complained of herein under the doctrine of *respondeat superior.*

10.    At all relevant times, while serving as a director of Argus, Walz was acting as agent for his principal ABN AMRO Ventures pursuant to his designation and appointment to the Argus Board by ABN AMRO Ventures as aforesaid, and was acting within the course and scope of that agency relationship; accordingly, ABN AMRO Ventures is liable for his acts or omissions complained of herein under the doctrine of *respondeat superior*.

11.    As set forth hereinafter, Walz in his capacity as an employee of ABN AMRO Bank, and in his capacity as an agent of ABN AMRO Ventures, did tortiously interfere with Plaintiff's prospective business advantage.

12.    At all relevant times, ABN AMRO Ventures owned a minority stake in Argus, based in Savoy, Illinois. *See* attached Plaintiff's Exhibit 7, copy of affidavit of Carly Lemans.

13.    At all relevant times, ABN AMRO Bank was doing business in the State of Illinois, including but not limited to engaging in financial transactions including acquisitions and lending in the State of Illinois.

14.    At all relevant times, ABN AMRO Ventures was doing business in the State of Illinois, including but not limited to engaging in financial transactions including acquisitions and lending in the State of Illinois.

15.    To Plaintiff's information and belief, at all relevant times Defendant ABN AMRO Bank and Defendant ABN AMRO Ventures were both subsidiaries of ABN AMRO Holdings, N.V., a Dutch corporation ("ABN AMRO Holdings"), and as a consequence thereof, they shared a common interest in promoting the profitability of and interests of each other.

16.    To Plaintiff's information and belief, at all relevant times ABN AMRO Bank, ABN AMRO Ventures and/or ABN AMRO Holdings shared substantial business interests with Mercurius Beleggingsmaatschappij B.V., a Dutch corporation ("Mercurius"), and as a consequence thereof ABN AMRO Bank and ABN AMRO Ventures had an interest in promoting the profitability and interests of Mercurius.

17.    Pursuant to 735 ILCS 5/2-209(a), 735 ILCS 5/2-209(b), and/or 735 ILCS 5/2-209(c), this Court has jurisdiction over Defendants ABN AMRO Bank and ABN AMRO Ventures by virtue of the allegations set forth herein, and including but not limited to paragraphs 1-15 above and paragraphs 27 and 30 below.

18.    At all relevant times, Plaintiff had a valid and enforceable written employment contract with Argus, a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference thereto, which contract provided, *inter alia*, "no modification or amendment of any of the terms, conditions, or provisions may be made other than by written agreement signed by the parties." (Exhibit 1, paragraph 12.)

19.    At all relevant times after Walz's appointment to the Argus Board of Directors in or about January 2002, in that capacity he was aware of the existence of the said valid and enforceable written employment contract between Plaintiff and Argus, a copy of which is attached hereto and marked as Exhibit 1 and incorporated herein by reference thereto.

20.    The By-Laws of Argus in force and effect on November 1, 2002, and at all relevant times provided, *inter alia*, in Article IV, Section 3:

> Removal. With the exception of the Chairman of the Board of Directors and the President, any officer or agent elected or appointed by the Board of Directors may be removed by the board of directors whenever in its judgment the best interests of the

24

corporation would be served thereby, *but such removal shall be without prejudice to the contract rights, if any, of the person so removed. The Chairman of the Board of Directors and/or the President may be removed only with the concurrence of the shareholders of the company as evidence by the affirmative vote of a 2/3$^{rds}$ majority of holders (or proxy holders) of the outstanding common stock of the corporation at a special meeting held for that purpose*.

(Emphasis added.) Excerpts from the By-Laws, including Article IV, are attached hereto as Exhibit 2 and incorporated herein by reference thereto.

21.    At all relevant times, Plaintiff was an Argus shareholder and controlled a substantial amount of the common stock of the corporation. Accordingly, at all relevant times there was a substantial likelihood that two-thirds of the then-outstanding shares would not concur in Plaintiff's removal as President.

