E-FILED
Wednesday, 12 October, 2005  04:05:03 PM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| | |
|---|---|
| RANDALL J. SANDONE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KEITH WALZ, PAUL MCNABB, ) <br> WILLIAM O'NEILL, ABN AMRO BANK ) <br> N.V., Amsterdam, a Dutch corporation, and ) <br> ABN AMRO Ventures, B.V., Amsterdam, ) <br> a Dutch corporation, ) <br> ) <br> Defendants. ) | Case No. 02-L-272 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS ABN AMRO BANK N.V. AND ABN AMRO VENTURES B.V.'S MOTION TO DISMISS

Defendants ABN AMRO Bank N.V. and ABN AMRO Ventures B.V. (together, the "ABN AMRO Defendants") move pursuant to 735 ILCS 5/2-615 and 5/2-619.1 to dismiss for failure to state a claim upon which relief can be granted. This Court should join the many others that have consistently rejected Plaintiff's respondeat superior theory of liability because it would dangerously expand the fiduciary duties of shareholders to other shareholders. In the alternative, the ABN AMRO Defendants move to dismiss pursuant to 735 ILCS 5/2-619(a)(3) and 5/2-619.1 because there is another action pending between the same parties for the same cause in federal district court

### RELEVANT BACKGROUND

A.  **Procedural Background.**

This lawsuit was originally filed on November 27, 2002. It named as defendants three former members of Argus Systems Group, Inc.'s board of directors: Keith Walz, Paul McNabb, and William O'Neill. Plaintiff sought to hold Messrs. Walz, McNabb, and O'Neill liable for



wrongfully causing the termination of Plaintiff's employment as president and CEO of Argus. Argus entered bankruptcy on May 23, 2003. On March 7, 2003, this Court dismissed the Complaint. The Court also dismissed the Amended Complaint on June 6, 2003, but later denied the Defendants' motion to dismiss the Second Amended Complaint on November 17, 2003.

On November 16, 2004, Plaintiff filed a Third Amended Complaint, naming ABN AMRO Holding N.V., ABN AMRO Bank N.V., and ABN AMRO Ventures B.V. as additional defendants. On June 3, 2005, this Court quashed service with respect to ABN AMRO Holding, ABN AMRO Bank, and ABN AMRO Ventures, but permitted the issuance of alias summonses with respect to ABN AMRO Bank and Ventures. (6/3/05 Order, attached hereto as Ex. A).

On June 30, 2005, Plaintiff filed a Fifth Amended Complaint, again naming ABN AMRO Bank N.V. and ABN AMRO Ventures B.V. as defendants. The Fifth Amended Complaint sought to hold the ABN AMRO Defendants liable on a respondeat superior theory for the allegedly tortious actions of Mr. Walz, who Plaintiff alleged was an employee of ABN AMRO Bank. (5th Am. Cmplt. Count I ¶¶ 5, 9.) The Fifth Amended Complaint further alleged that the ABN AMRO Ventures, a subsidiary of ABN AMRO Bank, invested money in Argus and that it designated Mr. Walz as its member on Argus's board of directors. (*Id.* ¶¶ 8, 10.)

Another action by Plaintiff against the ABN AMRO Defendants is also pending in the United States District Court for the Central District of Illinois.[1] (*See* Affidavit of Benjamin W. Hulse ¶ 3, attached hereto as Exhibit A). Plaintiff is represented by the same attorneys in both cases  Though Plaintiff brings his claims in the federal court case on behalf of a putative

---

[1]  *Randall J. Sandone v. ABN AMRO Bank N.V., Amsterdam, a Dutch corporation;* * *ABN AMRO Ventures B.V., Amsterdam, a Dutch Corporation*, No. 04-2232 (C.D. Ill. filed Oct. 29, 2004).

shareholder class, no class has been certified. On July 12, 2005, the ABN AMRO Defendants filed a motion to dismiss that case. (*Id.* ¶ 4).

