UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| DANIEL V. GONZALES, JAY A. KASMERCHAK, PAUL A. FREDERICK, RICHARD A. RODRIGUES, PHILLIP G. SAWICKI, JOHN J. KELLER, and LON P. FREDERICK | ) ) ) ) ) ) | No.  04-2232 |
| Plaintiffs, | ) ) | The Honorable Judge Harold A. Baker |
| vs. | ) ) | |
| ABN AMRO BANK N.V., Amsterdam, a Dutch corporation; and ABN AMRO VENTURES B.V., Amsterdam, a Dutch corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>THIRD AMENDED COMPLAINT</u>

### <u>Count 1</u>
### (Class Action – Breach of Fiduciary Duty by ABN AMRO Bank)

COME NOW Plaintiffs DANIEL V. GONZALES, JAY A. KASMERCHAK,

PAUL A. FREDERICK, RICHARD A. RODRIGUES, PHILLIP G. SAWICKI, JOHN J.

KELLER, and LON P. FREDERICK, by and through their attorneys Joseph W. Phebus,

Gary D. Forrester, and Daniel J. Pope of Phebus & Koester, and pursuant to leave granted

by this Court, bring this claim as a class action against Defendant ABN AMRO BANK,

N.V., Amsterdam, a Dutch corporation ("ABN AMRO Bank"), and aver:

        1.      This Court has subject matter jurisdiction pursuant to 28 U.S. Code

Section 1332 in that:

        A.      Plaintiffs Rodrigues and Sawicki are citizens of the State of
Illinois; Plaintiffs Gonzalez, Kasmerchak, Lon Frederick,

Paul Frederick, and Keller are citizens of the State of Wisconsin.

B.    Defendant ABN AMRO Bank is a corporation organized under the laws of the Netherlands with its principal office in the Netherlands, and accordingly is a citizen of a foreign state.

C.    Co-Defendant ABN AMRO Ventures is a corporation organized under the laws of the Netherlands with its principal office in the Netherlands, and accordingly is a citizen of a foreign state.

D.    The amount in controversy exclusive of interest and costs is in excess of $75,000.

2.    This Court has personal jurisdiction over ABN AMRO Bank by virtue of the allegations set forth herein.

3.    Pursuant to 28 U.S. Code Section 1391, this Court has venue in that a substantial part of the events or omissions giving rise to the claim occurred in its territorial jurisdiction including Champaign County, Illinois.

4.    Plaintiffs at all relevant times were shareholders of Argus Systems Group, Inc., an Illinois corporation ("Argus"), the principal place of business of which was located, at all relevant times, in Champaign County, Illinois.

5.    At all relevant times, ABN AMRO Bank did business as ABN AMRO Private Equity.

6.    At all relevant times, Co-Defendant ABN AMRO VENTURES B.V., Amsterdam, a Dutch corporation ("ABN AMRO Ventures") was a subsidiary of ABN AMRO Bank.

7.      To Plaintiffs' information and belief, at all relevant times ABN AMRO Bank d/b/a ABN Private Equity had its principal North American office for ABN Private Equity in the State of Illinois.

8.      At all relevant times, Keith Walz ("Walz") was employed by ABN AMRO Bank as a managing director of its unit ABN AMRO Private Equity, with his principal place of employment being ABN Private Equity's office in the State of Illinois.

9.      To Plaintiffs' information and belief, at all relevant times ABN AMRO Bank's North America operations were headquartered in the State of Illinois.

10.      On December 3, 2001, ABN AMRO Ventures entered into a stock purchase agreement to acquire stock in Argus and in conjunction therewith a voting agreement (a copy of which is attached hereto as Exhibit 1), a registration of rights agreement, a security agreement and various other agreements.

11.      Pursuant to said agreements, ABN AMRO Ventures had the right to designate and appoint one member of the Board of Directors of Argus, and in or about January, 2002, did appoint Walz, a managing director of the ABN AMRO Private Equity unit of ABN AMRO Bank.

