## VOTING AGREEMENT

This Voting Agreement (this "*Agreement*") is made as of the 3rd day of December, 2001, by and among Argus Systems Group, Incorporated, an Illinois corporation (the "*Company*"), ABN Amro Ventures, B.V., a Dutch corporation ("*ABN Amro*"), Mercurius Beleggingsmaatschappij B.V., a Dutch corporation ("*Mercurius*" and together with ABN Amro, the "*Investors*") and the following holders of shares of the Company's common stock without par value ("*Common Stock*"): Randall J. Sandone and Paul A. McNabb (the "*Stockholders*").

The Company and the Investors have entered into a Stock Purchase Agreement (the "*Purchase Agreement*") of even date herewith pursuant to which the Company desires to sell to the Investors and the Investors desire to purchase from the Company shares of the Company's Class B Common Stock. A condition to the Investors' obligations under the Purchase Agreement is that the Company, the Investors and the Stockholders enter into this Agreement for the purpose of setting forth the terms and conditions pursuant to which the Stockholders and the Investors shall vote their shares of the Company's voting stock in favor of certain designees to the Company's Board of Directors. The Company, the Investors and the Stockholders each desire to facilitate the voting arrangements set forth in this Agreement, and the sale and purchase of shares of Common Stock pursuant to the Purchase Agreement, by agreeing to the terms and conditions set forth below.

The parties agree as follows:

### ARTICLE I
### ELECTION OF DIRECTORS.

1.1   Board Representation. At each annual meeting of the stockholders of the Company, or at any meeting of the stockholders of the Company at which members of the Board of Directors of the Company are to be elected, or whenever members of the Board of Directors are to be elected by written consent, the Investors and the Stockholders agree to vote or act with respect to their shares so as to nominate and elect:

(a) three (3) members of the Company's Board of Directors designated by the Stockholders, which designees shall initially be Randall J. Sandone, William M. O'Neill and Steven Oetegenn; and

(b) so long as ABN Amro or its affiliates continue to own at least 5% of the Company's stock, one member of the Company's Board of Directors designated by ABN Amro or its designated affiliates; and

(c) so long as Mercurius or its affiliates continue to own at least 5% of the Company's stock, one member of the Company's Board of Directors designated by Mercurius or its designated affiliates.




1.2 Filling Vacancies. In the event of the resignation, death, removal or disqualification of a director nominated pursuant to Section 1.1, then, if the party or parties that had the right to nominate such director pursuant to Section 1.1 still has such right, such party or parties shall promptly nominate a new director and, after written notice of the nomination has been given by such party to each of the parties hereto, the Investors and the Stockholders will vote their shares of the Company's capital stock to elect such nominee to the Board of Directors.

1.3 Certain Resignations or Removals. Except as provided in Section 2, no party hereto shall vote for the removal of a director nominated and elected pursuant to this Agreement, and no such vote shall be effective, unless the parties who nominated such director, voting among themselves shall specify, provided, that nothing contained herein shall limit the right of a party to vote to remove a director for violation of fiduciary obligations or willful misconduct, provided, further, that the party or parties having the right to nominate a director pursuant to Section 1.1 shall have the right to nominate a replacement in the event that a director is so removed. Any party or parties having the right to nominate a director pursuant to Section 1.1 also shall have the right to request the resignation or removal of the director so nominated and elected. In such event, such director shall immediately resign or be subject to removal by a vote of the Company's stockholders, and each Investor and Stockholder shall vote all of their shares of capital stock of the Company in favor of such removal. If such director shall fail to resign, such party or parties shall have the right to call a special meeting of stockholders for the purpose of removing such director and each Investor and Stockholder shall vote all their shares entitled to vote at such meeting in favor of removal.

## ARTICLE II
## MANAGEMENT PROTECTION

2.1 Annual Budget. As provided more fully in that certain Shareholders' Agreement dated as of the date hereof by and between the Company, Investors and Stockholders, the Company shall prepare an annual budget (each, an "*Annual Budget*") approved by the Investors for each of 2002, 2003 and 2004 fiscal years (a "*Fiscal Year*") that contain minimum revenue targets for each such year (each, a "*Revenue Target*").

