E-FILED
Wednesday, 07 December, 2005 11:57:32 AM
Clerk, U.S. District Court, ILCD

## SENIOR MANAGEMENT EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is entered into as of 1 June 2001 (the "Effective Date") by and between Randall J. Sandone ("Employee") and Argus Systems Group, Inc., an Illinois corporation (the "Company").

### RECITALS

Company desires to employ Employee as President and Chief Executive Officer ; and Employee desires to be so employed;

Therefore, in consideration of the mutual covenants and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.  *Employment.* Employee agrees to render services customarily required of the President and Chief Executive Officer for the Company, and Company agrees to utilize these services on the terms and conditions stated below.

2.  *Duties.* Employee will be employed as President and Chief Executive Officer for Company. Employee will have the authority and will perform the duties specified in the Bylaws of Company for the offices to which Employee has been employed; subject however, to any limitations, instructions, directions and control the Board of Directors of Company may specify from time to time. During the term of this Agreement, Employee will devote his full time attention, skills, benefits and best efforts to the performance of the duties under this Agreement and to the promotion of the business and interests of Company.

3.  *Term.* The term of employment under this Agreement will be 4 years, commencing on 1 June 2001, subject to earlier termination in accordance with the terms and conditions set forth below.

4.  *Compensation.* As compensation for the services rendered under this Agreement, Employee will be entitled to receive the following:

    4.1  *Salary.* Company will pay Employee a base annual salary of the equivalent of $110,000 for the term commencing on 1 June 2001 and terminating on December 31, 2001. Employee's base annual salary may be adjusted annually as determined by the Board of Directors, but will not be less than the initial base annual salary identified above. The base annual salary will be payable in periodic monthly or semimonthly installments at times as may be in accordance with the practices of Company.

    4.2  *Performance Bonus.* Employee will be eligible to receive performance bonus compensation for each fiscal year that ends during the periods prior to December 31 in an amount as determined by the Board of Directors of Company in its discretion based on Company performance during the Company's prior fiscal year. The performance bonus will be payable to Employee within 60 days after the end of Company's fiscal year or as soon as practicable after publishing Company's annual financial results.

    4.3  *Withholding.* Company will be entitled to withhold from all payments of base annual salary and from all other payments of compensation under this Agreement, amounts as may be necessary to satisfy any federal or state income tax withholding requirements or payroll tax requirements or similar assessments as required by law or as may be directed by Employee to be withheld for extended insurance coverage or Company deferred savings plans.

EXHIBIT 2

5. *Expenses and Benefits.* Employee will be reimbursed for reasonable expenses in connection with the business of Company, including expenses for entertainment, travel, and similar matters in accordance with the standard expense reimbursement policy of Company. Company will reimburse Employee for expenses upon presentation by Employee of accounts and records as Company will from time to time require. Company also agrees to provide Employee with the following benefits:

(a) A certain number of paid vacation days in each calendar year in accordance with the vacation policies and practices of Company, but not less than 20 business days in any calendar year. Employee will also be entitled to all paid holidays given by Company to its senior executive employees.

(b) Coverage under major medical health insurance, term life insurance and disability insurance, and other benefit plans as are in effect under the current policies and practices of Company.

(c) Participation in all pension and profit sharing plans established in accordance with the policies and practices of Company and the terms of the plans.

6. *Stock Options.* Employee has been a participant in the Employee Stock Option Plan. All options granted and any anti-dilution rights currently enjoyed as of the date of this agreement shall remain in force. Employee shall be entitled to continue to participate in the Employee Stock Option Plan, with specific future option compensation to be determined by the Board of Directors.

7. *Additional Consideration for Employment.* The Company currently purchases a life insurance policy on behalf of Employee, whereby Employee owns all benefits of the policy (cash value, death benefit, etc.). The Company shall continue this policy in force and shall pay all premiums of the policy until termination of employment.

8. *Termination.* This Agreement and the employment relationship created will terminate upon the occurrence of any of the following events:

(a) The expiration of the term of this Agreement as set forth in Section 3;
(b) Written notice to Employee from Company of termination for Cause; or
(c) The voluntary termination of his employment by Employee. For purposes of this Agreement, "Cause" is defined as Employee's conviction, by a court of competent jurisdiction, of a felony, theft of Company property, or a crime of moral turpitude, or gross negligence in the performance of Employee's duties.

