UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DANIEL V. GONZALES, et al., ) | |
| ) | No. 04-2232 |
| Plaintiffs, ) | |
| ) | Hon. Harold A. Baker |
| vs. ) | |
| ) | |
| ABN AMRO BANK N.V. and ABN AMRO ) | |
| VENTURES B.V., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM IN SUPPORT OF ABN AMRO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

The substitution of named plaintiffs in this case does not alter the fact that Third Amended Complaint fails to state a viable claim against defendants ABN AMRO Bank N.V. and ABN AMRO Ventures B.V. (the "ABN AMRO Defendants"). As the ABN AMRO Defendants explained in their previously submitted motions to dismiss (neither of which was ruled upon by this Court), plaintiffs' suit for diminution of shareholder value is transparently and indisputably derivative in nature and can only be asserted by or on behalf of the allegedly harmed corporation, Argus Systems Group, Inc. ("Argus"). Plaintiffs have not claimed any injury distinct from that allegedly incurred by other shareholders. Thus, plaintiffs lack standing to bring their claims.

In fact, plaintiffs could not ever sue derivatively, because Argus is now in Chapter 7 bankruptcy, the bankruptcy trustee has exclusive authority to bring such a claim on behalf of the corporation and its shareholders. Former named plaintiff Randall J. Sandone tried to divest the trustee of that exclusive authority, and was rebuffed by the bankruptcy court and by Chief Judge McCuskey on appeal. There is no reason to believe that if the new plaintiffs were to seek to divest the trustee of his authority, that the result would be any different. Absent that authority, plaintiffs cannot bring a derivative suit against the ABN AMRO Defendants.

Even were Argus were not a bankrupt entity, the Third Amended Complaint still would suffer from a basic, fatal defect: it does not state a claim upon which relief can be granted. Courts have consistently rejected Plaintiff's respondeat superior theory of liability because it would dangerously expand the fiduciary duties of shareholders to other shareholders.

Several other defects warrant dismissal of the Second Amended Complaint, including improper service of process under the Hague Convention and lack of personal jurisdiction. This fourth attempt at a viable complaint in this Court should be the last. Plaintiffs cannot assert a cause of action against the ABN AMRO Defendants in this Court, and it would be a futile waste of judicial resources to allow plaintiffs leave to amend any further. Accordingly, the ABN AMRO Defendants move this Court, pursuant to Rules 12(b)(2), 12(b)(5), 12(b)(6), and 17(a) of the Federal Rules of Civil Procedure, to dismiss the Third Amended Complaint with prejudice.

## RELEVANT BACKGROUND

### I. PLAINTIFFS' FACTUAL ALLEGATIONS.

Argus Systems Group, Inc. ("Argus") is an Illinois corporation. (3rd Am. Cmplt. ¶ 4.) Plaintiffs Rodrigues and Sawicki allege that they are citizens of Illinois, and the remaining plaintiffs allege that they are citizens of Wisconsin. (*Id.* ¶ 1.A.) All plaintiffs allege that they were shareholders of Argus. (*Id.* ¶ 4.)

In 2001, Dutch corporations ABN AMRO Ventures B.V.[1] and Mercurius Belegginingsmaatshappij B.V. entered into a Stock Purchase Agreement to purchase shares of Argus's Class B Common Stock. (*Id.* ¶ 10, Ex. 1 at 1.) In connection with the Stock Purchase Agreement, ABN AMRO Ventures and Mercurius made loans to Argus totaling approximately

---

[1] ABN AMRO Ventures is a subsidiary of ABN AMRO Bank (3rd Am. Cmplt. ¶ 6.)

