E-FILED
Wednesday, 21 December, 2005   03:11:46 PM
Clerk, U.S. District Court, ILCD



Not Reported in F.Supp.2d
2003 WL 1622181 (S.D.N.Y.)
**(Cite as: 2003 WL 1622181 (S.D.N.Y.))**

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
MEDICAL SELF CARE, INC., by and through
Development Specialists, Inc., as
Assignee for the Benefit of its Creditors, Plaintiff,
v.
NATIONAL BROADCASTING COMPANY, INC.,
Defendant.
No. 01CIV4191 (LTS)(RLE).

March 28, 2003.

*MEMORANDUM OPINION*

SWAIN, J.

**\*1** Defendant seeks summary judgment dismissing this action, and Plaintiff cross-moves for summary judgment on its claims of breach of contract, breach of fiduciary duty, and unjust enrichment. The Court has considered thoroughly all submissions and argument related to these motions. For the following reasons, Defendant's and Plaintiff's respective motions are granted in part and denied in part.

*Background*

The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. section 1332.

The facts recited below are undisputed to the extent not characterized otherwise.

This action, brought by Development Specialists, Inc. ("Plaintiff" or "DSI"), as assignee for the benefit of creditors of Medical SelfCare, Inc. ("SelfCare"), arises from a dispute relating to an equity investment by Defendant National Broadcasting Co., Inc. ("NBC") in SelfCare, which was at the time a catalogue and internet retailer of personal medical care items. Two written agreements are relevant to the instant dispute: a letter agreement executed by the parties on February 2, 2000 (the "February Agreement"); and a letter agreement executed by the parties on September 21, 2000 (the "September Agreement").

The February Agreement provided for the sale by SelfCare of stock and stock-purchase warrants to NBC in exchange for cash and the right to use certain television advertising spots with a "Guaranteed Spot Value" of $9,000,000. *See* February Agreement, Ex. D to Def.'s Not. of Mot., introductory language; Decl. of Larry Bodner, annexed to Plaintiff's Notice of Cross-Motion ("Bodner Decl ."), ¶ 7; Decl. of William C. Herman, annexed to Pl.'s Not. of Cross-Mot. ("Herman Decl."), ¶ 2. The February Agreement included provisions relating to the use of the advertising time on a schedule to be agreed between NBC and SelfCare, the submission of advertisements for broadcast and the effect in certain circumstances of failure to submit or to broadcast advertising, and provisions for waiver, modification, and assignment of the agreement. Paragraph 1(c) of the February Agreement provided in relevant part that:

> On or before two weeks prior to the Advertiser's first scheduled Spot, Advertiser shall deliver to NBC commercial material for the first of Advertiser's Spots. Advertiser acknowledges that if it fails to deliver such commercial material by such date or such commercial material is rejected ... then NBC TV shall be deemed to have telecast Advertiser's Spots for purposes hereof even if Advertiser's Spot is not actually shown when the Program is telecast.

(February Agreement ¶ 1(c).)

"Deemed telecast" language also appears in paragraph 5 of the February Agreement, which provided for the payment of certain amounts to SelfCare in the event of termination of the agreement under certain circumstances. In the event either party terminated the agreement after NBC had received its shares of SelfCare stock, NBC was to pay SelfCare the difference, in cash, between the Guaranteed Spot Value and the value of spots already telecast or "deemed telecast."

**\*2** Paragraph 9 of the February Agreement, captioned "Liability for Failure to Broadcast Spots," provided, in relevant part, that "[i]n the event that NBC does not telecast Spots equal to the Guaranteed Spot Value during calendar year 2000 ... then as liquidated damages ... NBC shall pay

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT "D"

Westlaw.

Not Reported in F.Supp.2d
2003 WL 1622181 (S.D.N.Y.)
(Cite as: 2003 WL 1622181 (S.D.N.Y.))

Page 2

[SelfCare] in cash an amount equal to the difference, if positive, between the sum of the Guaranteed Spot Value ... less (sic) value of the Spots actually telecast." *Id.* ¶ 9. "Deemed telecast" spots are not referred to in paragraph 9.

