UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DANIEL V. GONZALES, JAY A. KASMERCHAK, PAUL A. FREDERICK, RICHARD A. RODRIGUES, PHILLIP G. SAWICKI, JOHN J. KELLER, and LON P. FREDERICK, | ) ) ) ) ) ) | 04-2232 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ABN AMRO BANK N.V., Amsterdam, a Dutch corporation; and ABN AMRO VENTURES B.V., Amsterdam, a Dutch corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

ORDER

The plaintiffs, Daniel V. Gonzales, Jay A. Kasmerchak, Paul A. Frederick, Richard A. Rodrigues, Phillip G. Sawicki, John J. Keller, and Lon P. Frederick (collectively, the "named plaintiffs"), have filed this class action suit against defendants ABN AMRO Bank N.V. and ABN AMRO Ventures B.V. (collectively, "ABN"[1]). The complaint alleges a breach of fiduciary duty by ABN. The named plaintiffs seek $60 million in damages against each of the defendants. The plaintiffs bring their claims pursuant to 28 U.S.C. § 1332.

ABN has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of jurisdiction over the person), 12(b)(5) (insufficiency of service of process) and 17(a) (lack of prosecution by the real party in interest). For the following reasons, the motion is granted.

BACKGROUND

The named plaintiffs were shareholders of Argus Systems Group, Inc. ("Argus"). At all relevant times, Argus, an Illinois corporation, was located in Champaign County, Illinois, and ABN AMRO Ventures was a subsidiary of ABN AMRO Bank. ABN engaged in financial

---

[1] The collective reference encompasses all ABN AMRO entities, including ABN AMRO Private Equity. The court need not distinguish between the various entities because the distinction does not impact the court's ruling on the motion to dismiss.

transactions, including acquisitions and lending, in the State of Illinois.

On December 3, 2001, ABN entered into an agreement to purchase stock in Argus; the stock purchase amounted to a minority stake in the company. In conjunction with the purchase agreement, ABN executed a voting agreement, a registration of rights agreement, a security agreement, and various other agreements. Through the agreements, ABN acquired the right to appoint one member to Argus's board of directors. ABN appointed its employee, Keith Walz ("Walz"), to the position. The named plaintiffs allege that throughout his appointment, Walz acted in the course and scope of his employment with ABN.

Mercurius Beleggingsmaatschappij B.V. ("Mercurius") is a Dutch corporation with which ABN shared substantial business interests. The named plaintiffs allege that as a consequence of that business relationship, ABN had an interest in promoting the profitability and interests of Mercurius. Although ABN held a minority of the shares in Argus, ABN and Mercurius made loans to Argus with the intention that they would convert the loans to equity in Argus common stock. ABN and Mercurius possessed the ability to convert enough secured debt into equity to gain a two-thirds interest in Argus.

Randall Sandone ("Sandone") was president and chief executive officer of Argus, pursuant to a written employment contract. The contract could not be modified or amended other than by written agreement. In addition, Argus's by-laws provided for removal of the president only with an "affirmative vote of a 2/3rds majority of holders . . . of the outstanding Common Stock of the corporation at a special meeting held for that purpose." The named plaintiffs assert that two-thirds of the then-outstanding shares would not have concurred in Sandone's removal as president.

It is alleged that Walz breached his fiduciary duty to Argus by acting contrary to Argus's interests to benefit ABN. Consequently, instead of converting approximately $12 million in secured debt to common stock in order to assure a two-thirds vote to oust Sandone, Mercurius (allegedly with ABN's assistance) filed bankruptcy, which forced Argus into bankruptcy. Thus, Argus lost out on $12 million in debt relief, which impacted Argus's likelihood of survival and success. ABN and Mercurius, as creditors, had priority over the Argus shareholders in the bankruptcy proceeding.

## PROCEDURAL BACKGROUND

Argus's demise has spawned a plethora of litigation. *Lacy v. Snyder et al.*, 03-2137 (C.D. Ill. 2003), involved an investor's claims against several members of Argus's board of directors. That case was reported settled on January 24, 2005.

Argus filed bankruptcy, and a portion of that proceeding was appealed. *See In re: Argus Systems Group, Inc./Randall J. Sandone, Appellant v. P. Steven Miller, Trustee, et al., Appellees*, 05-2118 (C.D. Ill. 2005). Sandone appealed the denial of his emergency motion for an order of assignment, asking the bankruptcy court to order the trustee to assign to Sandone all authority to

file claims against ABN for diminution of Argus's shareholder value.  The trustee opposed the motion; he was not interested in pursuing any such claim, and he reported to the court that he did not know that there was anything to assign.  The bankruptcy court determined that the trustee followed the law and denied the motion for assignment.   The Honorable Michael P. McCuskey ruled against Sandone on appeal, finding that the bankruptcy court's decision to deny the motion for an order of assignment was not in error.

