E-FILED
Monday, 16 October, 2006 03:44:18 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ARGUS SYSTEMS GROUP, INC., | ) | No. 03-91852 |
| | ) | |
| Debtor. | ) | Hon. Gerald D. Fines |
| | ) | |

**OPPOSITION OF ABN AMRO TO FORMER SHAREHOLDERS' MOTION
TO REQUIRE TRUSTEE TO ABANDON CLAIMS**

Seven former shareholders of Argus Systems Group, Inc., all plaintiffs in a now-dismissed derivative action brought against ABN AMRO Bank N.V. and ABN AMRO Ventures B.V. (collectively, "ABN AMRO"), ask the Court for the same relief it rejected eighteen months ago – an Order that the Trustee give former Argus shareholders the rights to a derivative claim against ABN AMRO. In April 2005, the then-plaintiff in the derivative action against ABN AMRO (Randy Sandone) filed an "emergency motion" for an Order that the Trustee "assign" the right to a derivative claim to the former Argus shareholders. (Ex. 1) Richard Rodriguez, one of the current movants, joined Sandone's motion. (Ex. 2; *see also* Ex. 3 at 2) Just like now, the same lawyers argued they needed the claim from the Trustee because it was "the only way for these shareholders to protect their individual rights . . . to proceed with this lawsuit; and if there is going to be a derivative challenge, which, in fact, there is, the only way to nullify that is by making an assignment." (Ex. 3 at 7)

ABN AMRO and the Trustee objected to the assignment. The Trustee advised the Court that the liquidation proceeds had "a zero balance," he was ready to "wind this matter up completely," and believed he may have sold any derivative claim along with the rest of the Argus assets. (Ex. 3 at 2, 8) Without any interest or even ability to assign the alleged derivative claim, the Trustee opposed the former shareholders' request.

On April 13, 2005, the Court denied the motion for an assignment. (Ex. 4; *see also* Ex. 3 at 8-9)  The former shareholders then appealed the Court's order to the District Court.  On July 8, 2005, the District Court affirmed.  (Ex. 5)  The Honorable Michael McCuskey held that "the decision of the trustee not to pursue or assign the action in the interest of closing the bankruptcy matter was not an unjustifiable position, particularly in light of the trustee's responsibility to expeditiously close the bankruptcy estate." (*Id.* at 4-5)  The former shareholders elected not to press an appeal to the Seventh Circuit.  Instead, they took their chances that the District Court in the underlying litigation would sign on to an argument that the claim against ABN AMRO was actually direct and not derivative after all:

> The plaintiffs argue that this is not a derivative suit; they assert that their lawsuit 'is not based on some noble regard for the now-bankrupt Argus corporation; rather plaintiffs have sued because [the defendants] caused plaintiffs (and putative class members) to lose a lot of money from their own pockets.'

(Ex. 6 at 3)  Contrary to their motions in the bankruptcy court, by arguing the claim was direct, the former shareholders took the position that they – and not the Trustee – owned it.

The court rejected the former shareholders' arguments.  Judge Baker recognized that "the Trustee is the only party who can assert a claim for damages on behalf of the bankruptcy estate . . . [the shareholders'] interest in the claim for damages is derivative of the estate's interest." (*Id.*)  Noting that "[t]he trustee opposed the motion [for assignment]; he was not interested in pursuing any such claim; and he reported to the court that he did not know that there was anything to assign," the District Court terminated the underlying derivative action.  (*Id.*)[1]

---

[1] Contrary to the former shareholders' misleading suggestion that Judge Baker left open the possibility for the former shareholders to pursue their claim if "the claim is abandoned to the shareholders" (Mot. at ¶ 3), the District Court said nothing about any abandonment theory and dismissed the case in its entirety.

2

That is the backdrop for the former shareholders' current motion. The former shareholders are now asking the Court to order the Trustee to turn over the very claim they tried unsuccessfully to secure eighteen months ago. Rather than take an appeal of this Court's prior Order to the Seventh Circuit or appeal the District Court's dismissal in the underlying suit, the former shareholders collaterally attack those orders by trying a new theory (for the same relief) all over again. Their request is procedurally and substantively defective. It should be denied for three independent reasons.

## I. BASIC PRINCIPLES OF RES JUDICATA BAR THE FORMER SHAREHOLDERS' MOTION AND THEIR REQUESTED RELIEF.

Res judicata applies to any issues "that were or could have been raised" in a prior proceeding. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994). "Res judicata reflects fundamental public policy that there be an end to litigation, which is particularly strong in the bankruptcy context." *Hawxhurst*, 40 F.3d at 180. The doctrine not only protects "the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412 (2000).

Eighteen months ago, the former Argus shareholders asked this Court to compel the Trustee to hand over to the shareholders the right to bring a derivative claim against ABN AMRO. As the same lawyers argued then, "The only intent is to preserve for the shareholders . . . the right to go forward without the attack that this is really the bankruptcy Trustee's action to bring." (Ex. 3 at 4) They litigated the issue and lost. (Ex. 4) They then appealed the "final order of the bankruptcy judge" to the District Court. (Ex. 7); *see also England v. FDIC*, 975 F.2d 1168, 1171-72 (5th Cir. 1992) (finality in the bankruptcy context includes the end of a discrete proceeding, not just the end of the case as a whole). They lost again. (Ex. 5) The

former shareholders then took their chances in the district court on an argument that their claim was not derivative after all (and not held by the Trustee). The district court rejected their argument and terminated the case. (Ex. 6)

Under bedrock principles of res judicata, the former shareholders may not come back to the bankruptcy court now on a new theory for the same basic relief—the right to bring a derivative claim against ABN AMRO.[2] Litigants may not try one legal theory, lose, and then try a different one later. *Car Carriers, Inc., v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) ("a mere change in the legal theory does not create a new cause of action"); Restatement (Second) Judgments § 24 (1982) ("That a number of different legal theories . . . may apply to a given episode does not create multiple transactions and hence multiple claims.").

This principle applies equally in the bankruptcy context. For example, in *In re Republic Fabricators, Inc.*, 104 B.R. 933 (Bkrtcy N.D. Ind. 1989), the bankruptcy court denied Lord, Bissell & Brook's ("LB&B's") motion for attorneys' fees under a contract. After the time to appeal expired, LB&B filed a new motion for attorneys' fees based on quantum meruit and other equitable theories. The bankruptcy court held that res judicata barred LB&B's renewed request:

> There is no doubt that LB&B seeks its fees from the Bank under the same core of operative facts that resulted in an unappealed adverse judgment against them. What LB&B proposes to do now is to offer alternative equitable theories which they failed to present to us at trial or, even if those theories had been raised, preserve by direct appeal. Claim preclusion prevents us from permitting what amounts to a belated attack on our prior final unappealed judgment.

---

[2] The movants here indisputably are the "same" as or "privies" to the movants in the prior motion for an assignment. Mr. Rodriguez joined the assignment motion and brought this one directly. The parties in both motions were the then-plaintiffs in the underlying derivative suit against ABN AMRO. And other former shareholders (not just Mr. Rodriguez) joined the prior assignment motion in an attempt to highlight for the Court how all of the former shareholders shared the same, "closely aligned" interests. *See In re L&S Indus., Inc.*, 989 F.2d 929, 933 (7th Cir. 1993) (A "person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.").

*In re Republic Fabricators, Inc.*, 104 B.R. at 950. Put simply, res judicata prevents trial-by-error legal theories. The former shareholders' motion for abandonment should be denied.

**II.     THERE IS NO CLAIM FOR THE TRUSTEE TO ABANDON.**

The former shareholders' new motion, like their old one, seeks an asset that the Trustee sold three years ago. On July 22, 2003, the Trustee sold "all personal property of the Debtor" to Innovative Security Systems, Inc. ("ISSI"). (Ex. 8 at 1) (emphasis in original)  As the Trustee remarked previously, the sale included "virtually all of the personal property of the bankruptcy estate for the sum of $1,550,000.00." (Ex. 9 at ¶ 1)  The Trustee thus advised the Court of his belief that "by the terms of the above described Asset Purchase Agreement . . . he no longer owns the interest that the appellant is apparently attempting to acquire." (*Id.* at ¶ 2)  Given that he sold the asset to ISSI, the Trustee has nothing left to abandon.

Under Section 554(b), "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). By definition, there can be no abandonment where there is no asset to be abandoned. *In re Betty Owens Schools, Inc.*, 1997 WL 188127, *5 (S.D.N.Y. April 17, 1997) (affirming denial of § 554(b) motion where causes of action had been sold; once "alleged causes of action were conveyed" there was "nothing left to abandon"). Here, the Asset Purchase Agreement does not carve out any claims by Argus shareholders (or any other claims for that matter).  Rather, ISSI won the auction by paying a substantial price for "all" of Argus's "personal property." (Ex. 8 at 1)  Any derivative claim now belongs to ISSI. They paid for it and they own it.

### III. THE FORMER SHAREHOLDERS' OWN ALLEGATIONS PRECLUDE THEIR ABANDONMENT CLAIM.

To compel abandonment under Section 554(b), the former shareholders bear the burden of proving "by a preponderance of evidence that the property has no greater than inconsequential value." *In re Siegel*, 204 B.R. 6, 7 (Bkrtcy W.D.N.Y. 1996); *In re Szymanski*, 344 B.R. 891, 896 (Bkrtcy N.D. Ind. 2006) (same). Based on the allegations in their own complaint, the movants here cannot carry their burden. The property at issue is an alleged derivative claim against ABN AMRO. (*See* Mot. ¶ 3) The movants want the right to that claim because they allege it is worth $60 million. (Ex. 10, p. 10) (seeking "a judgment on behalf of the class and against ABN AMRO Bank in the amount of $60 million.") That is forty-five times the amount ISSI paid for all of Argus's assets. By alleging the property they want abandoned is worth $60 million, the movants cannot carry their burden to show it is "inconsequential" or a "burden" to the estate.[3]

### Conclusion

The former Argus shareholders' motion is a collateral attack on three prior Orders—this Court's order denying a motion for assignment; the District Court's affirmance of that order; and the District Court's dismissal of the underlying derivative claim against ABN AMRO. They have changed their legal theories (first an assignment, now an abandonment), changed their arguments (first their suit was direct, now it is derivative), and changed their positions (first the claim against ABN AMRO was worth $60 million, now it is "inconsequential"). The Court

---

[3] The former shareholders claim, without any evidence to carry their burden, that "the trustee has concluded that the claim is of inconsequential value and benefit to the estate and/or burdensome to the estate." (*See* Mot. ¶ 5) That misstates the movants' burden. The party seeking abandonment, not the Trustee, must justify an abandonment by showing the claim is "of inconsequential value" or is "burdensome" to the estate. No matter what the Trustee (or ABN AMRO) believes of the claim, by alleging it is worth $60 million, the former shareholders cannot credibly argue to this Court that it is an "inconsequential" or "burdensome" claim.

should now put this matter to rest.  The current motion is procedurally and substantively flawed and should be denied.


Dated:  October 16, 2006            ABN AMRO PRIVATE EQUITY, ABN AMRO BANK, N.V., AND ABN AMRO VENTURES, B.V.


By:  /s/ Kingshuk K. Roy
      One of Their Attorneys

Edward M. Wagner
Kingshuk K. Roy
Heyl Royster Voelker & Allen
102 East Main Street, Suite 300
P.O. Box 129
Urbana, Illinois  61803-0129
(217) 344-0060
(217) 344-9295 (fax)

Andrew A. Kassof
Travis J. Quick
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000
(312) 861-2200 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to the following:

J.W. Phebus
Phebus & Koester
136 West Main Street
Urbana, IL  61801

Steve Miller, Bankruptcy Trustee
11 E. North Street
Danville, Illinois  61832

| | |
|---|---|
| Joseph P. Chamley | jchamley@efbclaw.com, jnieman@efbclaw.com |
| Jerry A. Davis | davis@davis-delanois.com |
| William L. Garrison | williamlgarrison@sbcglobal.net |
| Bruce Jay Meachum | meach@insightbb.com |
| Douglas J. Quivey | doug@lprpc.com, yvonne@lprpc.com |
| Kingshuk K. Roy | kroy@hrva.com, urbecf@hrva.com |
| U.S. Trustee | USTPRegion10.PE.ECF@usdoj.gov |
| David M. Ucherek | notice@uchereklaw.com, uchereklaw@msn.com |

I also hereby certify that on October 16, 2006, I have served a copy of the foregoing document by U.S. mail upon the following non-CM/ECF participants:

Becket and Lee
POB 3001
Malvern, PA  19355

James W. Evans
POB 737
Champaign, IL  61820

David J. Fischer
225 W. Wacker Dr., #2800
Chicago, IL  60606

Peter L. Harris
50 S. 6th St., #1500
Minneapolis, MN  55402

Mark D. Henss
506 S. Wright St., #258
Urbana, IL  61801

Robert J. Labate
131 S. Dearborn, 30th Floor
Chicago, IL  60603

Christian J. Lane
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL  60601

Gary Lietz
1605 S. State St., #103
Champaign, IL  61820

Robert M. Mintz
131 S. Dearborn, 30th Floor
Chicago, IL  60603

S. Edward Sarskas
100 E. Wisconsin Ave., #3300
Milwaukee, WI  53202

Hermann Volk
Altenauerstr 42
65239 Hochheim
65239
GERMANY

Daniel J. Zollner
115 S. LaSalle St.
Chicago, IL  60603

                                                         /s/ Kingshuk K. Roy__