E-FILED
Tuesday, 24 October, 2006  11:13:45 AM
Clerk, U.S. District Court, ILCD

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is made as of this _22_ day of _July_, 2003 by and between P. Stephen Miller, not individually but as interim chapter 7 Trustee of the estate of Argus Systems Group, Inc. ("Seller") a chapter 7 debtor and _Innovative Securities Systems, Inc._ ("Buyer").

### INTRODUCTION

Seller is interim trustee as that term is defined in the U.S. bankruptcy Code (the "Bankruptcy Code") in bankruptcy case number 03-91852 (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Central District of Illinois (the "Bankruptcy Court"). Seller desires to sell, transfer, grant, convey and assign to Buyer, and Buyer desires to purchase, acquire and accept from Seller, certain of the assets and properties of Argus Systems Group, Inc., a dissolved Illinois corporation and chapter 7 debtor (the "Debtor" or "Company").

### AGREEMENT

In consideration of the premises and of the respective agreements, covenants and promises contained herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **Purchase and Sale of Acquired Assets.** Seller agrees to sell, transfer, grant, convey and assign to Buyer, and Buyer agrees to purchase, acquire, and accept from Seller, at the Closing (as defined in Section 9), for the Purchase Price (as defined in Section 3) and upon the terms and conditions stated herein, all of the Seller's right, title and interest, if any, in and to <u>all</u> personal property of Debtor, including intellectual property, copyright, trademark, name, inventory, equipment, including the assets identified in Exhibit A attached hereto (the "Acquired Assets"), wherever located, to the extent assignable and transferable, but specifically excluding the Retained Assets (as defined in Section 2).

2. **Retained Assets.** The Acquired Assets shall not include the following property of the Company or Seller which is expressly excluded from the purchase and sale contemplated by this Agreement (collectively, the "Retained Assets"):

   (a) Cash on hand and on deposit;
   (b) Accounts receivable, chooses in action and the proceeds thereof;
   (c) Tax refunds;
   (d) All deposits and prepaid expenses, except those for assumed agreements;
   (e) Insurance policies and insurance proceeds;
   (f) Corporate minute books and stock transfer records; and
   (g) Any rights under any lease (including, without limitation, any rights to any leased equipment or other leased property) or other agreement which is not assumed by Buyer;
   (h) Real Estate; and
   (i) Bankruptcy Recoveries

3. **Purchase Price; Payment.**


PLAINTIFF'S EXHIBIT 1

1

(a) The purchase price for all of the Acquired Assets conveyed under the terms and conditions of this Agreement and for all of the promises, warranties and covenants of Seller shall be the sum of: **$1,550,000.**  _____ ($_____) plus the assumption by Buyer of any Assumed Contracts (as defined in Section 4 collectively, the "Purchase Price").

(b) The Purchase Price shall be paid by Buyer to Seller as follows:

(i) Seller has received an earnest money deposit of Ten Thousand Dollars ($10,000) (the "Deposit"), which Deposit was paid by Buyer to Seller in connection with the execution and delivery of this Asset Purchase Agreement between Buyer;

(ii) Buyer shall pay the balance of the Purchase Price to Seller, by wire transfer or certified check at Closing.

4. **Assumption of Certain Executory Contracts.**

(a) On or before August 9, 2003, Buyer will provide to Seller a list of executory contracts to be assumed and assigned by Seller to Buyer. Seller will assign and Buyer will assume no obligations of the Company except for those assumed executory contracts set forth on such list to be delivered on or before August 9, 2003 (the "Assumed Contracts"). Other than the liabilities arising after the entry of an order approving the assumption and assignment under or pursuant to the Assumed Contracts, the Buyer will not assume or have any responsibilities with respect to any liabilities or obligations of the Company or the Seller. Buyer shall have the right to modify the list of contracts to be assumed and assigned at any time prior to the court's entry of an order approving such assumption and assignment of executory contracts.

(b) The Buyer will be responsible for obtaining any necessary consents to the transfer and assignment of the Acquired Assets and Assumed Contracts. Any additional costs to Seller to assume and assign the Assumed Contracts shall be paid by Buyer. Seller shall be held harmless by the Buyer.

5. **Acquired Assets Sold "As Is".**

(a) ALL ACQUIRED ASSETS ARE BEING SOLD "AS IS" AND "WHERE IS", WITH ALL FAULTS AND WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, AS TO THE QUALITY OR THE VALUE OF THE ACQUIRED ASSETS, OR AS TO TITLE, POSSESSION, QUIET ENJOYMENT OR THE LIKE WITH RESPECT TO THE ACQUIRED ASSETS, ALL OF WHICH SELLER HEREBY DISCLAIMS.

(b) Buyer shall be responsible, at its cost, to correct any breaches or deficiencies with any and all source code licensors or licensees.

6. **Covenants and Further Agreements Between the Parties** In connection with and as further consideration for the sale and purchase of the Acquired Assets, Seller and Buyer hereby agree as follows:

2

(a) <u>Post-Closing Use and Occupancy.</u> Buyer will use commercially reasonable efforts to remove any Acquired Asset from the Debtor's premises or wherever such asset may be located as soon as possible after the Closing Date but, in any event, will take possession of the Acquired Assets no later than fourteen (14) days after the Closing Date. Buyer will not be responsible for any storage, maintenance or similar fee or charge if, on or before 14 days after Closing, Buyer removes or makes reasonable efforts to remove the Acquired Assets from the Company's premises (or wherever such assets are stored at the time of Closing).

(b) <u>Expenses.</u> Seller and Buyer shall each bear their own expenses in connection with attendant legal and accounting fees affecting the transfer of the Acquired Assets, including the negotiation, preparation, execution and performance of this Agreement.

(c) <u>Brokers.</u> Buyer and Seller each represent and warrant to each other that there are no agreements, arrangements or understandings with any third party for brokerage or any other commissions relative to this Agreement or the consummation thereof, other than certain brokerage fees payable by Buyer for which neither the Seller nor the Company will have any liability whatsoever.

(d) <u>Title.</u> Risk of Loss and Delivery. Upon the Closing, Buyer shall take title to the Acquired Assets and, except as otherwise provided in agreements between Seller and Buyer, shall assume all risk of loss for damage or destruction thereto. Buyer may, at its discretion and cost, extend insurance covering the Acquired Assets until Buyer takes possession of such assets.

(e) <u>Transfer Taxes and Fees.</u> Notwithstanding anything to the contrary in this Agreement, any transfer, documentation, sales, use or other similar taxes, and any conveyance fees, recording charges and other similar fees and charges (including interest and penalties associated therewith) incurred in connection with the consummation of the transactions contemplated in this Agreement shall be paid by Buyer if and when due, and Buyer will, at its own expense, prepare and file any necessary returns or reports with respect to any such taxes or fees.

(f) <u>Trustee Access to Financial Information.</u> For a reasonable period of time post-closing, Buyer shall provide Trustee or his agents with access to all financial information of Argus, in whatever format same may exist, so that Trustee may prepare income and payroll tax returns.

7. **Conditions To Closing**

(a) <u>Conditions Precedent to Buyer's Obligations.</u> The obligations of Buyer to purchase the Assets from Seller, assume the Assumed Contracts and otherwise consummate the transactions contemplated by this Agreement are subject to satisfaction of and Buyer receiving the following on the Effective Date simultaneously executed and delivered as set forth in Section 4.2:

(i) <u>Bankruptcy Court Approval.</u> The Seller shall provide to Buyer a final Order in a form acceptable to Buyer from the Bankruptcy Court for the Central District of Illinois approving the sale and assignment of the Assets and authorizing the transfer of the Assets free and clear of all claims, liens, defaults and encumbrances in a form approved by Buyer and in accordance with Sections 363 and 365 of the Bankruptcy Code (the "Sale Order") and compliance by Seller with all normal and customary procedures for such sales and assignments through the Bankruptcy Court.

3

(ii) <u>Satisfactory Due Diligence.</u> Seller will cooperate with Buyer to allow Buyer to obtain access to any copyright registration, trademark registration, patent, title, survey and other tests, audits, inspections, approvals, authorizations, information regarding ownership of all software, or assurances related to the Acquired Assets that are within the possession or control of Seller that Buyer deems necessary or appropriate. Buyer represents that it has completed its satisfactory due diligence.

(iii) <u>Consents.</u> All consents, approvals, authorizations, and waivers required to be obtained from governmental authorities and other persons necessary in order to enable Seller to sell, assign, and deliver the Acquired Assets and Assumed Contracts to Buyer, and to enable Buyer to purchase, assume, and accept the Acquired Assets and Assumed Contracts from Seller; provided, however, in the event that the Seller is unable to obtain the consent of parties to Contracts, Buyer at its option, may elect to include Assumed Contracts for which such consent has not been obtained in the Assets to be purchased hereunder at Buyer's option.

(iv) <u>Documents of Conveyance.</u> Bills of sale, title documents and other instruments of conveyance as may be necessary or appropriate to transfer, assign and convey to Buyer as of the Closing Date good and marketable title to all of the Assets in form and substance reasonably satisfactory to counsel for Buyer.

(v) <u>Patent.</u> Trademark and Copyright Assignments. The trademarks, patents, and copyrights included in the Assets shall be transferred to Buyer by a general assignment, and a specific Patent Assignment, delivered at Closing in the forms acceptable to Seller and Buyer, upon submission from Buyer, execute the documentation necessary to record transfers of the trademarks, patents, and copyrights included in the Assets. After Closing, Seller shall transmit to Buyer any information or written notices relating to the trademarks, patents and copyrights that come to the attention of or are received by Seller;

(vi) <u>Performance of Covenants.</u> Seller will have performed in all material respects all of the covenants and agreements required to be performed by it under this Agreement prior to the Closing;

(vii) <u>Accuracy of Representations.</u> Seller's representations and warranties set forth in Section 7 hereof shall have been true and correct in all material respects as of the date hereof and such representations and warranties shall be true and correct in all material respects at and as of the Closing as though then made. To the extent Seller has added or removed anything to or from any Exhibit subsequent to the date of this Agreement which could have an adverse effect on the Assets on the Property, then Buyer may, at its sole discretion, terminate this Agreement if it is not satisfied with any such revision;

(viii) <u>Delivery of Possession.</u> The Acquired Assets shall, upon Closing, be delivered or tendered to Buyer.

8. **Representations and Warranties of Seller.** Seller hereby represents and warrants to the Buyer that the statements contained in this Section 8 are true and correct as of the Closing Date.

4

(a) <u>Authority; Execution and Validity.</u> Seller has the power and authority to execute, deliver and perform its obligations under this Agreement and the other documents to be executed and delivered by Seller pursuant hereto and has taken all requisite action to authorize the consummation by Seller of the transactions contemplated by this Agreement and the documents to be executed and delivered by Seller pursuant hereto.

(b) <u>Enforceability.</u> This Agreement and the other documents to be executed and delivered by Seller pursuant hereto, when the Agreement is executed and Seller is authorized by the Bankruptcy Court to sell the Acquired Assets to Buyer, shall constitute the legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

9. <u>Representations and Warranties of Buyer.</u> Buyer hereby represents and warrants to the Seller that the statements contained in this Section 9 are true and correct as of the Closing Date.

(a) Buyer is a _corporation_ validly existing and in good standing under the laws of the State of _Delaware_. Buyer has the organizational power and authority to execute, deliver and perform its obligations under this Agreement and the other documents and agreements to be executed and delivered by Buyer pursuant hereto and has taken all requisite organizational action to authorize the consummation by Buyer of the transactions contemplated by this Agreement and the other documents to be executed and delivered by Buyer pursuant hereto.

(b) <u>Enforceability.</u> This Agreement and the other documents to be executed and delivered by Buyer pursuant hereto, when the Agreement is executed and Seller is authorized by the Bankruptcy Court to sell the Acquired Assets to Buyer, shall constitute the legal, valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

10. <u>Closing Date.</u> The closing of the transactions contemplated by this Agreement (the "Closing") shall take place on the date of or immediately subsequent to the entry of an appropriate Sale Order by the Bankruptcy Court unless another date, time, or location is mutually agreed upon by the parties (the "Closing Date"), but in no case shall the closing occur later than July 25, 2003.

11. <u>Closing Deliveries.</u> At the Closing, the parties hereto shall execute and deliver the following documents, agreement and other items described below:

(a) Seller shall deliver to Buyer the Bill of Sale substantially in the form attached hereto as <u>Exhibit :</u>

(b) Seller shall deliver executed assignments of all patents, copyrights and trademarks.

(c) Buyer shall deliver and Seller shall receive the Purchase Price (less the Deposit) as described in Section 3.

12. **Termination.**

(a) This Agreement may be terminated at any time prior to the Closing:

5

(i)  by mutual written consent of Seller and Buyer;

(ii)  by either Seller or Buyer if there has been a material misrepresentation or material breach of warranty on the part of the other party of the representations and warranties made by such party in this Agreement or if there is a material variance of such warranties which is unacceptable to either party (and, in the case of a breach, such breach has continued for five days after the party seeking to terminate has notified the other party with respect thereto), provided that if a party's willful breach of the terms of this Agreement has prevented the consummation of the transactions contemplated hereby, that party shall not be entitled to terminate the Agreement pursuant to this subsection;

(iii)  by Seller upon two (2) business days' notice, if it receives a higher and better offer for the Assets and assignment of the Lease prior to the entry of an order approving the sale of the Assets hereunder by the Bankruptcy Court ("Competing Offer"); or

(iv)  by either Seller or Buyer if the Bankruptcy Court does not approve the sale and assignment of Assets and the Lease as contemplated herein on or before July 31, 2003 or such later date as may be mutually agreed between the parties.

(b)  Effect of Termination. In the event of termination of this Agreement by either Seller or Buyer as provided above, this Agreement will become void and there will be no liability on the part of either Seller or Buyer, except for material willful breach of and intentional misrepresentations in or pursuant to this Agreement prior to the time of such termination.

13. **Miscellaneous.**

(a)  Survival of Covenants and Warranties. All covenants, representations and warranties of Buyer and Seller contained in this Agreement or made pursuant hereto or in connection with any documents delivered pursuant hereto in connection with the consummation of the transactions contemplated hereby shall survive the Closing and the full payment of the Purchase Price, and all such covenants, representations and warranties shall be binding upon the respective survivors, successors, or permitted assigns of Buyer and Seller.

(b)  Severability and Remedies. The provisions of this Agreement are severable. If any provision of this Agreement shall be held to be invalid or unenforceable in any respect, such provision shall be carried out and enforced only to the extent to which it shall be valid and enforceable, and any such invalidity or unforceability shall not affect any other provision of this Agreement, all of which shall be fully carried out and enforced as if such invalid or unenforceable provision had not been set forth herein. In the event of breach of this Agreement, the remedies of any party shall be cumulative, and none shall be considered the exclusive remedy available to the non-breaching party, who shall be entitled to all available remedies at law and in equity.

(c)  Binding Effect. This Agreement shall be binding upon and inure to the benefit of Seller and Buyer and their respective heirs, personal representatives, successors and assigns, but may not be assigned without the prior written consent of the non-assigning party.

(d) <u>Third Party Rights.</u> Nothing herein expressed or implied is intended to confer upon any person any rights, remedies, obligations or liabilities.

(e) <u>Notices.</u> All notices and other communications required or permitted to be given to any party under this Agreement shall be in writing and shall be deemed effectively given in all respects when received, if manually delivered, or when delivered on the date indicated on a returned receipt if posted by either registered or certified U.S. Mail, return receipt requested, or by a next day delivery service which maintains records of time, place, and person of delivery, and directed to the party to be notified at the address of such party set forth below, or to such changed address which a party shall have notified the other party in accordance with this Section.

<u>If to Seller:</u>    P. Stephen Miller
                      Acton & Snyder
                      11 East North Street
                      Danville, IL 61832

<u>If to Buyer:</u>

<u>With a copy to:</u>

(f) <u>Amendments.</u> No modification or amendment of this Agreement shall be effective unless made in writing and signed by a duly authorized representative of each of Buyer and Seller.

(g) <u>Governing Law.</u> This Agreement is delivered and is intended to be performed in the State of Illinois, and shall be construed and enforced in accordance with the laws of such State as to contracts which are to be wholly performed within the boundaries of such State, without regard to Illinois' conflict of laws principles.

(h) <u>Counterparts.</u> This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Each party shall have the right to rely on a facsimile signature copy of this Agreement, and each party shall, if the other party so requests, provide an originally signed copy of this Agreement to the other party.

(i) <u>Incorporation of Recitals.</u> The recitals are hereby made a part of this Agreement as if fully set forth herein and are incorporated into its terms in full by this reference thereto.

(j) <u>Interim Trustee-Assignee Not Personally Liable.</u> Except for gross negligence and/or fraud, Seller, as Interim Trustee in the Bankruptcy Case, is not personally liable for any acts, obligations, representations or warranties under this Agreement.

7

(k)     Further Assurances. From and after the Closing Date, Buyer and Seller shall each provide to the other such additional instruments and documents and perform such other acts and deeds and render such additional assistance as the other may reasonably request for the purpose of carrying out or evidencing the transactions contemplated by this Agreement. All out-of-pocket expenses involved in honoring such requests, unless provided otherwise in this Agreement, shall be promptly reimbursed by the requesting party to the other.

(l)     Jurisdiction and Venue. The parties agree that the Bankruptcy Court for the Central District of Illinois shall have exclusive jurisdiction over any dispute or claim relating to this Agreement, any ancillary agreement, or any document executed in connection with this Agreement or the transactions contemplated by this Agreement, or any amendment of any of the foregoing, including without limitation, as to their existence, validity, enforceability, interpretation, performance, breach, or damages, including claims in tort, whether arising before or after the termination of this Agreement. Any court, state or federal, having jurisdiction over Danville, Illinois, shall be the exclusive venue for the resolution of any such dispute or claim.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

SELLER: _[signature]_
P. Stephen Miller, not individually but as Interim Trustee not individually but as interim chapter 7 Trustee of the estate of Argus Systems Group, Inc.

BUYER: Innovative Securities Systems, Inc.
By: _[signature]_
Name: Andrew Jones
Title: President

8