22.    At all relevant times, two lenders, to wit:  ABN AMRO Ventures and Mercurius had loans to Argus which from their inception were intended to be converted to equity, which conversion would have allowed them to obtain sufficient additional shares of stock to assure a two-thirds vote to ratify Plaintiff's removal. However, to do so would require that ABN AMRO Ventures and Mercurius convert a combined total of approximately $12 million of secured debt to equity in common stock.

23.    While these conversions would have been to the financial detriment of ABN AMRO Ventures, ABN AMRO Bank, and Mercurius under the then-circumstances of Argus, the conversions would have been advantageous to Argus in that they would have reduced by approximately $12 million Argus' outstanding debt thereby increasing Argus' likelihood of survival and success.

24.    At all relevant times, Plaintiff had the reasonable expectancy of

prospective economic advantage arising from his said contract of employment with

Argus and his past dealings with Argus, which expectancy included the following:

      A.     That his employment with Argus would not be terminated in violation of the said employment contract and the said By-laws.

      B.     That he would continue receiving his salary and other contractual benefits until either (i) his employment was lawfully terminated, or (ii) he resigned from his employment.

      C.     That in the event of the termination of his employment without cause, he would receive the remainder of all future salary provided for under his employment contract with Argus.

      D.     That in the event of the termination of his employment without cause, he would receive the minimum annual bonus payable under section 4.2 of his employment contract.

      E.     That in the event of the termination of his employment without cause, he would receive the lump sum termination fee of $250,000 under his employment contract (see paragraph 8, Exhibit 1).

      F.     That in the event of the termination of his employment without cause, he would receive all sums due for past wages, sales commissions, payment for accrued personal time and vacations, and reimbursement for business expenses under his employment contract.

      G.     That unless and until his employment was terminated, he would attend to his usual duties and affairs, including his duties as President and CEO of Argus.

      H.     That he would receive health, life and disability insurance, and other benefits within the meaning of paragraph 5(b) of his employment contract (Exhibit 1).

      I.     That he would receive additional consideration within the meaning of paragraph 7 of his employment contract (Exhibit 1), the value of which is presently unknown.

      25.     At all relevant times, Defendants and each of them owed a duty to

Plaintiff to refrain from intentionally, purposefully, and unjustifiably interfering with his

said expectancy so as to prevent that expectancy from being fulfilled, which duty included the following:

      A.     Refraining from terminating Plaintiff's employment in violation of the said employment agreement;

      B.     Refraining from terminating Plaintiff's employment in violation of the said By-laws; and

      C.     Refraining from interfering with Plaintiff's contractual entitlements including his termination benefits under the contract with Argus.

      26.     At all relevant times, Defendants and each of them knew of Plaintiff's said expectancy.

      27.     In breach of their said duty, in violation of Argus's By-Laws, and in contravention of Plaintiff's employment agreement with Argus, the individual Defendants and each of them intentionally, purposefully, and unjustifiably interfered with Plaintiff's said prospective economic advantage so as to prevent Plaintiff's said expectancy from being realized, or to cause or induce the breach or termination of Plaintiff's expectancy, by the following actions or a combination thereof:

      A.     Terminating Plaintiff's employment without cause as CEO and President of Argus on November 1, 2002, in violation of Plaintiff's employment contract with Argus and in violation of Argus's By-laws.

      B.     In Plaintiff's absence at the Argus Board Meeting on December 4, 2002 (minutes of which meeting are attached hereto as Exhibit 5 and incorporated by reference thereto), freezing and suspending payments of all monies due and payable to Plaintiff by Argus, including monies due and payable under his employment contract with Argus.

      C.     In Plaintiff's absence at the Argus Board Meeting on December 27, 2002 (minutes of which meeting are attached hereto as Exhibit 6 and incorporated by reference thereto), determining that their previous action on December 4, 2002, to freeze and suspend payment of monies due and payable to Plaintiff by Argus, would remain in force and that no payments would be made to Plaintiff by Argus.

D.     In Plaintiff's absence at the said Argus Board Meeting on December 27, 2002 (minutes of which meeting are attached hereto as Exhibit 6 and incorporated by reference thereto), acknowledging that negotiations between the Argus Board and Plaintiff (as referred to in the Board minutes for November 1, 2002) were never completed following Plaintiff's termination by the individual Defendants, and further acknowledging that there were no agreed-upon terms of separation for the Board to approve.

E.     Refusing or failing at any time to submit to the Argus shareholders their decision to freeze, suspend and stop payment to Plaintiff of monies that were due and payable to him even after this Court suggested that Defendants might still have possibly submitted the question of Plaintiff's removal to the shareholders after the commencement of this lawsuit.

F.     Defendants' conduct and their decisions as set forth above remained in full force and effect until and after the filing of Argus's Chapter VII bankruptcy in the United States District Court for the Central District of Illinois, Cause No. 03-91852, filed May 23, 2003, and accordingly Defendants' said conduct and decisions became irrevocable thereafter, with the result that Defendants' conduct directly and proximately resulted in Plaintiff's damages as set forth herein.

28.     As a direct and proximate result of the Defendants' intentional, purposeful, and unjustifiable interference with Plaintiff's prospective economic advantage, Plaintiff's expectancy was unfulfilled and Plaintiff suffered damages in that:

A.     He has not received the remainder of all future salary provided for under his employment contract with Argus for the period subsequent to November 1, 2002, in the sum of $275,000.00;

B.     He has not received the minimum annual bonus payable under section 4.2 of his employment contract, the amount of which is presently unknown;

C.     He has not received the lump sum termination fee of $250,000 under his employment contract (see paragraph 8, Exhibit 1);

D.     He has not received past wages, sales commissions, payment for accrued personal time and vacations, or reimbursement for business expenses under his employment contract, all in the total sum of $72,598.00;

E.     He was hindered and prevented from attending to his usual duties and affairs, including his duties as President and CEO of Argus;

      F.      He has not continued to receive health, life and disability insurance, and other benefits within the meaning of paragraph 5(b) of his employment contract (Exhibit 1), the value of which is presently unknown;

      G.      He has not received additional consideration within the meaning of paragraph 7 of his employment contract (Exhibit 1), the value of which is presently unknown;

      H.      He has suffered and will continue to suffer emotional anguish, embarrassment, disgrace, and damage to his professional reputation, all to his damages.

      29.      Defendants' liability to Plaintiff for their tortious interference with his prospective economic advantage is evidenced by legally cognizable publications, to-wit: Exhibits 1, 2, 3, 4, 5, and 6 attached hereto and incorporated by reference thereto.

      30.      There was a causal connection between Defendants' tortious interference with Plaintiff's prospective economic advantage as set forth herein, and the failure of Plaintiff's said expectancy to be realized, as follows:

      A.      At the Argus Board Meeting on November 1, 2002 (minutes of which are attached hereto as Exhibit 3 and incorporated by reference thereto), in Plaintiff's absence, Walz and the other individual Defendants agreed as follows:

      "It was determined that Mr. Sandone will be terminated without cause as CEO and President. Mr. McNabb will provide a formal letter of termination, after board review, outlining terms to which the board agreed. They are:

- Per Mr. Sandone's employment agreement, he will retain payment of his salary through the end of the year.
- His office computer will be sold to him at a reasonable market price.
- He will execute a standard reseller agreement.
- The board agreed to negotiate in good faith for a source code license.

> The board recognized that there was a note outstanding to Mr. Sandone, as well as unpaid accrued personal time.
>
> The board requested that Mr. Sandone waive all other rights and obligations associated with his employment agreement dated 1 June 2001."

B.    At the Argus Board Meeting on December 4, 2002 (minutes of which meeting are attached hereto as Exhibit 5 and incorporated by reference thereto), in Plaintiff's absence, Walz together with the other individual Defendants froze and suspended payments of all monies due and payable to Plaintiff by Argus, including monies due and payable under his employment contract with Argus.

C.    At the Argus Board Meeting on December 27, 2002 (minutes of which meeting are attached hereto as Exhibit 6 and incorporated by reference thereto), in Plaintiff's absence, Walz together with the other individual Defendants determined that the previous action of Walz and the other individual Defendants on December 4, 2002, to freeze and suspend payment of monies due and payable to Plaintiff by Argus, would remain in force and that no payments would be made to Plaintiff by Argus.

D.    At the said Argus Board Meeting on December 27, 2002 (minutes of which meeting are attached hereto as Exhibit 6 and incorporated by reference thereto), in Plaintiff's absence, Walz together with the other individual Defendants acknowledged that negotiations between the Argus Board and Plaintiff (as referred to in the Board minutes for November 1, 2002) were never completed following Plaintiff's termination by Walz and the other individual Defendants, and further acknowledged that there were no agreed-upon terms of separation for the Board to approve.

E.    At no time did Walz or either of the other individual Defendants submit to the Argus shareholders their decision to freeze, suspend and stop payment to Plaintiff of monies that were due and payable to him even after this Court suggested that Walz and the other individual Defendants might still have possibly submitted the question of Plaintiff's removal to the Argus shareholders after the commencement of this lawsuit.

F.    Defendants' conduct and their decisions as set forth above remained in full force and effect until and after the filing of Argus's Chapter VII bankruptcy in the United States District Court for the Central District of Illinois, Cause No. 03-91852, filed May 23, 2003, and accordingly Defendants' said conduct and decisions became irrevocable thereafter, with the result that the conduct of Walz together with the other individual Defendants directly and proximately resulted in Plaintiff's damages as set forth herein.

31.    The actions of Defendants McNabb and O'Neill or either of them

were not clothed with qualified privilege in that:

A.    They were done maliciously towards Plaintiff to promote the interests of McNabb and/or O'Neill, and/or the interests of others with whom McNabb and/or O'Neill were associated, or were done to harm the Plaintiff in that the Board's action was intentionally not submitted to shareholders in an attempt to circumvent Plaintiff's contractual rights under his termination agreement

B.    To promote the interests of McNabb and/or that of others who were associated with McNabb:

       i.    For McNabb's own gain by removing Plaintiff as President and Chief Executive Officer of Argus so that McNabb could become President of Argus;

      ii.    For McNabb's own gain in that to Plaintiff's knowledge and belief McNabb's actions enabled McNabb to increase his own personal compensation from Argus;

      iii.    For McNabb's own gain in that McNabb's actions enabled McNabb to seek to transfer all of the assets of Argus to a company owned and controlled by McNabb, without risking McNabb being terminated as an Argus director and officer by Plaintiff as President and Chief Executive Officer;

      iv.    For McNabb's own gain by ingratiating himself with ABN AMRO Ventures, ABN AMRO Bank, and Mercurius so as to increase the probability of McNabb becoming President of Argus in that McNabb's actions enabled ABN AMRO Ventures, ABN AMRO Bank, and Mercurius to effect the termination of Plaintiff's employment without converting approximately $12 million of secured debt to common stock, and avoiding having the equity interest of himself, his spouse, and family members diluted by the issuance of additional stock to ABN AMRO Ventures and Mercurius;

      v.    For McNabb's own gain in that McNabb's actions enabled McNabb to reduce his exposure to lawsuits threatened against the directors by shareholders William Lacy, ABN AMRO Ventures, ABN AMRO Bank, and other entities within the ABN AMRO family of companies;

      vi.    McNabb and O'Neill, acting jointly and severally and together with co-defendant Walz, intentionally told Argus

employees and third parties that Plaintiff was no longer the President of Argus even though McNabb knew that his removal had not been concurred in by two-thirds of the shareholders, with the intent to harm the Plaintiff by embarrassing and disgracing him in the eyes of Argus employees and with third parties and to diminish his financial opportunities;

C.    To promote the interests of O'Neill and/or others who were associated with O'Neill:

i.    For Strategic Capital Bank's gain and O'Neill's own gain, in that the failure to submit the removal of plaintiff as President of Argus to the company shareholders was intended to avoid paying Plaintiff his monetary termination benefits so that the monies would be in Argus for the benefit of Strategic Capital Bank as a secured creditor;

ii.    For O'Neill's own gain in that O'Neill's actions enabled O'Neill to reduce his exposure to lawsuits threatened against the directors by shareholders William Lacy, ABN AMRO Ventures, ABN AMRO Bank, and other entities within the ABN AMRO family of companies.

32.    The actions of Walz were not clothed with qualified privilege in that they were done maliciously toward Plaintiff to promote the interests of ABN AMRO Ventures and/or ABN AMRO Bank and/or the interests of others with whom ABN AMRO was associated, in that they:

A.    Were done with the intent to harm the Plaintiff in that Walz and the other Argus Board members intentionally did not submit Plaintiff's removal to the shareholders for concurrence, thereby circumventing Plaintiff's contractual right to termination benefits under his employment contract, so as to financially damage Plaintiff and create hardship for Plaintiff;

B.    Were done to promote the interests of ABN AMRO Ventures, ABN AMRO Bank, and/or Mercurius in that:

i.    Walz and the other Argus Board members including co-defendant McNabb intentionally did not submit Plaintiff's removal to the shareholders for concurrence, so as to allow ABN AMRO Ventures and Mercurius to maintain their secured debt position rather than to collectively convert approximately $12 million of

secured debt to equity to assure the necessary shareholders' votes to remove the Plaintiff as President of Argus;

ii.    Walz's actions enabled ABN AMRO Ventures, ABN AMRO Bank, and Mercurius to effectuate the termination of Plaintiff's employment without collectively having to convert approximately $12 million of secured debt to common stock in Argus, and even though said conversions would have significantly increased the financial position of Argus in that said conversions would have reduced the company's debt by approximately $12 million;

iii.    The failure to submit the removal of Plaintiff as President of Argus to the company's shareholders was intended to avoid paying Plaintiff his monetary termination benefits under his employment contract so that the monies would be in Argus for the benefit of ABN AMRO Ventures and/or ABN AMRO Bank and/or Mercurius as a secured creditor;

iv.    Walz's actions allowed ABN AMRO Ventures and ABN AMRO Bank and other entities within the ABN AMRO family of companies, and Walz himself, to reduce their exposure to lawsuits threatened by shareholder William Lacy.

WHEREFORE, Plaintiff prays judgment against Defendants, individually, jointly and severally, for $2,000,000.00 and for his costs of suit, and demands a trial by jury.

RANDALL J. SANDONE, Plaintiff, by his attorneys, PHEBUS & KOESTER

By: _____
J. W. PHEBUS

By: _____
GARY D. FORRESTER

By: _____
DANIEL J. POPE

### JURY DEMAND

COMES NOW Plaintiff Randall J. Sandone by his attorneys, Phebus & Koester, and hereby demands a trial by jury on the issues in this cause.

### PUNITIVE DAMAGES

Plaintiff hereby gives notice that at the appropriate time he will file a motion requesting that punitive damages should be assessed in favor of Plaintiff and against defendants in the interest of justice and public good, so as to deter defendants and others similarly situated from malicious and willful conduct as set forth in this Fifth Amended Complaint.

By: _____
J. W. PHEBUS

By: _____
GARY D. FORRESTER

By: _____
DANIEL J. PORE

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of June 2005, he served copies of this Fifth Amended Complaint, to:

Mr. Jeff Fowler
Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60610

Mr. Edward M. Wagner
Heyl, Royster, Voelker & Allen
P.O. Box 129
Urbana, Illinois 61803

Mr. Andrew Kassof
Kirkland & Ellis, LLP

34

200 East Randolph Drive
Chicago, Illinois 60601

by depositing the same in the United States mail located at Urbana, Illinois, at
approximately 5:00 p.m. with proper postage prepaid.

Gary D. Forrester

PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400

*F:\DOCS\JOE\SANDONE\McNabb,Walz.&O'Neill\5th AM COMP.doc*