### B. Plaintiff's Factual Allegations.

Argus Systems Group, Inc. ("Argus") is an Illinois corporation. (5th Am. Cmplt., Count I, ¶ 1) Plaintiff was formerly Argus's president and chief executive officer. (*Id.*) He was also an Argus shareholder. (*Id.* ¶ 21)

In 2001, Dutch corporations ABN AMRO Ventures B.V.[2] and Mercurius Belegginingsmaatshappij B.V. entered into a Stock Purchase Agreement to purchase shares of Argus's Class B Common Stock. (*Id.* ¶ 7, Ex. 4 at p. 1.) In connection with the Stock Purchase Agreement, ABN AMRO Ventures and Mercurius made loans to Argus totaling approximately $12 million. (*Id.* ¶ 23.) The Fifth Amended Complaint alleges that these loans "were intended to be converted to equity." (*Id.* ¶ 22.)

On December 3, 2001, ABN AMRO Ventures and Mercurius also entered into a Voting Agreement with Argus and two of Argus's common stockholders, Plaintiff and Paul A. McNabb. (*Id.* ¶ 11, Ex. 4 at p. 1.) The Voting Agreement provided that ABN AMRO Ventures and Mercurius could each designate one person to sit on the Argus Board of Directors so long as each owned at least 5 percent of Argus's stock. (*Id.* ¶ 8; Ex. 4 at p. 1.) ABN AMRO Ventures, which owned more than 5 percent of Argus's stock, appointed Keith Walz, managing director of ABN AMRO Private Equity (a Chicago-based business division of ABN AMRO Bank), to the Board in January 2002. (5d Am. Cmplt., Count I, ¶¶ 5, 8.) The Fifth Amended Complaint does not indicate the number or percentage of shares held by ABN AMRO Ventures, Mercurius, Plaintiff, or Paul McNabb, only that ABN AMRO Ventures "owned a minority stake." (*Id.* ¶ 12.)

---

[2] ABN AMRO Ventures is a subsidiary of ABN AMRO Bank (5th Am. Cmplt., Count I, ¶ 2.)

Nor does it indicate whether ABN AMRO Ventures and Mercurius held a majority or controlling interest in Argus in combination.

Plaintiff alleges that in the course of Mr. Walz's service on Argus's board, Mr. Walz violated his fiduciary duties to the shareholders of Argus. (*Id.* ¶¶ 24-25, 28.) Mr. Walz allegedly used his position to benefit the ABN AMRO Defendants and Mercurius by voting to remove Plaintiff as Argus's president and CEO and to deny him certain termination benefits. (*Id.* ¶ 25.A.) Plaintiff seeks to hold the ABN AMRO Defendants liable on a respondeat superior theory for the actions Mr. Walz took as a member of Argus's Board. (*Id.* ¶ 25.)

## ARGUMENT

Pursuant to Sections 2-615, 2-619(a)(3), and 2-619.1, this Court should dismiss the Fifth Amended Complaint with respect to the ABN AMRO Defendants for failure to state a claim and because a near-identical action is pending in federal district court.

### I. THE COMPLAINT MUST BE DISMISSED UNDER SECTION 2-615 AND 2-619.1 BECAUSE IT FAILS TO STATE A CLAIM.

The Fifth Amended Complaint rests on a strained theory of respondeat superior liability that has been soundly rejected by courts that have considered it. Accordingly, it must be dismissed under Section 2-615 for failure to state a claim upon which relief can be granted.

#### A. A Corporation Is Not Vicariously Liable for Its Employee's Breach of Fiduciary Duty In His Role as Director of Another Corporation.

Plaintiff asserts that the ABN AMRO Defendants should be held vicariously liable for Mr. Walz's conduct as a member of Argus's board. That theory of liability violates settled law. Courts have consistently held that vicarious liability based on the acts of a director would improperly and dangerously expand the fiduciary duties of investors. This Court should follow the lead of these other courts and dismiss the Fifth Amended Complaint for failure to state a claim pursuant to Section 2-615.

1.  **Courts Applying the Law of Other States Have Consistently Rejected Plaintiff's Respondeat Superior Theory.**

The most recent of these cases, *CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146 (D. Mass 2003), is on all fours with this case. There, the founders of Internet startup CCBN invited Thomson Financial to become an investor. *See id.* at 150. As a condition of that investment, Thomson (like ABN AMRO Ventures and Mercurius in the present case) was allowed to designate two members of CCBN's board of directors. *See id.* CCBN alleged that Thomson's board designees misappropriated CCBN's confidential information and corporate opportunities for the benefit of Thomson. The court granted Thomson's motion to dismiss, concluding that, under Delaware law, Thomson could not be vicariously liable for the actions of its designees on CCBN's board. *See id.* at 151-52 ("While this is an interesting theory, courts applying Delaware law have rejected it. . . . I decline to create a novel theory of liability under Delaware law.").

The *CCBN* court relied on the well-reasoned opinion in *U.S. Airways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482 (S.D.N.Y. 1997). In that case, USAir asserted a claim of respondeat superior liability against British Airways based on the alleged wrongdoing of BA's employees who served on USAir's board. USAir did not allege that BA was the majority or controlling shareholder of USAir. *See id.* at 494. The court, applying Delaware law, dismissed the claim, stating that "the imposition of respondeat superior liability on a corporation for breach of fiduciary duty by its directors on the board of another corporation would completely undermine Delaware corporate law, which limits such fiduciary duty to majority and controlling shareholders." *Id. Accord Emerson Radio Corp. v. Int'l Jensen Inc.*, 1996 WL 483086, *20 n.18 (Del. Ch. Aug. 20, 1996) ("The notion that a stockholder could become a fiduciary by attribution (analogous to the result under the tort doctrine of respondeat superior) would work an

5

unprecedented, revolutionary change in [Delaware] law, and would give investors in a corporation reason for second thoughts about seeking representation on the corporation's board of directors."). Another federal court reached the same conclusion under California law. *See Medical Self Care, Inc. v. Nat'l Broad. Co., Inc.*, 2003 WL 1622181, *7 (S.D.N.Y. Mar. 28, 2003) (applying California law and dismissing plaintiff's respondeat superior claim for the fiduciary duty breaches of defendant's designee on plaintiff's board).[3]

### 2. This Court Should Likewise Reject Plaintiff's Respondeat Superior Theory.

No Illinois court has yet addressed this issue, which only underscores the flimsiness of Plaintiff's theory. But it is clear that the same result should prevail under Illinois law. Illinois corporate law follows Delaware law in imposing a |fiduciary duty| to shareholders only on the majority, controlling shareholder, and not on minority shareholders.[4] There is no allegation here

---

[3] *In re Papercraft Corp.*, 165 B.R. 980 (Bankr. W.D. Pa.), *vacated on other grounds*, 187 B.R. 486 (Bankr. W.D. Pa. 1995), *rev'd on other rounds*, 211 B.R. 813 (W.D. Pa. 1997), *aff'd sub nom. Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998), is readily distinguishable. In *Papercraft*, the defendant corporation (CVC) was a shareholder that nominated one of its own officers to serve on the board of Papercraft. At the express direction of CVC, that officer surreptitiously purchased discounted claims from Papercraft based on inside information, and failed to make full disclosure of the purchase as required of "insiders" under the Bankruptcy Code. *See* 165 B.R. at 985-86. The court emphasized the evidence demonstrating that CVC expressly authorized its nominee, who "adhered to CVC's directives," to purchase the notes based on inside information in furtherance of CVC's business objectives. *Id.* at 990-91. Here, in contrast, there are no allegations that the ABN AMRO Defendants authorized or directed any actions taken by Mr. Walz in his role as an Argus director. Moreover, *Papercraft* has never been followed by any other court, even though it was handed down before the better-reasoned *CCBN* and *U.S. Airways* cases.

[4] *See, e.g., Jaffe Commercial Fin. Co. v. Harris*, 119 Ill. App. 3d 136, 143 (1st Dist. 1983) ("The law is uncontroverted that the individuals who *control* corporations owe fiduciary duties to their corporation and its shareholders.") (emphasis added); *Graham v. Mimms*, 111 Ill. App. 3d 751, 764-65 (Ill. App. Ct. 1st Dist. 1982) ("as *majority shareholder and dominant figure in the control of the corporation*, the fiduciary duties [defendant] owed to [the corporation] and [minority shareholders] did not cease when he resigned as officer and director and installed his sister and brother-in-law in these positions") (emphasis added); *In*

that the ABN AMRO Defendants, individually or together, were the majority, controlling shareholders of Argus. In fact, Plaintiff alleges that ABN AMRO Ventures owned a *minority* stake in Argus. (5th Am. Cmplt. Count I, ¶ 12.) Allowing imposition of liability on the ABN AMRO Defendants on a respondeat superior basis would therefore vastly expand the fiduciary duties of shareholders, as the *U.S. Airways* court feared. *See* 989 F. Supp. at 494. Under these circumstances, this Court should not create a novel theory of liability under Illinois law. *See, e.g., CCBN.Com*, 270 F. Supp. 2d at 152 ("in diversity cases the federal courts do not undertake to restructure state law") (quotation omitted). Instead, the Court should dismiss the Fifth Amended Complaint with respect to the ABN AMRO Defendants for failure to state a claim.

## II. THE COMPLAINT MUST BE DISMISSED UNDER SECTION 2-619(A)(3) BECAUSE THERE IS A NEAR-IDENTICAL ACTION PENDING BETWEEN THE SAME PARTIES.

Pursuant to Section 2-619(a)(3), a defendant may seek dismissal of a complaint on the basis that "there is another action pending between the same parties for the same cause." *See Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 788 (1st Dist. 1995). Section 2-619(a)(3) furthers judicial economy by avoiding duplicative litigation. *See id.* Within the meaning of section 2-619(a)(3), actions involve the "same cause" when the relief requested is based on substantially the same set of facts. *See Overnite Transp. Co. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 332 Ill. App. 3d 69, 76 (1st Dist. 2002). It is not necessary that the purpose of the two actions be identical; rather, section 2-619(a)(3) may be invoked where there is a substantial similarity of issues between the two actions. *See id.*

---

*re Joy Recovery Tech. Corp.*, 257 B.R. 253, 273 (Bankr. N.D. Ill. 2001) ("[I]f a shareholder exercises *actual control and direction* over corporate management, a fiduciary duty will be imposed.") (quotation omitted and emphasis added).

7

Even a cursory review of the Second Amended Complaint in the federal court case brought by Plaintiff against the ABN AMRO Defendants reveals that it recites exactly the same allegations against Mr. Walz and the ABN AMRO Defendants, but uses them to support breach-of-fiduciary duty claims rather than tortious interference claims. As the tortious interference claims in this action are premised on Walz's alleged breach of his fiduciary duties, that is a distinction with little difference. Accordingly, because the same cause is pending between the same parties in federal district court, the Fifth Amended Complaint should be dismissed with respect to the ABN AMRO Defendants. *See Overnite Transp.*, 332 Ill. App. 3d at 76.

## CONCLUSION

For the foregoing reasons, the ABN AMRO Defendants move to dismiss the ABN AMRO Defendants from this case for failure to state a claim or, in the alternative, because there is a near-identical action pending between the parties in federal court.

Dated: October 6, 2005

ABN AMRO BANK N.V. and ABN AMRO VENTURES B.V.

By: *Edward M Wagner*
One of Their Attorneys

Edward M. Wagner
Heyl Royster Voelker & Allen
102 East Main Street, Suite 300
P.O. Box 129
Urbana, Illinois 61803-0129
(217) 344-0060
(217) 344-9295 (fax)

Brian D. Sieve, P.C.
Andrew A. Kassof
Benjamin W. Hulse
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60610
(312) 861-2000
(312) 861-2200 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage prepaid, and by depositing said envelope in a U.S. Post Office Box in Urbana, Illinois, on the 6th day of October, 2005:

J.W. Phebus
Gary D. Forrester
Daniel J. Pope
Phebus & Koester
136 West Main Street
Urbana, IL  61801

*Edward M. Wagner*
Edward M. Wagner