12.      At all relevant times, while serving as a director of Argus, Walz was in the course and scope of his employment with ABN AMRO Bank; accordingly ABN AMRO Bank is liable for his acts or omissions complained of herein under the doctrine of *respondeat superior.*

13.      At all relevant times, ABN AMRO Bank was doing business in the State of Illinois, including but not limited to engaging in financial transactions including acquisitions and lending in the State of Illinois.

14.    To Plaintiffs' information and belief, at all relevant times ABN AMRO Bank together with Co-Defendant ABN AMRO Ventures shared substantial business interests with Mercurius Beleggingsmaatschappij B.V., a Dutch corporation ("Mercurius"), and as a consequence thereof ABN AMRO Bank had an interest in promoting the profitability and interests of Mercurius.

15.    On May 23, 2003, Mercurius with the assistance of ABN AMRO Bank and ABN AMRO Ventures filed a petition in the Bankruptcy Court for the United States District Court for the Central District of Illinois forcing Argus into bankruptcy primarily, if not exclusively, for the benefit of Argus's two primary creditors, ABN AMRO Ventures and Mercurius, the interests of which as creditors had a priority over the interests of shareholders in the bankruptcy proceeding, and accordingly Plaintiffs as shareholders have standing to bring a direct action for the benefit of the putative class.

16.    At all relevant times, ABN AMRO Ventures owned a minority stake in Argus, based in Savoy, Illinois.

17.    At all relevant times, putative class member Randall J. Sandone ("Sandone") was the president and chief executive officer of Argus, pursuant to a valid and enforceable written employment contract with Argus, a copy of which is attached hereto as Exhibit 2 and incorporated herein by reference thereto, which contract provided, *inter alia*, "no modification or amendment of any of the terms, conditions, or provisions may be made other than by written agreement signed by the parties." (Exhibit 2, paragraph 12.)

18.    At all relevant times after Walz's appointment to the Argus Board of Directors in or about January 2002, in that capacity he was aware of the existence of

the said valid and enforceable written employment contract between Sandone and Argus (Exhibit 2).

19.     The By-Laws of Argus in force and effect on November 1, 2002, and at all relevant times provided, *inter alia*, in Article IV, Section 3:

> Removal.  With the exception of the Chairman of the Board of Directors and the President, any officer or agent elected or appointed by the Board of Directors may be removed by the board of directors whenever in its judgment the best interests of the corporation would be served thereby, **but such removal shall be without prejudice to the contract rights, if any, of the person so removed. The Chairman of the Board of Directors and/or the President may be removed only with the concurrence of the shareholders of the company as evidence by the affirmative vote of a 2/3^{rds} majority of holders (or proxy holders) of the outstanding common stock of the corporation at a special meeting held for that purpos**e.

(Emphasis added.) Excerpts from the By-Laws, including Article IV, are attached hereto as Exhibit 3 and incorporated herein by reference thereto.

20.     At all relevant times, Plaintiffs and putative class members were Argus shareholders and controlled a substantial amount of the common stock of the corporation.  Accordingly, at all relevant times there was a substantial likelihood that two-thirds of the then-outstanding shares would not concur in Sandone's removal as president.

21.     At all relevant times, two lenders, to wit:  ABN AMRO Ventures and Mercurius had loans to Argus which from their inception were intended to be converted to equity, which conversion would have allowed them to obtain sufficient additional shares of stock to assure a two-thirds vote to ratify Sandone's removal. However, to do so would require that ABN AMRO Ventures and Mercurius convert a combined total of approximately $12 million of secured debt to equity in common stock.

22.     While these conversions would have been to the financial detriment of ABN AMRO Ventures, ABN AMRO Bank, and Mercurius under the then-circumstances of Argus, the conversions would have been advantageous to Argus in that they would have reduced by approximately $12 million Argus' outstanding debt thereby increasing Argus' likelihood of survival and success.

23.     As a director of Argus, Walz owed a fiduciary duty to the shareholders of Argus to:

A.     Refrain from utilizing his office as director in a manner contrary to the best interests of Argus;

B.     Put the interests of all of its shareholders ahead of the best interests of creditors such including ABN AMRO Ventures;

C.     Not disclose confidential Argus information to ABN AMRO and third parties;

D.     Not manipulate the management and operation of Argus contrary to the best interests of Argus but for the benefit of creditors including ABN AMRO Ventures;

E.     Exercise good faith and fair dealing toward Argus and all of its shareholders in his performance of his duties and obligations as a director;

F.     Comply with the by-laws of Argus; and

G.     Comply with the contractual obligations of Argus.

24.     Walz, in the course and scope of his employment with ABN AMRO Bank, violated his aforesaid fiduciary duties in one or more of the following ways or a combination thereof:

A.     Intentionally and unjustifiably interfered with and undermined management of Argus for the benefit of creditors including ABN AMRO Ventures.

B.      Intentionally disclosed confidential information concerning Argus to ABN AMRO Bank, ABN AMRO Ventures, and Mercurius for the purpose of interfering with management of Argus.

C.      Disclosed confidential information concerning Argus to ABN AMRO Bank, ABN AMRO Ventures, and Mercurius with the intent of manipulating the management and operation of Argus for the benefit of ABN AMRO Bank, ABN AMRO Ventures, and Mercurius.

D.      Conspired with ABN AMRO Bank, ABN AMRO Ventures, and Mercurius to remove Sandone as president and chief executive officer without converting approximately $12 million of debt financing into equity in Argus stock.

E.      For the benefit of ABN AMRO Bank and ABN AMRO Ventures, failed to comply with the by-laws of Argus.

F.      For the benefit of ABN AMRO Bank and ABN AMRO Ventures, failed to comply with the contractual obligations of Argus.

G.      Failed to exercise good faith and fair dealing toward Argus and all of its shareholders in his performance of his duties and obligations as a director.

H.      Failed to undertake action to compel ABN AMRO Ventures and Mercurius to convert their debt financing into equity.

I.      Blocked attempts to obtain additional financing by Argus from third parties.

J.      With the aid and assistance of ABN AMRO Bank and ABN AMRO Ventures, directly and through Walz, Mercurius filed a petition in bankruptcy court resulting in the involuntary bankruptcy of Argus.

25.     Plaintiffs bring their claims pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure seeking certification of a class defined as follows or as the Court may otherwise define:

All shareholders of Argus as of the time it filed bankruptcy on May 23, 2003.

Excluded from the class are (1) ABN AMRO Bank, ABN AMRO Ventures, and their directors, officers, agents and employees; (2) Mercurius and its directors, officers, agents and employees; (3) former Director Paul McNabb and his spouse, children, relatives and in-laws; (4) former Director William O'Neill and his spouse, children, relatives and in-laws.

26.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the

prerequisites for the maintenance of a class action are satisfied in that:

A.    The class is so numerous that joinder of all members is impracticable, thus satisfying the requirement of Rule 23(a)(1) in that at all relevant times, to Plaintiffs' knowledge, information and belief, there were more than 50 persons or entities who were shareholders of Argus.

B.    There are questions of fact or law common to the class which predominate over any questions affecting only individual members thus satisfying the requirement of Rule 23(a)(2), which common predominant questions include:

(1)    The nature and extent of the fiduciary duty owed by Walz to Argus and all of its shareholders;

(2)    ABN AMRO Bank's responsibility under the doctrine of *respondeat superior*;

(3)    Whether Walz violated the fiduciary duty;

(4)    The damages to Plaintiffs and putative class members.

C.    The claims of Plaintiffs are typical of the claims of the class and accordingly the requirement of Rule 23(a)(3) is met.

D.    Plaintiffs will fairly and adequately protect the interest of the class. Accordingly the requirement of Rule 23(a)(4) is met in that: Plaintiffs are members of a class they seek to represent and will adequately and fairly protect the interests of the class.  The interests of the Plaintiffs are coincident with, and not antagonistic to, the interests of the other

members of the class.  Plaintiffs have retained attorneys who are experienced in complex litigation, including class actions involving breach of consumer contracts and consumer fraud.

E.    The requirements of Rule 23(b)(3) are met in that:

(1)    The aforesaid questions of law or fact common to members of the class predominate over any questions effecting only individual members;

(2)    A class action is superior to other available methods for the fair and efficient adjudication of the controversy;

(3)    The labor and expense of an individual action would be disproportionately large as to the amount of potential recovery for a substantial number of the putative class members;

(4)    No other litigation concerning this controversy has been commenced against ABN AMRO Bank by any member of the putative class;

(5)    Litigation of claims by individual class members would produce a multiplicity of cases that would further burden already congested court dockets while proceeding as a class action, by contrast, provides a mechanism for efficient adjudication of substantially all claims arising out of the conduct of ABN AMRO Bank.

(6)    While the members of the class are numerous, manageability difficulties are not anticipated. The identities of all class members are known from the corporate records of Argus as well as the amount of stock each class member owned.

27.    By virtue of the foregoing, Plaintiffs and the putative class members were damaged in that Argus was undermined in its ability to conduct its business affairs, and as a result, Argus's business suffered, and as a result, the class members were damaged in that they received no dividends and the value of the stock

ultimately declined to worthless, and the corporation was forced into bankruptcy, and it was unable to have an initial public offering which would have substantially compensated the class members all of whom were start-up investors.

WHEREFORE, Plaintiffs pray:

1.     This claim be certified as a class action with Plaintiffs as class representatives and their attorneys as class counsel;

2.     For a judgment on behalf of the class and against ABN AMRO Bank in the amount of $60 million;

3.     For costs of suit;

4.     Such other and further relief in the premises as may be appropriate;

5.     Demand a trial by jury.


### Count 2
### (Class Action – Breach of Fiduciary Duty by ABN AMRO Ventures)

COME NOW Plaintiffs DANIEL V. GONZALES, JAY A. KASMERCHAK, PAUL A. FREDERICK, RICHARD A. RODRIGUES, PHILLIP G. SAWICKI, JOHN J. KELLER, and LON P. FREDERICK, by and through their attorneys Joseph W. Phebus, Gary D. Forrester, and Daniel J. Pope of Phebus & Koester, and pursuant to leave granted by this Court, bring this claim as a class action against Defendant ABN AMRO VENTURES, B.V., Amsterdam, a Dutch corporation ("ABN AMRO Ventures"), and aver:

1.     This Court has subject matter jurisdiction pursuant to 28 U.S. Code Section 1332 in that:

A.    Plaintiffs Rodrigues and Sawicki are citizens of the State of Illinois; Plaintiffs Gonzalez, Kasmerchak, Lon Frederick, Paul Frederick, and Keller are citizens of the State of Wisconsin.

B.    Defendant ABN AMRO Ventures is a corporation organized under the laws of the Netherlands with its principal office in the Netherlands, and accordingly is a citizen of a foreign state.

C.    Co-Defendant ABN AMRO Bank is a corporation organized under the laws of the Netherlands with its principal office in the Netherlands, and accordingly is a citizen of a foreign state.

D.    The amount in controversy exclusive of interest and costs is in excess of $75,000.

2.    This Court has personal jurisdiction over ABN AMRO Ventures by virtue of the allegations set forth herein.

3.    Pursuant to 28 U.S. Code Section 1391, this Court has venue in that a substantial part of the events or omissions giving rise to the claim occurred in its territorial jurisdiction including Champaign County, Illinois.

4.    Plaintiffs at all relevant times were shareholders of Argus Systems Group, Inc., an Illinois corporation ("Argus"), the principal place of business of which was located, at all relevant times, in Champaign County, Illinois.

5.    At all relevant times, ABN AMRO Ventures was a subsidiary of Co-Defendant ABN AMRO BANK, N.V., Amsterdam, a Dutch corporation ("ABN AMRO Bank").

6.    At all relevant times, ABN AMRO Bank did business as ABN AMRO Private Equity.

7.    To Plaintiffs' information and belief, at all relevant times ABN

AMRO Bank d/b/a ABN Private Equity had its principal North American office for ABN Private Equity in the State of Illinois.

8.     At all relevant times, Keith Walz was employed by ABN AMRO Bank as a managing director of its unit ABN AMRO Private Equity, with his principal place of employment being ABN Private Equity's office in the State of Illinois.

9.     To Plaintiffs' information and belief, at all relevant times ABN AMRO Venture's North America operations were headquartered in the State of Illinois.

10.     On December 3, 2001, ABN AMRO Ventures entered into a stock purchase agreement to acquire stock in Argus and in conjunction therewith a voting agreement (a copy of which is attached hereto as Exhibit 1), a registration of rights agreement, a security agreement and various other agreements.

11.     Pursuant to said agreements, ABN AMRO Ventures had the right to designate and appoint one member of the Board of Directors of Argus, and in or about January, 2002, did appoint Walz, a managing director of the ABN AMRO Private Equity unit of ABN AMRO Bank.

12.     At all relevant times, while serving as a director of Argus, Walz was acting as agent for his principal ABN AMRO Ventures pursuant to his designation and appointment to the Argus Board by ABN AMRO Ventures as aforesaid, and was acting within the course and scope of that agency relationship; accordingly, ABN AMRO Ventures is liable for his acts or omissions complained of herein under the doctrine of *respondeat superior*.

13.     At all relevant times, ABN AMRO Ventures was doing business in the State of Illinois, including but not limited to engaging in financial transactions including acquisitions and lending in the State of Illinois.

14.     To Plaintiffs' information and belief, at all relevant times ABN AMRO Ventures, together with ABN AMRO Bank, shared substantial business interests with Mercurius Beleggingsmaatschappij B.V., a Dutch corporation ("Mercurius"), and as a consequence thereof ABN AMRO Bank and ABN AMRO Ventures had an interest in promoting the profitability and interests of Mercurius.

15.     At all relevant times, ABN AMRO Ventures owned a minority stake in Argus, based in Savoy, Illinois.

16.     On May 23, 2003, Mercurius with the assistance of ABN AMRO Ventures and ABN AMRO Bank, filed a petition in the Bankruptcy Court for the United States District Court for the Central District of Illinois forcing Argus into bankruptcy primarily, if not exclusively, for the benefit of Argus's two primary creditors, ABN AMRO Ventures and Mercurius, the interests of which as creditors had a priority over the interests of shareholders in the bankruptcy proceeding, and accordingly Plaintiffs as shareholders have standing to bring a direct action for the putative class.

17.     At all relevant times, putative class member Randall J. Sandone ("Sandone") was president and chief executive officer of Argus, pursuant to a valid and enforceable written employment contract with Argus, a copy of which is attached hereto as Exhibit 2 and incorporated herein by reference thereto, which contract provided, *inter alia*, "no modification or amendment of any of the terms, conditions, or provisions may

be made other than by written agreement signed by the parties." (Exhibit 2, paragraph 12.)

18.    At all relevant times after Walz's appointment to the Argus Board of Directors in or about January 2002, in that capacity he was aware of the existence of the said valid and enforceable written employment contract between Sandone and Argus (Exhibit 2).

19.    The By-Laws of Argus in force and effect on November 1, 2002, and at all relevant times provided, *inter alia*, in Article IV, Section 3:

> Removal.  With the exception of the Chairman of the Board of Directors and the President, any officer or agent elected or appointed by the Board of Directors may be removed by the board of directors whenever in its judgment the best interests of the corporation would be served thereby, **but such removal shall be without prejudice to the contract rights, if any, of the person so removed. The Chairman of the Board of Directors and/or the President may be removed only with the concurrence of the shareholders of the company as evidence by the affirmative vote of a 2/3$^{rds}$ majority of holders (or proxy holders) of the outstanding common stock of the corporation at a special meeting held for that purpos**e.

(Emphasis added.) Excerpts from the By-Laws, including Article IV, are attached hereto as Exhibit 3 and incorporated herein by reference thereto.

20.    At all relevant times, Plaintiffs and putative class members were Argus shareholders and controlled a substantial amount of the common stock of the corporation.  Accordingly, at all relevant times there was a substantial likelihood that two-thirds of the then-outstanding shares would not concur in Sandone's removal as president.

21.    At all relevant times, two lenders, to wit:  ABN AMRO Ventures and Mercurius had loans to Argus which from their inception were intended to be converted to equity, which conversion would have allowed them to obtain sufficient

additional shares of stock to assure a two-thirds vote to ratify Sandone's removal. However, to do so would require that ABN AMRO Ventures and Mercurius convert a combined total of approximately $12 million of secured debt to equity in common stock.

22. While these conversions would have been to the financial detriment of ABN AMRO Ventures, ABN AMRO Bank, and Mercurius under the then-circumstances of Argus, the conversions would have been advantageous to Argus in that they would have reduced by approximately $12 million Argus' outstanding debt thereby increasing Argus' likelihood of survival and success.

23. As a director of Argus, Walz owed a fiduciary duty to the shareholders of Argus to:

A. Refrain from utilizing his office as director in a manner contrary to the best interests of Argus;

B. Put the interests of all of Argus's shareholders ahead of the interests of creditors such including ABN AMRO Ventures;

C. Not disclose confidential Argus information to ABN AMRO Ventures, ABN AMRO Bank, or to third parties;

D. Not manipulate the management and operation of Argus contrary to the best interests of Argus but for the benefit of creditors including ABN AMRO Ventures;

E. Exercise good faith and fair dealing toward Argus and all of its shareholders in his performance of his duties and obligations as a director;

F. Comply with the by-laws of Argus; and

G. Comply with the contractual obligations of Argus.

24.     Walz, in the course and scope of his agency with ABN AMRO Ventures, violated his aforesaid fiduciary duties in one or more of the following ways or a combination thereof:

A.     Intentionally and unjustifiably interfered with and undermined management of Argus for the benefit of creditors including ABN AMRO Ventures.

B.     Intentionally disclosed confidential information concerning Argus to ABN AMRO Ventures, ABN AMRO Bank, and Mercurius for the purpose of interfering with management of Argus.

C.     Disclosed confidential information concerning Argus to ABN AMRO Ventures, ABN AMRO Bank, and Mercurius with the intent of manipulating the management and operation of Argus for the benefit of ABN AMRO Ventures, ABN Bank, and Mercurius.

D.     Conspired with ABN AMRO and Mercurius to remove Sandone as president and chief executive officer without converting approximately $12 million of debt financing into equity in Argus stock.

E.     For the benefit of ABN AMRO Ventures and ABN AMRO Bank, failed to comply with the by-laws of Argus.

F.     For the benefit of ABN AMRO Ventures and ABN AMRO Bank, failed to comply with the contractual obligations of Argus.

G.     Failed to exercise good faith and fair dealing toward Argus and all of its shareholders in his performing his duties and obligations as a director.

H.     Failed to undertake action to compel ABN AMRO Ventures and Mercurius to convert their debt financing into equity.

I.     Blocked attempts to obtain additional financing by Argus from third parties.

J.     With the aid and assistance of ABN AMRO Ventures and ABN AMRO Bank, directly and through Walz, Mercurius

filed a petition in bankruptcy court resulting in the involuntary bankruptcy of Argus.

25.    Plaintiffs bring their claims pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure seeking certification of a class defined as follows or as the Court may otherwise define:

> All shareholders of Argus as of the time it filed bankruptcy on May 23, 2003.
>
> Excluded from the class are (1) ABN AMRO Ventures, ABN AMRO Bank, and their directors, officers, agents and employees; (2) Mercurius and its directors, officers, agents and employees; (3) former Director Paul McNabb and his spouse, children, relatives and in-laws; (4) former Director William O'Neill and his spouse, children, relatives and in-laws.

26.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the prerequisites for the maintenance of a class action are satisfied in that:

A.    The class is so numerous that joinder of all members is impracticable, thus satisfying the requirement of Rule 23(a)(1) in that at all relevant times, to Plaintiffs' knowledge, information and belief, there were more than 50 persons or entities who were shareholders of Argus.

B.    There are questions of fact or law common to the class which predominate over any questions affecting only individual members thus satisfying the requirement of Rule 23(a)(2), which common predominant questions include:

(1)    The nature and extent of the fiduciary duty owed by Walz to Argus and all of its shareholders;

(2)    ABN AMRO Venture's responsibility under the doctrine of *respondeat superior*;

(3)    Whether Walz violated the fiduciary duty;

(4)    The damages to Plaintiffs and putative class members.

C.   The claims of Plaintiffs are typical of the claims of the class and accordingly the requirement of Rule 23(a)(3) is met.

D.   Plaintiffs will fairly and adequately protect the interest of the class. Accordingly the requirement of Rule 23(a)(4) is met in that: Plaintiffs are members of a class they seek to represent and will adequately and fairly protect the interests of the class. The interests of Plaintiffs are coincident with, and not antagonistic to, the interests of the other members of the class. Plaintiffs have retained attorneys who are experienced in complex litigation, including class actions involving breach of consumer contracts and consumer fraud.

E.   The requirements of Rule 23(b)(3) are met in that:

(1)   The aforesaid questions of law or fact common to members of the class predominate over any questions effecting only individual members;

(2)   A class action is superior to other available methods for the fair and efficient adjudication of the controversy;

(3)   The labor and expense of an individual action would be disproportionately large as to the amount of potential recovery for a substantial number of the putative class members;

(4)   No other litigation concerning this controversy has been commenced against ABN AMRO Ventures by any member of the putative class;

(5)   Litigation of claims by individual class members would produce a multiplicity of cases that would further burden already congested court dockets while proceeding as a class action, by contrast, provides a mechanism for efficient adjudication of substantially all claims arising out of the conduct of ABN AMRO Ventures.

(6)   While the members of the class are numerous, manageability difficulties are not anticipated. The identities of all class members are known from the

corporate records of Argus as well as the amount of stock each class member owned.

27.    By virtue of the foregoing, Plaintiffs and the putative class members were damaged in that Argus was undermined in its ability to conduct its business affairs, and as a result, Argus's business suffered, and as a result, the class members were damaged in that they received no dividends and the value of the stock ultimately declined to worthless, and the corporation was forced into bankruptcy, and it was unable to have an initial public offering which would have substantially compensated the class members all of whom were start-up investors.

WHEREFORE, Plaintiffs pray:

1.    This claim be certified as a class action with Plaintiffs as class representatives and their attorneys as class counsel;

2.    For a judgment on behalf of the class and against ABN AMRO Ventures in the amount of $60 million;

3.    For costs of suit;

4.    Such other and further relief in the premises as may be appropriate;

5.    Demand a trial by jury.

BY:  s/Gary D. Forrester
Gary D. Forrester
Attorney for Plaintiffs
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
(217) 337-1607 (fax)
gdforrester@phebuslaw.com


BY:  s/ Joseph W. Phebus
Joseph W. Phebus

Attorney for Plaintiffs
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
(217) 337-1607 (fax)
jwphebus@phebuslaw.com

BY:  s/ Daniel J. Pope
Attorney for Plaintiffs
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
(217) 337-1607 (fax)
dpope@phebuslaw.com

## JURY DEMAND

COME NOW Plaintiffs, by their attorneys, Joseph W. Phebus, Gary D. Forrester, and Daniel J. Pope of the law firm of Phebus & Koester, and hereby demand a trial by jury on the issues in this cause.

BY:  s/Gary D. Forrester
Gary D. Forrester
Attorney for Plaintiffs
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
(217) 337-1607 (fax)
gdforrester@phebuslaw.com

s/ Joseph W. Phebus
Joseph W. Phebus
Attorney for Plaintiffs
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
(217) 337-1607 (fax)

20

jwphebus@phebuslaw.com

s/ Daniel J. Pope
Attorney for Plaintiffs
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
(217) 337-1607 (fax)
dpope@phebuslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard P. Klaus
HEYL ROYSTER VOELKER & ALLEN
P.O. Box 129
Urbana, Illinois 61801-0129
rklaus@hrva.com

Edward M. Wagner
HEYL ROYSTER VOELKER & ALLEN
P.O. Box 129
Urbana, Illinois 61801-0129
ewagner@hrva.com

BY:  s/Gary D. Forrester
Gary D. Forrester
Attorney for Plaintiffs
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
(217) 337-1607 (fax)
gdforrester@phebuslaw.com

*f:\docs\joe\sandone\abn amro\3ʳᵈ am complaint--federal.doc*