2.2 Management Votes. At any time that the Company's actual gross revenue for any Fiscal Year is less than ninety percent (90%) of such year's Revenue Target (for these purposes, actual revenue shall also include the amount by which the prior's year actual revenue exceeded the prior year's Revenue Target, if any, but the carry-over from a prior year may not be used to determine whether there is any excess revenue that can be carried over to a subsequent year), all classes of voting stock of the Company shall vote as one class on the issue of removal of Randall J. Sandone ("*Sandone*") as Chief Executive Officer and as a director of the Company, provided, however, that nothing in this Agreement shall prohibit the Investors from exercising their fiduciary obligations under the laws of the State of Delaware in the event of Sandone's fraud, gross negligence or willful misconduct requires his earlier removal from the Board of Directors.

# ARTICLE III
## ADDITIONAL REPRESENTATIONS AND COVENANTS.

3.1   No Revocation. The voting agreements contained herein are coupled with an interest and may not be revoked during the term of this Agreement.

3.2   Number of Directors. The Investors and Stockholders will not vote for any amendment or change to the Certificate of Incorporation or Bylaws effecting a change in the number of directors from the number then subject to nomination rights pursuant to Section 1.1.

3.3   Legends. Each certificate representing shares of the Company's capital stock held by the Investors or the Stockholders or any assignee of either the Investors or the Stockholders shall bear the following legend:

"THE SHARES EVIDENCED HEREBY ARE SUBJECT TO A VOTING AGREEMENT BY AND AMONG THE COMPANY AND CERTAIN STOCKHOLDERS OF THE COMPANY (A COPY OF WHICH MAY BE OBTAINED FROM THE COMPANY), AND BY ACCEPTING ANY INTEREST IN SUCH SHARES THE PERSON ACCEPTING SUCH INTEREST SHALL BE DEEMED TO AGREE TO AND SHALL BECOME BOUND BY ALL THE PROVISIONS OF SAID VOTING AGREEMENT."

# ARTICLE IV
## COVENANTS OF THE COMPANY.

The Company agrees to ensure that the rights granted hereunder are effective and that the parties hereto enjoy the benefits thereof. Such actions include, without limitation, the use of the Company's best efforts to assist in the nomination and election of the directors as provided above.

4.1   The Company will not, by any voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be performed hereunder by the Company, but will at all times in good faith assist in the carrying out of all of the provisions of this Agreement and in the taking of all such actions as may be necessary, appropriate or reasonably requested by the parties hereto in order to protect the rights of the parties hereunder against impairment.

4.2   The Company shall take such action as may be necessary to cause the Board to meet no less often than four (4) times per year, of which three (3) such meetings shall be held in person; provided, however, the Board may consent by majority vote to waive the covenant contained in this Section 4.2.

# ARTICLE V
## TERMINATION

5.1   Termination Events. This Agreement shall terminate upon the earlier of:



2

(a) A firm commitment underwri[tten] public offering by the Company of shares of its Common Stock pursuant to a registration statement on Form S-1 under the Securities Act of 1933, as amended, the public offering price of which is not less than $8.00 per share (appropriately adjusted for any stock split, dividend, combination or other recapitalizations after the date hereof) and which results in aggregate gross cash proceeds of at least $50,000,000; or

(b) The sale, conveyance or disposal of all or substantially all of the Company's property or business or the Company's merger with or into or consolidation with any other corporation (other than a wholly-owned subsidiary corporation and other than any reincorporation of the Company in another jurisdiction with substantially the same capital structure) or if the Company effects any other transaction or series of related transactions in which more than fifty percent (50%) of the voting power of the Company is disposed of and the Company is not the survivor, provided that this Section 5.1(b) shall not apply to a merger effected exclusively for the purpose of changing the domicile of the Company; or

(c) This Agreement shall further terminate and cease to apply to any Party who or which at any time ceases to own at least five percent (5%) of the issued and outstanding shares of capital stock of the Company (treating any convertible debt instruments, warrants or options beneficially held by such Party as having been converted).

5.2 Removal of Legend. At any time after the termination of this Agreement in accordance with Section 5.1, any holder of a stock certificate pursuant to Section 3.3 may surrender such certificate to the Company for removal of the restrictive legend, and the Company will duly reissue a new certificate without the legend.

## ARTICLE VI
## MISCELLANEOUS

6.1 Successors and Assigns. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

6.2 Application of Agreement to After-Acquired Shares. All of this provisions of Section 1 shall apply to all voting securities held by the Investors and the Stockholders, whether issued or acquired before or after the date hereof, and all securities issued as a replacement for the Common Stock or with respect to the Common Stock as a result of any stock dividend, stock split or other similar event.

6.3 Specific Performance. The rights of the parties under this Agreement are unique and, accordingly, the parties shall have the right, in addition to such other remedies as may be available to any of them at law or in equity, to enforce their rights hereunder by actions for specific performance in addition to any other legal or equitable remedies they might have to the extent permitted by law.

6.4 <u>Amendments and Waivers</u>. Any term hereof may be amended or waived only with the written consent of each party hereto. Any amendment or waiver effected in accordance with this <u>Section 6.4</u> shall be binding upon the Company, the Investors and the Stockholders, and each of their respective successors and assigns.

6.5 <u>Notices</u>. Unless otherwise provided, any notice required or permitted under this Agreement shall be given in writing and shall be deemed effectively given when received if given by delivery in person or by courier or a courier service; (ii) on the date of transmission if sent by telex, facsimile or other wire transmission (in the case of facsimile, subject to confirmation of receipt made by printed confirmation sheet verifying successful transmission; or (iii) four (4) business days after deposit with the United States Postal Service, by registered or certified mail, postage prepaid. Such notice shall be addressed to the party to be notified at the address set forth below, or at such other address as such party may designate by ten (10) days' advance written notice to the other parties:

(a) To Argus US:  Argus Systems Group, Incorporated
c/o Mr. Randall J. Sandone
1809 Woodfield Drive
Savoy, Illinois 61874
TELE: (217) 355-6308
FAX: (217) 355-1433

(b) To ABN AMRO Ventures B.V.:

ABN AMRO Capital
Gustav Mahlerlaan 10
P.O. Box 283 (HQ 4048)
1000 EA Amsterdam
The Netherlands
TELE: (31) 20-628-6389
FAX: (31) 20-628-9127
Attn: Adminstration Department

and to:  Wilmer, Cutler & Pickering
4 Carlton Gardens
London SW1Y5AA, England
TELE: 011 (4420) 7872-1000
FAX: 011 (4420) 7839-3537
Attn: Gerry B. Cater, Esquire

5

(c) To Mercurius:

        Mercurius Beleggingsmaatschappij B.V.
        c/o Mr. Frits F. Vromen
        Akerstraat 126
        NL - 6417 BR Heerlen
        TELE: (31) 45 560-6222
        FAX: (31) 45-579-8070

(d) To the Stockholders:

        Mr. Randall Sandone
        1809 Woodfield Drive
        Savoy, IL 61874 USA

        Mr. Paul A. McNabb
        1809 Woodfield Drive
        Savoy, IL 61874 USA

6.6 *Severability.* If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

6.7 *Governing Law.* This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law.

6.8 *Counterparts.* This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. Any signature page delivered by a fax machine or telecopy machine shall be binding to the same extent as an original signature page, with regard to any agreement subject to the terms hereof or any amendment thereto. Any party who delivers such a signature page agrees to later deliver an original counterpart to any party which requests it.

6.9 *Titles and Subtitles.* The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

6.10 *Further Assurances.* Each party to this Agreement hereby covenants and agrees, without the necessity of any further consideration, to execute and deliver any and all such further documents and take any and all such other actions as may be necessary or appropriate to carry out the intent and purposes of this Agreement.

6.11 <u>Attorneys' Fees</u>. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

*[Signature Page Follows]*

7

IN WITNESS WHEREOF, the undersigned have hereunto set their hand as of the day and year first above written.

COMPANY:

ARGUS SYSTEMS GROUP,
INCORPORATED, an Illinois corporation

By: *[signature]*
Name:
Title:

STOCKHOLDERS:

*[signature]*
Randall J. Sandone

*[signature]*
Paul A. McNabb

INVESTORS:

ABN AMRO VENTURES, B.V.,
a Dutch corporation

By: _____
Name:
Title:

MERCURIUS
BELEGGINGSMAATSCHAPPIJ B.V.

By: *[signature]*
Name: FRITS F. VROMEN
Title: EXEC VP

Signature page to Voting Agreement

IN WITNESS WHEREOF, the undersigned have hereunto set their hand as of the day and year first above written.

COMPANY:

ARGUS SYSTEMS GROUP,
INCORPORATED, an Illinois corporation

By:_____
Name:
Title:

STOCKHOLDERS:

_____
Randall J. Sandone

_____
Paul A. McNabb

INVESTORS:

ABM AMRO VENTURES, B.V.,
a Dutch corporation

By: *[signature]*
Name: Rolf Schumacher / [illegible] Dyk
Title: SVP / VP

MERCURIUS
BELEGGINGSMAATSCHAPPIJ B.V.

By: _____
Name:
Title:

Signature page to Voting Agreement