*Involuntary Termination:* If Company terminates this Agreement for reasons other than those set forth in Sections 8(a) through 8(c), and without the express written consent of Randall J. Sandone, such termination shall be considered Involuntary Termination. In the event of Involuntary Termination, Company will pay to Employee the remainder of all base annual salary, signing bonus, and minimum annual bonus payable under Sections 4.1, 4.2, and 4.3 of this Agreement and due Employee under this Agreement in a one-time, lump sum payment. The parties expressly agree that the Involuntary Termination of Employee, as a company CEO and well-known industry leader, will cause professional disgrace and damage to Employee's professional reputation. Accordingly, as specific compensation for such Involuntary Termination, Company will, in addition to all other compensation as identified above, pay a one-time lump sum termination fee of $250,000 and will grant to Employee an additional 1,000,000 options to purchase common stock (exercisable over five years from the date of grant, at an exercise price that shall be equal to the price per share paid in the then most recent share offering of $500,000 or greater). Withholdings as required by local, state or federal laws or regulations shall be taken out of any final payment made to Employee, except in the event the parties agree otherwise in a written Separation and Termination Agreement. The parties expressly agree that such obligation to pay Employee such amounts due under this paragraph shall vest immediately to Employee upon the moment of his termination without Cause, and further shall be independent of, and not mitigated by, any subsequent employment Employee is able to find or obtain following any involuntary discharge by Employer.

If Employee terminates this Agreement for any reason, he shall be entitled to such final compensation and benefits as the parties shall negotiate and agree to in writing.

9.  *Confidential Information.*  Employee covenants and agrees that he will not knowingly at any time during the term of this Agreement, directly or indirectly, reveal, divulge, use, disclose or communicate to any person, firm or corporation, in any manner whatsoever, any Confidential Information (defined below) of or concerning Company or its subsidiaries or any other entities affiliated or associated with Company.  As used in this Agreement, "Confidential Information" means information of any kind, nature and description and in any form disclosed to, discovered by, or otherwise known by Employee as a direct or indirect consequence of or through his employment by Company or the services he renders to other entities while an employee of Company, or as a result of his association with any of the above, which is not generally known by the public, including without limitation (a) software source codes, trade secrets, including, but not limited to, formulas, patterns, devices, secret specifications, and (b) any and all developments, corporate opportunities, product lines, designs, purchases, finances and financial affairs, marketing, merchandising, clients, customers, any merchandise, equipment or supply sources, systems designs, procedure manuals and the unpublished prices Company obtains or has obtained or at which it sells or has sold its services or products.  In addition, Employee will execute Company's standard nondisclosure agreement.

10.  *Notices.*  Any notices to be given by either party to the other may be effected either by personal delivery in writing or by mail, registered or certified, postage prepaid, with return receipt requested.  Personal delivery to Company will be made to the President with a copy to the General Counsel.  Mailed notices will be addressed to the respective addresses shown below.  Either party may change its address for notice by giving written notice in accordance with the terms of this Section 10.

(a) If to Employee:    Randall J. Sandone
                       1779 County Road, 1550 North
                       Urbana, IL  61802

(b) If to Company:     Paul A. McNabb, Corporate Secretary
                       Argus Systems Group, Inc.
                       1809 Woodfield Drive
                       Savoy, IL 61874

11.  *Reimbursement of Legal Fees.*  If Company breaches any term, condition or covenant of this Agreement, it shall, in addition to any other amounts Company is obligated to pay to Employee hereunder, pay all of Employee's reasonable attorney's fees, costs and expenses incurred by Employee in connection with Employee's enforcement of the terms and conditions of this Agreement pursuant to Company's breach, whether or not suit is brought and whether or not such breach is admitted by Company in any final settlement agreement.

12.  *Entire Agreement and Time of the Essence.*  This Agreement contains the entire agreement of the parties and supercedes all prior agreements and understandings, oral or written between the parties.  No modification or amendment of any of the terms, conditions or provisions may be made other than by written agreement signed by the parties.  Time shall be of the essence to this Agreement where applicable herein.

13.  *Governing Law.*  Illinois law will govern the validity, construction, enforcement and interpretation of this Agreement.

14. *Parties Bound.* This Agreement and the rights and obligations under it will be binding upon and inure to the benefit of Company, Employee and his respective heirs, personal representatives, successors and assigns; provided, however, that the Employee may not assign any rights or obligations without the express written consent of Company. This Agreement will also bind and inure to the benefit of any successor of Company by acquisition, merger or consolidation, or any purchaser of all or substantially all of Company's assets or properties, or to any of Company's assigns.

15. *Savings Clause.* If any one or more of the provisions contained in this Agreement will for any reason be held to be invalid, illegal or unenforceable in any respect, the invalidity, illegality or unenforceability will not affect the validity and enforceability of any other provisions. Further, should any provisions within this Agreement ever be reformed or rewritten by a judicial body, the rewritten provisions will be binding upon Company and Employee.

16. *Waiver of Breach.* The waiver by any party of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach by any party.

17. *Descriptive Headings.* Title to paragraphs in this Agreement are for information purposes only and will not be used for interpretation of this Agreement.

18. *Multiple Counterparts.* This Agreement may be executed in a number of identical counterparts, each of which for all purposes is to be deemed an original, and all of which constitute, collectively, one agreement; but in making proof of this Agreement, it will not be necessary to produce or account for more than one counterpart.

19. *Other Obligations.* Employee represents and warrants that he has not as of the execution of this Agreement assumed any obligations inconsistent with those contained here.

20. *Effective Date:* This Agreement shall be effective as of the date set forth above.

Company: Argus Systems Group, Inc,
By: _____
Title:  Corporate Secretary


Employee:
By: _____