$12 million. (3rd Am. Cmplt. ¶ 21.) The Third Amended Complaint alleges that these loans "were intended to be converted to equity." (*Id.*)

On December 3, 2001, ABN AMRO Ventures and Mercurius also entered into a Voting Agreement with Argus and two of Argus's common stockholders, Paul A. McNabb and former named plaintiff Sandone. (*Id.* ¶ 10, Ex. 1 at 1.) The Voting Agreement provided that ABN AMRO Ventures and Mercurius could each designate one person to sit on the Argus Board of Directors so long as each owned at least 5 percent of Argus's stock. (3rd Am. Cmplt. ¶ 11; Ex. 1 at 1.) ABN AMRO Ventures, which owned more than 5 percent of Argus's stock, appointed Keith Walz, managing director of ABN AMRO Private Equity (a Chicago-based business division of ABN AMRO Bank), to the Board in January 2002. (3rd Am. Cmplt. ¶ 8, 11.) The Third Amended Complaint does not indicate the number or percentage of shares held by ABN AMRO Ventures, Mercurius, plaintiffs, or Paul McNabb, only that ABN AMRO Ventures "owned a minority stake." (*Id.* ¶ 16.) Nor does it indicate whether ABN AMRO Ventures and Mercurius held a majority or controlling interest in Argus in combination.

Plaintiffs allege that, while he served on Argus's board, Walz violated his fiduciary duties to the shareholders of Argus. (*Id.* ¶¶ 23-24.) Walz allegedly used his position to benefit the ABN AMRO Defendants and Mercurius by removing former named plaintiff Sandone as Argus's president and CEO. (*Id.* ¶ 24.D.) Plaintiffs further allege that on May 23, 2003, Mercurius forced Argus into Chapter 7 "[w]ith the aide [sic] and assistance of ABN AMRO Bank and ABN AMRO Ventures, directly and through Keith Walz," in order to take advantage

of the priority of interests of creditors over shareholders in the liquidation of Argus's assets.² (*Id.* ¶ 24.J.)

Plaintiffs seek to hold the ABN AMRO Defendants liable on a respondeat superior theory for the actions Walz allegedly took as a member of Argus's board. (*Id.* ¶ 12.) Plaintiffs do so on behalf of a putative class of Argus shareholders, excluding the ABN AMRO Defendants, Mercurius, and board members McNabb and William O'Neill and their families.³ (*Id.* ¶ 25.)

## II.     JURISDICTIONAL FACTS.

Attached to this Memorandum as Exhibit A is the Affidavit of Carly Lemans, Vice President of Group Legal at ABN AMRO Bank. As to the ABN AMRO Defendants' contacts with Illinois, Lemans states as follows:

- "ABN AMRO Bank . . . and ABN AMRO Ventures are distinct legal entities. Each is separately incorporated under the laws of The Netherlands and maintains its primary place of business in The Netherlands. . . . ABN AMRO Ventures is a subsidiary of ABN AMRO Bank." (Lemans Aff. ¶ 3)

- "***ABN AMRO Ventures does not currently do any business in the State of Illinois***. It also does not have an agent for service of process in Illinois, does not own property in Illinois, does not maintain offices in Illinois, has no employees in Illinois, and does not keep books and records in Illinois. It also does not have any subsidiaries operating in Illinois. ABN AMRO Ventures formerly owned a minority stake in . . . [Argus]. ABN AMRO Ventures was just one among many stakeholders in Argus. Argus is now in liquidation in the U.S. Bankruptcy Court for the Central District of Illinois. Argus is the only Illinois corporation in which ABN AMRO Ventures has invested." (*Id.* ¶ 5 (emphasis added).)

---

² *In re Argus Systems Group Inc.*, No. 03-91852 (Bankr. C.D. Ill. filed May 23, 2003) (docket available online at court website). According to the bankruptcy court docket, Argus remains in Chapter 7 proceedings, but those proceedings are winding down. The Trustee's Final Report and Account was filed on November 16, 2004, and the objection period expired on December 6, 2004. No order of dismissal has yet been entered.

³ Messrs. Walz, McNabb, and O'Neill are defendants in a tortious interference action captioned *Sandone v. Walz, et al.*, No. 02-L-0272 (filed Nov. 27, 2002), currently pending in the Circuit Court of the Sixth Judicial Circuit in Champaign County, Illinois. Sandone filed his Fifth Amended Complaint in that action on June 30, 2005.

- "Keith Walz, who sat on the board of Argus from January 2002 until Argus's bankruptcy, is managing director of ABN AMRO Private Equity. ABN AMRO Private Equity is a business unit of ABN AMRO Bank. It is not a business unit of ABN AMRO Ventures." (*Id.* ¶ 6.)

In early February 2005, summonses were delivered to Defendants in Amsterdam, The Netherlands, along with copies of the *first* Amended Complaint. The materials served did not include a summary of the litigation as required by Article 5 of the Hague Convention. (*Id.* ¶ 7.) Plaintiffs have made no attempt to effect service of the Second or Third Amended Complaint through the procedures required by the Hague Convention.

### III.  RELATED PROCEDURAL MATTERS.

On April 1, 2005, former named plaintiff Sandone filed an "Emergency Motion for Order of Assignment" in *In re Argus Systems Group, Inc.*, No. 03-91852, a Chapter 7 proceeding pending in the U.S. Bankruptcy Court for the Central District of Illinois. Sandone's Emergency Motion sought an order assigning to him "any and all authority the bankruptcy trustee may have to pursue a suit against ABN AMRO [sic] for diminution of shareholder value on behalf of the corporation and its shareholders." The bankruptcy court denied Sandone's motion, and Chief Judge McCuskey of the United States District Court for the Central District of Illinois affirmed the bankruptcy court's ruling. (*See* 7/8/05 Order and Judgment, attached hereto as Ex. B.)

### ARGUMENT

As a fundamental, threshold matter, plaintiffs lacks standing to bring the Third Amended Complaint, as the ABN AMRO Defendants have explained in their prior motions to dismiss the Amended Complaint and the Second Amended Complaint. Plaintiffs' claims are derivative in nature and are now vested exclusively in the bankruptcy trustee. Dismissal with prejudice is appropriate because, as confirmed by Chief Judge McCuskey's July 8 order, plaintiffs will *never* have standing to assert derivative claims against the ABN AMRO defendants.

The Third Amended Complaint suffers from several other infirmities. First, plaintiffs have, without explanation, failed to comply with federal and state procedural prerequisites to bringing a derivative claim. In addition, plaintiffs have failed to state a claim upon which relief can be granted. Finally, jurisdiction is improper, as plaintiffs have not served process in accordance with the Hague Convention, and have failed to establish personal jurisdiction over Defendant ABN AMRO Ventures.

## IV. THE THIRD AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT IS DERIVATIVE AND BELONGS TO ARGUS'S BANKRUPTCY ESTATE.

Under Illinois law, plaintiffs' claims on behalf of Argus's shareholders are derivative. Those claims therefore belonged to Argus, the real party in interest, and have now passed to Argus's bankruptcy estate. Thus, plaintiffs lack standing to assert their claims, which are vested exclusively in the bankruptcy trustee. In addition, because plaintiffs have failed to join the estate of Argus, an indispensable party, their claims must be dismissed pursuant to Rule 17(a).

### A. Plaintiffs Lack Standing to Sue the ABN AMRO Defendants Directly.

Whether a suit is derivative or may be brought by a shareholder in his own right is governed by the law of the state of incorporation. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589-90 (7th Cir. 2003), *cert. denied*, 541 U.S. 975 (2004); *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996). Argus is an Illinois corporation, so Illinois law applies.

Illinois law is clear that a shareholder claim based on diminution of corporate share value is derivative and may only be brought on behalf of the corporation. *See Small v. Sussman*, 713 N.E.2d 1216, 1220 (Ill. App. Ct. 1st Dist. 1999) (holding that shareholder's suit against director and dominant shareholder for waste of corporate assets and diminution in share value was derivative); *Cashman v. Coopers & Lybrand*, 623 N.E.2d 907, 911 (Ill. App. Ct. 2d Dist. 1993) ("The corporation ceases to be a going concern, which necessarily results in the shareholders'

stock becoming devalued. The corporation is the logical entity to pursue a claim . . . and to share its recovery with its stockholders if it prevails."). This is precisely plaintiffs' claim: they allege that, by the actions of Walz as an Argus board member, "class members were damaged in that they received no dividends and the value of the stock ultimately declined to worthless, and the corporation was forced into bankruptcy, and it was unable to have an initial public offering which would have substantially compensated the class members all of whom were start-up investors." [4] (3rd Am. Cmplt. ¶ 27.) By bringing a derivative claim, plaintiffs lack standing to sue in their own right.

It is true that, in limited circumstances, a shareholder who suffers an injury *distinct* from other shareholders has standing to bring a non-derivative action. *See Frank*, 83 F.3d at 160; *Small*, 713 N.E.2d at 1220-21. [5] But plaintiffs have alleged nothing of the sort: their damages allegation is limited solely to diminution of Argus's corporate value. (3rd Am. Cmplt. ¶ 27.) Moreover, plaintiffs seek class certification and allege $60 million in class damages, but do not allege any *individual* damages (meaning, of course, that if the Court denies class certification, there will be no amount in controversy and thus no subject matter jurisdiction). (*Id.*)

---

[4] Plaintiffs' alleged class includes all Argus shareholders minus those they view as wrongdoers: the ABN AMRO Defendants, Mercurius, and the individual defendants in Sandone's state court action (Messrs. Walz, McNabb, and O'Neill). (3rd Am. Cmplt. ¶ 25.)

[5] Illinois law, like Delaware law, permits a minority shareholder to bring a direct, non-derivative action against a majority, controlling shareholder. *See Jaffe Commercial Fin. Co. v. Harris*, 456 N.E.2d 224, 230 (Ill. App. Ct. 1st Dist. 1983) ("The law is uncontroverted that the individuals who *control* corporations owe fiduciary duties to their corporation and its shareholders.") But that does not avail plaintiffs, who have failed to allege that the ABN AMRO Defendants were majority shareholders, that they were minority shareholders, or that the ABN AMRO Defendants owed any direct fiduciary duty to them. (In fact, plaintiffs allege that ABN AMRO Ventures "owned a minority stake in Argus" (3rdd Am. Cmplt. ¶ 16.) Plaintiffs also do not allege that Argus was a closely held corporation under Illinois law. *See Small*, 713 N.E.2d at 1220-21 (rejecting plaintiffs' argument that minority shareholders have the right to bring a direct action against co-shareholders when the corporation is closely held). Plaintiffs thus cannot bring their claims on a non-derivative basis.

In sum, plaintiffs have failed to allege that their individual injuries were distinct from the injury suffered by other shareholders. Accordingly, they lack standing to bring their claims on their own behalf. For the same reason, plaintiffs' claims should be dismissed for violating Rule 17(a), which mandates joinder of the real party in interest, Argus. *See Frank*, 83 F.3d at 159.

B. **Plaintiffs Also Lacks Standing Under the Bankruptcy Code Because Their Claims Belong Exclusively to the Bankruptcy Trustee.**

Plaintiffs lack standing for an additional, independent reason: Argus's bankruptcy divested plaintiffs of standing to sue derivatively. With the filing of Argus's Chapter 7 bankruptcy petition, plaintiffs' claims became the property of Argus's bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (stating that the property of the estate includes, with limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case"); *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541").[6] From then forward, the authority to bring these breach-of-fiduciary-duty claims vested exclusively in the bankruptcy trustee. As the Seventh Circuit observed in *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987) (emphasis added):

> It has also long been held that rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate *which the trustee alone has the right to pursue after the filing of a bankruptcy petition*.

*Accord Wright v. Abbott Capital Corp.*, 398 N.E.2d 1147, 1149-50 (Ill. App. Ct. 1st Dist. 1979) (holding that plaintiff lacked standing to assert derivative suit on behalf of corporation once the corporation went into bankruptcy). Only the bankruptcy trustee, and not plaintiffs, can bring the

---

[6] *See also Kennedy*, 348 F.3d at 589 (noting that a derivative suit "is an asset of the corporation – which means that if, as in this case, the corporation is in bankruptcy, the suit is an asset of the bankrupt estate").

claims in the Third Amended Complaint. Former named plaintiff Sandone tried to obtain that authority. He was unsuccessful. The bankruptcy court denied Sandone's motion to divest the trustee of his exclusive authority, and Chief Judge McCuskey affirmed the bankruptcy court's ruling. (*See* Ex. B.) Accordingly, this Court should dismiss this action. *See In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) ("When a third party tries to assert an action still vested in the trustee, the court should dismiss the action.").

### C. Plaintiffs Have Failed to Satisfy the Procedural Requirements for Bringing a Derivative Claim.

Aside from their standing problems, plaintiffs have failed to satisfy several federal and state procedural requirements for bringing a derivative action.

#### 1. Plaintiffs have failed to satisfy 805 ILCS 5/7.80(b).

Under Illinois law, a shareholder may only institute derivative litigation after making a demand to the corporation's board to sue in its own name, or by establishing an exception to the demand requirement. *See* 805 ILCS 5/7.80(b); *Frank*, 83 F.3d at 160 (collecting cases). Plaintiffs have made no demand nor established any exception to that requirement. This rule is not a mere technicality; it is a substantive condition precedent to plaintiffs' claims.

#### 2. Plaintiffs have failed to satisfy Federal Rule 23.1.

Federal Rule of Civil Procedure 23.1 applies to actions, such as this one, "brought by one or more shareholders or members to enforce a right of a corporation." The Rule requires that the complaint be *verified* and that it "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Plaintiffs have not verified the Third Amended Complaint, nor made the necessary allegations with particularity. They thus fail to state a claim.

V.  **THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The Third Amended Complaint rests on a strained theory of respondeat superior liability that has been soundly rejected by courts that have considered it. Accordingly, it must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

A.  **A Corporation Is Not Vicariously Liable for Its Employee's Breach of Fiduciary Duty In His Role as Director of Another Corporation.**

Plaintiffs assert that the ABN AMRO Defendants should be held vicariously liable for Walz's conduct as a member of Argus's board. That theory of liability violates settled law. Courts have consistently held that vicarious liability based on the acts of a director would improperly and dangerously expand the fiduciary duties of investors. This Court should follow the lead of these other courts and dismiss the Third Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).

1.  **Courts Applying the Law of Other States Have Consistently Rejected Plaintiffs' Respondeat Superior Theory.**

The most recent of these cases, *CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146 (D. Mass 2003), is on all fours with this case. There, the founders of Internet startup CCBN invited Thomson Financial to become an investor. *See id.* at 150. As a condition of that investment, Thomson (like ABN AMRO Ventures and Mercurius in the present case) was allowed to designate two members of CCBN's board. *See id.* CCBN alleged that Thomson's board designees misappropriated CCBN's confidential information and corporate opportunities for the benefit of Thomson. The court granted Thomson's motion to dismiss, concluding that, under Delaware law, Thomson could not be vicariously liable for the actions of its designees on CCBN's board. *See id.* at 151-52 ("While this is an interesting theory, courts applying Delaware law have rejected it. . . . I decline to create a novel theory of liability under Delaware law.").

The *CCBN* court relied on the well-reasoned *U.S. Airways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482 (S.D.N.Y. 1997).  In that case, USAir asserted a respondeat superior claim against British Airways based on the alleged wrongdoing of BA's employees who served on USAir's board. USAir did not allege that BA was the majority or controlling shareholder of USAir.  *See id.* at 494.  Applying Delaware law, the court dismissed the claim, stating that "the imposition of respondeat superior liability on a corporation for breach of fiduciary duty by its directors on the board of another corporation would completely undermine Delaware corporate law, which limits such fiduciary duty to majority and controlling shareholders."  *Id.*  Accord *Emerson Radio Corp. v. Int'l Jensen Inc.*, 1996 WL 483086, *20 n.18 (Del. Ch. Aug. 20, 1996) ("The notion that a stockholder could become a fiduciary by attribution (analogous to the result under the tort doctrine of respondeat superior) would work an unprecedented, revolutionary change in [Delaware] law, and would give investors in a corporation reason for second thoughts about seeking representation on the corporation's board of directors.").  Another federal court reached the same conclusion under California law.  *See Medical Self Care, Inc. v. Nat'l Broad. Co., Inc.*, 2003 WL 1622181, *7 (S.D.N.Y. Mar. 28, 2003).[7]

---

[7]   *In re Papercraft Corp.*, 165 B.R. 980 (Bankr. W.D. Pa.), *vacated on other grounds*, 187 B.R. 486 (Bankr. W.D. Pa. 1995), *rev'd on other rounds*, 211 B.R. 813 (W.D. Pa. 1997), *aff'd sub nom. Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998), is readily distinguishable.  In *Papercraft*, the defendant corporation (CVC) was a shareholder that nominated one of its own officers to serve on Papercraft's board. At the express direction of CVC, that officer surreptitiously purchased discounted claims from Papercraft based on inside information, and failed to make disclosure of the purchase as required of "insiders" under the Bankruptcy Code. *See* 165 B.R. at 985-86.  The court emphasized the evidence that CVC expressly authorized its nominee, who "adhered to CVC's directives," to purchase the notes based on inside information in furtherance of CVC's business objectives. *Id.* at 990-91. Here, in contrast, there are no allegations that the ABN AMRO Defendants authorized or directed Walz's actions in his role as an Argus director.  Moreover, *Papercraft* was decided under Pennsylvania law, and has never been followed by any other court, even though it was handed down before the better-reasoned *CCBN* and *U.S. Airways* cases.

### 2. Given the Opportunity, Illinois Courts Would No Doubt Reject Plaintiffs' Respondeat Superior Theory.

No Illinois court has yet addressed this issue, which only underscores the flimsiness of plaintiffs' theory. But it is clear that same result will prevail under Illinois law once the Illinois courts reach the issue. Illinois corporate law follows Delaware law in imposing a fiduciary duty to shareholders only on the majority, controlling shareholder, and not on minority shareholders.[8] There is no allegation here that the ABN AMRO Defendants were the majority, controlling shareholders of Argus. In fact, plaintiffs allege that ABN AMRO Ventures owned a *minority* stake in Argus. (3rd Am. Cmplt. ¶ 16.) Allowing imposition of liability on the ABN AMRO Defendants on a respondeat superior basis would therefore vastly expand the fiduciary duties of shareholders, as the *U.S. Airways* court feared. *See* 989 F. Supp. at 494. Under these circumstances, this Court should not create a novel theory of liability under Illinois law. *See, e.g.*, *CCBN.Com*, 270 F. Supp. 2d at 152 ("in diversity cases the federal courts do not undertake to restructure state law") (quotation omitted). Instead, the Court should dismiss the Third Amended Complaint for failure to state a claim.

## VI. THE THIRD AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THE COURT LACKS JURISDICTION.

This Court lacks personal jurisdiction over the ABN AMRO Defendants because they have never been properly served in accordance with the Hague Convention. In addition,

---

[8] *See, e.g.*, *Jaffe*, 456 N.E.2d at 230-31 ("The law is uncontroverted that the individuals who *control* corporations owe fiduciary duties to their corporation and its shareholders.") (emphasis added); *Graham v. Mimms*, 444 N.E.2d 549, 555 (Ill. App. Ct. 1st Dist. 1982) ("as *majority shareholder and dominant figure in the control of the corporation*, the fiduciary duties [defendant] owed to [the corporation] and [minority shareholders] did not cease when he resigned as officer and director and installed his sister and brother-in-law in these positions") (emphasis added); *In re Joy Recovery Tech. Corp.*, 257 B.R. 253, 273 (Bankr. N.D. Ill. 2001) ("[I]f a shareholder exercises *actual control and direction* over corporate management, a fiduciary duty will be imposed.") (quotation omitted and emphasis added).

plaintiffs have not established that ABN AMRO Ventures is subject to "doing business" jurisdiction under the Illinois Long-Arm Statute. Accordingly, this Court should dismiss the Third Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(5).[9]

### 1.    **The ABN AMRO Defendants Have Never Been Properly Served.**

As plaintiffs acknowledge, the ABN AMRO Defendants are "corporation[s] organized under the laws of the Netherlands with their principal offices in the Netherlands, and accordingly [are] citizens of a foreign state." (3rd Am. Cmplt. ¶¶ 1.B, 1.C.) Service of process must therefore comply with the Hague Convention. *See* Fed. R. Civ. P. 4(f)(1), 4(h)(2).

Plaintiffs have failed to comply with the plain language of the Hague Convention. Article 5 of the Convention requires litigants to attach a summary of the document to be served. The summonses delivered to the ABN AMRO Defendants in Amsterdam did not include that summary, in violation of Article 5. (Ex. 1 ¶ 9.) Accordingly, service of process is insufficient and the Third Amended Complaint should be dismissed pursuant to Rule 12(b)(5).

### 2.    **Plaintiffs Have Not Established and Cannot Establish that ABN AMRO Ventures Is Subject to "Doing Business" Jurisdiction.**

Plaintiffs appear to assert that this Court has general personal jurisdiction over ABN AMRO Ventures on the basis that, "[t]o Plaintiffs' information and belief, at all relevant times ABN AMRO Venture's [sic] North America operations were headquartered in Chicago, Illinois"

---

[9] The Third Amended Complaint's allegations are also insufficient to establish subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Plaintiffs plead that "[t]he amount in controversy exclusive of interest and costs is in excess of $75,000" (3rd Am. Cmplt. ¶ 1.D) and prays for "judgment on behalf of the class and against [the ABN AMRO Defendants] in the amount of $60 million" (*Id.* ¶ 27). Plaintiffs fail, however, to allege that they *individually* suffered in excess of $75,000 in damages. It is well established that at least one named plaintiff in a federal class action must demonstrate that he individually suffered in excess of $75,000 in damages to satisfy the jurisdictional minimum. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997) ("At least one named plaintiff must satisfy the jurisdictional minimum."). Plaintiffs have not done that here.

(3rd Am. Cmplt. ¶ 9). That allegation is incorrect. As explained the affidavit of Carly Lemans, Vice President of Group Legal at ABN AMRO Bank, ABN AMRO Ventures does not own property in Illinois, does not own offices in Illinois, does not have employees in Illinois, and does not keeps books or records in Illinois. (Ex. 1 ¶ 5.) This Court therefore may not exercise general personal jurisdiction on this basis.

In addition, plaintiffs appears to assert that this Court has general personal jurisdiction over Defendants under the "doing business" prong of the Illinois Long Arm Statute, 735 ILCS § 5/2-209(b)(4). (*See* 3rd Am. Cmplt., Count 2, ¶ 13.) But under Illinois case law, a corporation does not "do business" in Illinois unless it transacts business in Illinois "not occasionally or casually, but with a fair measure of permanence and continuity." *Cook Assocs., Inc. v. Lexington United Corp.*, 429 N.E.2d 847, 853 (Ill. 1981) (quotation omitted). "[T]here must be a course of business or regularity of activities as opposed to isolated or sporadic acts." *Riemer v. KSL Rec. Corp.*, 807 N.E.2d 1004, 1012 (Ill. App. Ct. 1st Dist. 2004) (quotation omitted).

Plaintiffs' allegations are insufficient to show that the activities of ABN AMRO Ventures satisfied these jurisdictional minimums. As explained the affidavit of Carly Lemans, ABN AMRO Ventures' sole business conduct in Illinois was its one-time purchase of a minority stake in Argus in December 2001 and its January 2002 designation of Walz to sit on Argus's board. (Ex. 1 ¶ 5.) ABN AMRO Ventures has not invested in any other Illinois corporation.[10] (*Id.*)

ABN AMRO Ventures' one-off investment in Argus cannot be considered a "course of business or regularity of activities as opposed to isolated or sporadic acts." *Riemer*, 348 Ill. App.

---

[10] Even substantial earnings from Illinois have not been considered indicative of whether a corporation has established a permanent and continuing relationship with Illinois. *See, e.g.*, *Hulsey v. Scheidt*, 258 Ill. App. 3d 567, 572-73 (1st Dist. 1994); *Rokeby-Johnson v. Derek Bryant Ins. Brokers, Ltd.*, 230 Ill. App. 3d 308, 319 (1st Dist. 1992); *Kadala v. Cunard Lines, Ltd.*, 226 Ill. App. 3d 302, 315 (1st Dist. 1991).

3d at 35.  Moreover, it falls outside the time period this Court can consider for jurisdictional purposes.  That period "begins approximately when the claim arose and it extends to when suit was filed and service of process was attempted."  *Id.* at 35-36.  However, "the critical point of inquiry is the time the defendant was made a party to the suit and was served."  *Id.* at 36.  According to the Second Amended Complaint.  ABN AMRO Ventures invested in Argus in December 2001 and designated Mr. Walz as a board member in January 2002.  (*See, e.g.*, 2d Am. Cmplt. ¶¶ 10-11 & Ex. 2.)  Plaintiffs define the purported class as persons injured on May 23, 2003, when Argus filed for bankruptcy.  (*See id.* ¶ 25.)  The original plaintiff attempted service in early February 2004.  Plaintiffs have not established that ABN AMRO Ventures did business in Illinois with "a fair measure of permanence and continuity" between May 23, 2003, and early February 2004.

In sum, the Third Amended Complaint does not allege sufficient contacts to establish general jurisdiction over ABN AMRO Ventures, and the ABN AMRO Defendants have presented affirmative evidence and case authority that there *cannot* be personal jurisdiction over ABN AMRO Ventures in this matter.  In addition, if this Court determines that it may exercise personal jurisdiction over ABN AMRO Bank, that jurisdiction does not extend to ABN AMRO Bank's subsidiaries or affiliates.  *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 ("[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary").

## **CONCLUSION**

For the foregoing reasons, the ABN AMRO Defendants respectfully move this Court to dismiss the Third Amended Complaint with prejudice.

Date:  December 21, 2005                    Respectfully submitted,

s/ Benjamin W. Hulse
Benjamin W. Hulse
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Phone: (312) 861-2000
Fax: (312) 861-2200

Edward M. Wagner
HEYL ROYSTER VOELKER & ALLEN
102 E. Main Street
Suite 300
P.O. Box 129
Urbana, Illinois  61803-0129
Phone: (217) 334-0060
Fax: (217 334-9295

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 21, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

  Gary D. Forrester, Esq.
  Joseph W. Phebus, Esq.
  Daniel J. Pope, Esq.
  PHEBUS & KOESTER
  136 W. Main St.
  Urbana, IL  61801

           s/ Benjamin W. Hulse
           Benjamin W. Hulse
           KIRKLAND & ELLIS LLP
           200 East Randolph Drive
           Chicago, Illinois  60601
           Phone: (312) 861-2000
           Fax: (312) 861-2200
           bhulse@kirkland.com