Paragraph 7 of the February Agreement provided that "no waiver or modification of any provision of this Agreement shall be effective unless in writing and signed by both parties," and further provided that

> The terms of this Letter Agreement shall apply to parties hereto and any of their successors or assigns; *provided, however,* that this Letter Agreement may not be transferred or assigned by [SelfCare], including, without limitation, the right to receive Spots to be telecast by NBC TV, without the prior written consent of NBC.

*Id.* ¶ 7.

In connection and contemporaneously with the February Agreement, the parties executed a stock purchase agreement that, *inter alia,* gave NBC the right to appoint one member of SelfCare's Board of Directors. An NBC vice president, Claudia Taylor, was appointed to SelfCare's Board in February 2000. NBC's shares provided it with a minority, non-controlling equity interest in SelfCare.

By June 2000, SelfCare was experiencing difficulties in raising operating funds and, in that month, SelfCare began discussions with NBC about the possibility of SelfCare receiving cash for its advertising inventory. Plaintiff contends that Taylor represented to SelfCare's Board that NBC would be willing to buy back certain of the time. At no time thereafter, however, did SelfCare and NBC enter into an agreement to convert any portion of SelfCare's time to a cash payment. By letter dated August 15, 2000, Claudia Taylor resigned from the SelfCare board.

On September 21, 2000, NBC and SelfCare executed the September Agreement, which included an agreed schedule, attached to the September Agreement as Schedule A, for broadcast of SelfCare ads during the weeks from October 30, 2000 through December 25, 2000.

On October 10, 2000, after efforts to negotiate the sale of SelfCare to other companies had failed, SelfCare's Board resolved to seek to sell its advertising inventory to "anyone ... that was interested," and authorized the company's president to "take such actions as he felt necessary or desirable to sell the NBC advertising credit." (Minutes of October 10, 2000 Meeting of Board of Directors of SelfCare, annexed to Plaintiff's Notice of Cross-Motion as Exhibit B.) Bodner and Robert Niles of NBC had communications regarding potential assignees of the advertising time. On November 1, 2000, Bodner sent Niles an e-mail message seeking, among other things, confirmation that SelfCare could "sell the $9M of advertising time to any of the following companies--ConAgra, Gap, eToys, Ebay or WebTV." (Ex. C to Pl.'s Not. of Cross-Mot.) Niles replied by email a few minutes later as follows:

*3 Larry ... the list I had included: WebTV, eBay, Buy.com, Honda, PlayStation, and Gap. We only dropped eTrade from the list. This is the first I'm hearing about ConAgra or Etoys. I will check them out if you'd like. Just want to confirm that we are talking only about 4th Quarter of 2000.

Note that the media buying services is not ... repeat not ... an option. Please restrict your activities to the approved list.

(Ex. D to Pl.'s Not. of Cross-Mot.) After a further exchange of e-mails focusing on ConAgra's interest in the advertising time, Niles e-mailed Bodner that evening: "Con-agra is okay." (Ex. F to Not. of Cross-Mot.) There followed over the next few days voice and e-mail communications among SelfCare, NBC and ConAgra regarding various aspects of the potential terms of a sale of the advertising time to ConAgra, (Bodner Decl. ¶ 15; Exs. E--I to Not. of Cross-Mot.; Decl. of Wade Stackhouse, annexed to Pl.'s Not. of Cross-Mot. ("Stackhouse Decl."), ¶¶ 3--6), and a request by SelfCare for "a revised broadcasting schedule & letter indicating that NBC approves of assigning this time." (Ex. G to Pl.'s Not. of Cross-Mot.) On November 8, 2000, however, apparently after consultation with NBC's television sales department, Niles informed SelfCare that NBC had changed its mind and would not permit the sale of advertising time to ConAgra. (Bodner Decl. ¶ 15h.) No assignment agreement with ConAgra was thereafter executed or consummated, and SelfCare did not sell or utilize any of the advertising time provided for under the February and September Agreements. SelfCare never

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2003 WL 1622181 (S.D.N.Y.)
(Cite as: 2003 WL 1622181 (S.D.N.Y.))

Page 3

submitted any advertising material to NBC for telecast within the periods provided for under the September Agreement or, indeed, at any time.

SelfCare effected an assignment for the benefit of creditors pursuant to California state procedures on or about December 1, 2000. By letter dated December 28, 2000, Plaintiff demanded that NBC pay it the cash value of the unused advertising time for the month of December as scheduled in the September Agreement, a value estimated by DSI at the time to be $4.5 million "or whatever other amount the accounting shows to be due to satisfy [NBC's] obligation," asserting that SelfCare was entitled to such payment pursuant to paragraph 9 of the February Agreement. [FN1] (Ex. AA to Def.'s Not. of Mot.) NBC refused to make the payment.

> FN1. DSI arrived at the spot value demanded in the December 28, 2000 letter by calculating "the difference between the Guaranteed Spot Value of $9,000,000 and the value of the Spots telecast (or deemed telecast) before December 1, 2000, the date of the assignment." (December 28, 2000 Letter, Ex. AA to Def.'s Not. of Mot.)

*Discussion*

As noted above, the Plaintiff in this action is Development Specialists, Inc. ("DSI"), as SelfCare's assignee for the benefit of creditors. The Court will distinguish between SelfCare and Plaintiff as needed for purposes of clarity.

*Contract Claim*

In a contract dispute, "a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning." Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan, 7 F.3d 1091, 1094 (2d. Cir.1993). If a contract is "susceptible to different reasonable interpretations and where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." Id. Determining whether or not a contract is ambiguous is a question of law for the district court. Id. The Second Circuit has clarified that "ambiguity without the existence of extrinsic evidence of intent presents not an issue of fact, but an issue of law for the court to rule on." Mellon Bank, N.A. v. United Bank Corp. of New York, 31 F.3d 113, 116 (2d Cir.1994). Contractual language whose meaning is otherwise plain does not become ambiguous merely because parties urge different interpretations in litigation. Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir.1989).

*4 Plaintiff's contract claim must be decided under New York law, as the parties stipulated in the February Agreement that the Agreement would be governed by and construed under New York law. Both parties argue that the February and September Agreements are clear and unambiguous, and that the interpretation of the agreements is thus for the Court.

Plaintiff seeks damages for breach of contract on two theories: first, that NBC breached the February Agreement by not paying SelfCare $9 million pursuant to paragraph 9 of the February Agreement in response to DSI's demand, and, second, that it is entitled to damages on account of NBC's breach of an agreement to consent to the assignment of SelfCare's unused advertising time to ConAgra. The Court will address each theory in turn.

*Plaintiff's Claim Under Paragraph 9 of the February Agreement*

As described above, paragraph 1(c) of the February Agreement allowed NBC to "dee[m] telecast" SelfCare advertising spots if SelfCare did not submit spots according to schedule. Paragraph 5 of the February Agreement provided that, in the event either party terminated the agreement after NBC had received its shares of SelfCare stock, NBC was to pay SelfCare the difference, in cash, between the Guaranteed Spot Value and the value of spots already telecast or "deemed telecast." By contrast, Paragraph 9 provided that "[i]n the event that NBC does not telecast Spots equal to the Guaranteed Spot Value during calendar year 2000 ... then as liquidated damages ... NBC shall pay [SelfCare] in cash an amount equal to the difference, if positive, between the sum of the Guaranteed Spot Value ... less (sic) value of the Spots actually telecast."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2003 WL 1622181 (S.D.N.Y.)
**(Cite as: 2003 WL 1622181 (S.D.N.Y.))**

Page 4

(February Agreement ¶ 9.)

Plaintiff argues that, because no SelfCare spot was ever broadcast, NBC is obligated to pay Plaintiff $9 million, the Guaranteed Spot Value, pursuant to paragraph 9. Defendant responds that the liquidated damages provision of paragraph 9 would only have applied in the event that SelfCare submitted advertising materials to NBC and NBC failed to broadcast them.

"In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Associates,* 63 N.Y.2d 396, 482 N.Y.S.2d 465, 472 N.E.2d 315 (1984). "A contract must be construed, if possible, to avoid an interpretation that will result in an absurdity, an injustice or have an inequitable or unusual result." *Natwest USA Credit Corp. v. Alco Standard Corp.,* 858 F.Supp. 401, 413 (S.D.N.Y.1994).

Paragraph 9 provided for the payment of "liquidated damages" in the event that NBC did not telecast spots equal to the Guaranteed Spot Value. The measure of damages in paragraph 9, which is captioned "Liability for Failure to Broadcast Spots," differs from the termination payment formula in paragraph 5 in that the liquidation amount under paragraph 9 is the difference between the Guaranteed Spot Value and "spots actually telecast;" whereas the amount in paragraph 5 is the difference between Guaranteed Spot Value and the value of spots "already telecast (or deemed telecast) ." NBC asserts that SelfCare was not entitled to any payment under paragraph 9 following the expiration of the broadcast windows provided for in the September Agreement because SelfCare never submitted any advertising material for broadcast. Paragraph 9, according to NBC, applies only upon NBC's failure to broadcast material proffered by SelfCare. Since SelfCare failed to provide any such material, NBC cannot be deemed to have "failed" to make the requisite broadcasts and paragraph 9 is thus inapplicable, according to NBC.

*5 Based on the difference in formulae and denying that the section's caption has any legal significance whatever Plaintiff argues, however, that, pursuant to paragraph 9, SelfCare was entitled to $9 million even if it never submitted any advertising material to NBC. Such an interpretation "results in an absurdity." The February Agreement has no provision reciting that captions are provided for convenience only and have no legal significance. Moreover, it is not reasonable to interpret paragraph 9 as requiring NBC to pay the Guaranteed Spot Value in cash even if SelfCare never submitted an ad, where the paragraph is a provision for "liquidated damages." The parties' use of the term "liquidated damages," which appears in the body of the provision, forecloses Plaintiff's interpretation.

Liquidated damages is an "amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches." *Black's Law Dictionary* (7th ed.1999). Inherent in the concept of liquidated damages, and indeed of damages in general, is the idea of compensation for wrongdoing. Plaintiff's interpretation of paragraph 9 as providing for monetization of the balance of the Guaranteed Spot Value at the end of year 2000 regardless of whether SelfCare had even attempted to utilize the available time would render the phrase "liquidated damages" out-of-place and meaningless. Furthermore, Plaintiff's related argument, that paragraph 9 embodies an agreement that in essence obligated NBC to pay for stock by providing advertising time actually utilized by SelfCare or, on SelfCare's failure to use the time, in cash following the end of the period, is inconsistent with the stated purpose of the agreement (*i.e.,* "to provide [SelfCare] with the *right to use certain advertising inventory"* [FN2]) and with the "liquidated damages" context in which the paragraph 9 language appears in the body of the agreement. The paragraph when read as a whole, in the context of the entire agreement and of the undisputed facts proffered to this Court in connection with the instant motions, compels the conclusion that NBC is entitled to summary judgment on Plaintiff's breach of contract claim to the extent that claim is premised on NBC's refusal to pay $9 million cash pursuant to paragraph 9 of the February Agreement following the close of the year 2000.

> FN2. February Agreement, introductory paragraph (emphasis added).

*Assignment of Advertising Time to ConAgra*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
2003 WL 1622181 (S.D.N.Y.)  
**(Cite as: 2003 WL 1622181 (S.D.N.Y.))**

Page 5

Plaintiff is, however, entitled to partial summary judgment as to liability, to the extent its breach of contract cause of action is premised on its contention that NBC consented to an assignment of advertising time to ConAgra and prevented the consummation of the deal by revoking that consent. Niles' unambiguous "ConAgra is OK." message, in the context of discussions about an NBC-approved list of prospective buyers of SelfCare's advertising time, clearly constitutes written consent for the purposes of paragraph 7 of the February Agreement. Paragraph 7, although requiring a writing *signed by both parties* to effect modifications or waivers of the agreement, does not impose that structural condition on consents to assignments. It provides, rather, that

*6 The terms of this Letter Agreement shall apply to parties hereto any of their successors or assigns; *provided, however,* that this Letter Agreement may not be transferred or assigned by [SelfCare], including, without limitation, the right to receive Spots to be telecast by NBC TV, *without the prior written consent of NBC.*
(February Agreement ¶ 7 (italics supplied).) [FN3]

> FN3. *See also* February Agreement ¶ 1(b) ("The Spots shall promote [SelfCare] ... only and may not advertise ... any other product, service ... or third party whatsoever without the prior written consent of NBC.").

Defendant has offered no reason as to why an e-mail should not be considered a writing for the purposes of enforcing a "written consent" clause of a contract. Certainly Defendant would not object that written consent had not been given had Niles mailed Bodner a typed message; an email message can become a "typed" message with the simple click of the print button. Moreover, a decision not to consider an e-mail a writing is arguably foreclosed by 15 U.S.C. section 7001, which provides in relevant part:

> Notwithstanding any statute, regulation, or other rule of law ... with respect to any transaction in or affecting interstate or foreign commerce--
> (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and
> (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

15 U.S.C. § 7001(a) (West 2000). *Cf. Roger Edwards, LLC. v. Fiddes & Son, Ltd.,* 2003 WL 342993 (D.Me.2003).

Niles' November 1, 2000 "ConAgra is OK" message to Bodner thus constituted written consent authorizing SelfCare to assign SelfCare's remaining advertising time to ConAgra. Bodner's later message to Niles requesting a letter indicating that NBC "approves of assigning this time" does not affect the legal significance of Niles' earlier valid consent. *See Natwest USA Credit Corp.,* 858 F.Supp. at 414 (when written contract is clear, its meaning must be determined by its contents alone, without resort to extrinsic evidence).

The Court therefore finds that Plaintiff is entitled to summary judgment as to liability on its breach of contract claim, insofar as it relates to damages arising from NBC's revocation of its November 1, 2000 consent to the assignment of advertising time to ConAgra. Material factual issues, including issues as to reliance on the consent, the amount and value of advertising time that would have been subject to the proposed assignment and the terms (if any were in fact concluded) of the proposed assignment, preclude summary determination of SelfCare's damages, if any, arising from NBC's revocation of the consent to assignment.

*Plaintiff's Remaining Claims*

Plaintiff also moves for summary judgment on the common law claims of breach of fiduciary duty and unjust enrichment that were plead in its Complaint. [FN4] In addition, Plaintiff argues that it is entitled to recover the value of the unused advertising time because Defendant, by first giving and then revoking consent to a cash sale of the unused time, deprived SelfCare "of any benefit of the advertising time for which SelfCare" had sold NBC stock, actions that constituted a preferential transfer of value from SelfCare to NBC which Plaintiff DSI asserts that it, as SelfCare's assignee for the general benefit of creditors, can recover under California Civil Procedure Code section 1800. Plaintiff requests leave to amend its Complaint, "to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
2003 WL 1622181 (S.D.N.Y.)  
**(Cite as: 2003 WL 1622181 (S.D.N.Y.))**

Page 6

the extent necessary," in order to "formally plead" this transfer recovery claim.

> FN4. Plaintiff has voluntarily withdrawn its conversion claim. (Pl.'s Mem. at 18 n. 13.).

*7 No purpose would be served by allowing Plaintiff to amend its Complaint to assert this claim, because the facts of this case do not give rise to an action for the recovery of a preferential transfer under California Civil Procedure Code section 1800. Section 1800 provides, in relevant part, that the assignee of any general assignment for the benefit of creditors may recover any transfer of property of the assignor:

(1) To or for the benefit of a creditor;
(2) For or on account of an antecedent debt owed by the assignor before the transfer was made;
(3) Made while the assignor was insolvent;
(4) Made on or within 90 days before the date of the making of the assignment or made between 90 days and one year before the date of making the assignment if the creditor, at the time of the transfer, was an insider and had reasonable cause to believe the debtor was insolvent at the time of the transfer; and
(5) That enables the creditor to receive more than another creditor of the same class.

California Code of Civil Procedure § 1800(b) (Westlaw 2003). The facts of this case cannot be brought within the scope of section 1800. DSI has not shown, nor could it, how Defendant's defeat of a proposed assignment of SelfCare's advertising time to a third party constitutes a "transfer ... for the benefit of a creditor ... on account of an antecedent debt owed by [SelfCare] before the transfer was made." The assignor here, SelfCare, did not owe Defendant anything. NBC thus was not SelfCare's creditor. Plaintiff's request to amend the complaint to assert this claim is accordingly denied as futile.

*Breach of Fiduciary Duty*

Plaintiff argues that Defendant owed SelfCare a fiduciary duty, either by virtue of its shareholder status and representation on SelfCare's Board of Directors, or vicariously on account of the actions and duties of the NBC designee as a director while she served on SelfCare's board.

Neither position is supported by law.

In cases based on diversity jurisdiction, a federal court follows the choice of law rules prevailing in the state in which it sits. Under New York law, a claim for breach of a fiduciary duty owed to a corporation is governed by the law of the state of incorporation. *See BBS Norwalk One, Inc. v. Raccolta, Inc.,* 60 F.Supp.2d 123, 129 (S.D.N.Y.1999). Because SelfCare is a California corporation, California law governs this claim.

Under California law, a minority investor owes no fiduciary duty to the corporation in which it invests. *See Lynch v. Cook,* 148 Cal.App.3d 1072, 1082, 196 Cal.Rptr. 544 (Cal.App.1983). It is undisputed that Defendant is a minority shareholder in SelfCare, and there are no allegations or evidence that NBC controlled SelfCare. Furthermore, Plaintiff cites no support in California law for its argument that NBC had a fiduciary duty to SelfCare by virtue of its designation of a member on SelfCare's board of directors. This Court declines to create a new cause of action under California law. *Cf. US Airways Group v. British Airways PLC,* 989 F.Supp. 482, 494 (S.D.N.Y.1997) (declining to impose respondeat superior liability on minority shareholder defendant with multiple members on the plaintiff corporation's board, where such imposition "would completely undermine Delaware corporate law, which limits such fiduciary duty to majority and controlling shareholders"). Plaintiff's vicarious liability argument also fails because the alleged action of NBC's Board designate of which Plaintiff complains - a representation, upon which SelfCare purportedly relied, that NBC would repurchase advertising time - was clearly taken in the capacity of representative of SelfCare's contract counterparty. Plaintiff proffers no facts from which a reasonable factfinder could conclude that the representation was made in the course of performance of fiduciary duties as a director in governance of SelfCare's corporate affairs or the care of its assets. Consequently, Defendant's motion for summary judgment is granted to the extent it seeks dismissal of Plaintiff's breach of fiduciary duty claim.

*Unjust Enrichment*

*8 Plaintiff's claim of unjust enrichment must also be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  
2003 WL 1622181 (S.D.N.Y.)  
**(Cite as: 2003 WL 1622181 (S.D.N.Y.))**

Page 7

dismissed. New York substantive law governs this claim. See *Khreativity Unlimited v. Mattel, Inc.,* 101 F.Supp.2d 177, 183 (S.D.N.Y.2000) (in adjudicating contract dispute, New York courts apply law of jurisdiction with most contacts, including place of performance and location of subject matter, to the contract in question). Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasicontract for events arising out of the same subject matter." *In re Chateaugay Corp.,* 10 F.3d 944, 950 (2d Cir.1993) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R., Co.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). It is undisputed that SelfCare and NBC had a valid, enforceable contract. Plaintiff has not raised any genuine issue of material fact as to whether an equitable remedy is necessary to prevent a manifest injustice or whether NBC owed SelfCare a duty arising independently from their contractual relationship. Accordingly, Defendant's motion for summary judgment is granted to the extent it seeks dismissal of Plaintiff's unjust enrichment claim.

*Conclusion*

For the foregoing reasons, Defendant's motion for summary judgment is denied to the extent it seeks dismissal of Plaintiff's breach of contract claim relating to the ConAgra assignment, and is granted in all other respects. As explained above, Plaintiff is entitled to summary judgment as to liability on its breach of contract claim relating to the proposed ConAgra assignment; Plaintiff's cross-motion is denied in all other respects. Plaintiff's request for leave to amend its complaint to assert a claim for recovery of a preferential transfer is denied as futile.

ORDER

1. For the reasons stated in the Memorandum Opinion filed simultaneously herewith, it is hereby ORDERED, that Defendant's motion for summary judgment is denied to the extent it seeks dismissal of Plaintiff's breach of contract claim relating to the ConAgra assignment, and is granted in all other respects. Plaintiff is granted summary judgment as to liability on its breach of contract claim relating to the proposed ConAgra assignment; Plaintiff's cross-motion is denied in all other respects. Plaintiff's request for leave to amend its complaint to assert a claim for recovery of a preferential transfer is denied as futile.

2. It is ORDERED that a pre-trial conference shall be held in the above-captioned matter on April 22, 2003 at 10:00 a.m. in Courtroom No. 444, 40 Foley Square, New York, New York 10007 to address further proceedings as to Plaintiff's damages for its breach of contract claim. It is further

3. ORDERED that counsel for the parties confer preliminarily at least twenty-one (21) days prior to the date set forth in paragraph 2 above to discuss the following matters:

a. Facts that are not disputed and facts that are in dispute regarding Plaintiff's damages.

b. Contested and uncontested legal issues regarding Plaintiff's damages.

c. Settlement.

d. Whether mediation might facilitate resolution of the case.

e. Whether the issue of Plaintiff's damages is to be tried to a jury.

f. Whether each party consents to trial of the remaining aspects of the case by a magistrate judge.

g. Anticipated discovery and an appropriate deadline for the conclusion of discovery.

h. Whether expert witness evidence will be required, and appropriate deadlines for expert witness discovery.

i. Evidence to be presented at trial and the length of time expected to be required for the presentation of evidence at trial.

It is further

4. ORDERED that counsel for the parties shall confer and shall prepare, execute and file with the Court, with one courtesy copy provided to chambers of the undersigned, no later than seven (7) calendar days before the date set forth in paragraph 2 above a single document captioned SECOND PRELIMINARY PRE-TRIAL STATEMENT, which shall be signed by all counsel, which shall set forth the following information:

a. A concise statement of all material uncontested or admitted facts.

b. A concise statement of all uncontested legal issues.

c. A concise statement of all legal issues to be decided by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2003 WL 1622181 (S.D.N.Y.)
(Cite as: 2003 WL 1622181 (S.D.N.Y.))

Page 8

the Court.

d. Each party's concise statement of material disputed facts.

e. A concise statement by plaintiff of the legal basis of the damages amount asserted, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be relied upon by plaintiff.

f. A concise statement of the measure of proof and on whom the burden of proof falls as to the amount of plaintiff's damages.

g. A statement as to whether all parties consent to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

h. What, if any, changes should be made in the timing, form or requirements for disclosures under Fed.R.Civ.P. 26(a), including a statement as to when any disclosures required under Fed.R.Civ.P. 26(a)(1) with respect to the remaining claim were made or will be made.

i. The subjects on which disclosure may be needed, and whether discovery should be conducted in phases or be limited to or focus upon particular issues, including a concise description of each party's plan for discovery and a proposed discovery cutoff date.

j. Whether and to what extent expert evidence will be required, and proposed deadlines for expert discovery.

k. What, if any, changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of court, and what other limitations should be imposed.

l. The status of settlement discussions and the prospects for settlement of the action in whole or in part, *provided* that the Preliminary Pre-Trial Statement shall not disclose to the Court specific settlement offers or demands.

m. A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days expected to be needed for presentation of that party's case.

n. Any other orders that should be entered by the Court under Fed.R.Civ.P. 26(c) or Fed.R.Civ.P. 16(b) and (c).

It is further

5. ORDERED that counsel shall be prepared to discuss the foregoing at the pre-trial conference, as well as whether mediation may be helpful in resolving this case.

It is further

6. ORDERED that counsel attending the pre-trial conference shall seek settlement authority from their respective clients prior to such conference. If counsel is not granted such authority, the client must be present in person or available by telephone so that a settlement can be consummated if possible. "Settlement authority," as used herein, includes the power to enter into stipulations and make admissions regarding all matters that the participants may reasonably anticipate discussing at the pre-trial conference including, but not limited to, the matters enumerated in the preceding paragraphs.

7. In the event that any party fails to comply with this Order, the Court may impose sanctions or take other action as appropriate. Such sanctions and action may include assessing costs and attorneys' fees, precluding evidence or defenses, dismissing the action, and/or the imposition of other appropriate penalties.

IT IS SO ORDERED.

2003 WL 1622181 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01cv04191 (Docket) (May. 17, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.