When Sandone commenced this class action, he was the only named plaintiff.  At the same time, Sandone had a case pending in state court for breach of his Argus employment contract.  After the state court ruled that Sandone could not proceed in two substantially similar cases,[2] he withdrew as named plaintiff in this case and the current named plaintiffs intervened.

## ANALYSIS

### I. Dismissal pursuant to Rule 17(a)

#### A. Derivative action

The defendants argue that the plaintiffs cannot proceed in this case because their claims are derivative in nature.  Therefore, the claims were vested exclusively with the bankruptcy trustee, who declined to pursue those claims or assign them to Sandone.  The plaintiffs argue that this is not a derivative suit; they assert that their lawsuit "is not based on some noble regard for the now-bankrupt Argus corporation; rather, plaintiffs have sued because [the defendants] caused plaintiffs (and putative class members) to lose a lot of money from their own pockets."

Whether a suit is derivative in nature is determined by the law of the state of incorporation.  *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996).  Argus was incorporated in Illinois, which "follows the widespread rule that an action for harm to the corporation must be brought in the corporate name. When investors have been injured in common, they must continue to act through their collective--the corporation." *Frank*, 83 F.3d at 160.  In a corporate bankruptcy, "the Trustee is the only party who can assert a claim for damages on behalf of the bankruptcy estate. . . . [the shareholders'] interest in the claim for damages is derivative of the estate's interest." *In re Davis*, 312 B.R. 681, 685-86, n.4 (Bkrtcy. D. Nev. 2004).   But when the wrong has been perpetrated against the shareholders directly, the shareholders may file a class action suit.  *King v. Kansas City So. Indus., Inc.*, 56 F.R.D. 96, 98 (N.D. Ill 1972).

The plaintiffs allege that Argus was financially undermined to the extent that it was unable to conduct its business affairs; Argus was forced into bankruptcy and its stock became

---

[2] Sandone stated in his motion to withdraw as named plaintiff [#37] that the state court judge dismissed that case without prejudice pursuant to 735 Ill. Comp. Stat. 5/2-619(a)(3) ("that there is another action pending between the same parties for the same cause.").  Sandone was granted leave to refile the state court action once he withdrew as named plaintiff in this action.

worthless; and the plaintiffs received no dividends and were deprived of potential profits arising from an initial public offering. The plaintiffs do not allege an injury separate from that of Argus. Rather, they allege financial injury flowing from their status as shareholders of Argus; all shareholders suffered because Argus failed. To categorize this injury as individualized is a fanciful spin on the facts. The lost profits belonged to the corporation, and the cause of action, if any, belonged to Argus -- not the shareholders.

### II. Contractual rights of the shareholders

The named plaintiffs attempt to individualize their claims by casting them as contractual. They argue in their memorandum that ABN violated their rights to vote on corporate issues and exercise majority control, both of which are independent of the corporation's rights, citing *Goodman v. Phoenix Container, Inc.*, 271 B.R. 821, 840 (N.D. Ill. 2001) and *Spillyards v. Abboud*, 662 N.E.2d 1358, 1363 (Ill. App. Ct. 1996).

"Injury to the corporation does not . . . prevent suit by an investor who suffers a distinct personal injury. . . . The American Law Institute's Principles of Corporate Governance: Analysis and Recommendations § 7.01 (1992), captures this nicely: . . . 'An action in which the holder can prevail *without showing an injury or breach of duty to the corporation* should be treated as a direct action that may be maintained by the holder in an individual capacity.'" *Frank*, 83 F.3d at 160 (emphasis added).

The named plaintiffs have not suffered an individual injury. The complaint alleges generally that ABN interfered with the shareholders' contractual and voting rights by, among other things, terminating Sandone without acquiring the stock -- and votes -- to do so.[3] However, the complaint states that, pursuant to the By-Laws, any such vote was to be taken "at a special meeting for that purpose." Third Amended Compl. ¶ 19 (*citing* Argus By-Laws, Art. IV, Sect. 3). ABN could not have removed Sandone without the required meeting or two-thirds vote unless the shareholders allowed ABN to do so, and the shareholders apparently assented to the removal of Sandone. The complaint alleges that there was "a substantial likelihood" that the required two-thirds of the then-outstanding shares would not have concurred in Sandone's removal. If the controlling shareholders had timely insisted on their contractual rights and committed the vote to a certainty, the vote would not now be subject to speculation. The shareholders cannot cry "foul" if they did not timely assert those rights.

The plaintiffs' more generalized claims are clearly derivative because they allege that ABN mismanaged Argus in order to benefit ABN and Mercurius. Mismanagement of the *corporation* negates any potential for an individualized claim. *See Frank*, 83 F.3d at 160 ("That injures all investors alike, so the action is derivative.").

### CONCLUSION

---

[3] Unlike the named plaintiffs, Sandone, by virtue of his termination, has an individual injury which he is pursuing in state court.

For the foregoing reasons, the motion to dismiss the third amended complaint [#42] is granted. This case is terminated. The parties shall bear their own costs.

Entered this  14th  day of September, 2006.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE